**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:25-cv-22896-JEM**

FRIENDS OF THE EVERGLADES, INC., a Florida not-for-profit corporation, and CENTER FOR BIOLOGICAL DIVERSITY, a 501(c)(3) nonprofit organization,

        Plaintiffs,

vs.

KRISTI NOEM, in her official capacity as Secretary of the UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, in his official capacity as Acting Director of the UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; KEVIN GUTHRIE, in his official capacity as Executive Director of the Florida Division of Emergency Management; and MIAMI-DADE COUNTY, a political subdivision of the State of Florida,

        Defendants.

**PLAINTIFFS' EXPEDITED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs Friends of the Everglades, Inc., and Center for Biological Diversity, Inc. ("Plaintiffs"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 65(a) and (b), and S.D. Fla. L.R. 7.1(d), respectfully file this motion for expedited relief[1] seeking entry of a temporary restraining order ("TRO") by July 1, 2025, and preliminary injunction to maintain the

---

[1] Expedited relief is required under Southern District of Florida L.R. 7.1(d)(2) because, as set forth herein, Defendants have announced their intention to begin to detain noncitizens at the detention site described herein as soon July 1, 2025. Notice of this motion has been provided by electronic mail to the United States Attorneys' Office for the Southern District, the Florida Attorney General Office, and the Miami-Dade County Attorneys' Office.

status quo during the pendency of this action seeking declaratory and injunctive relief to enforce the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*; the Administrative Procedure Act (APA), 5 U.S.C. § 701; and state and local laws prohibiting the ongoing construction of an immigration detention center within the Big Cypress National Preserve in the Florida Everglades.

## I.  INTRODUCTION

With no notice to the public or opportunity for public input, the State of Florida's Division of Emergency Management (the "Division") has commenced construction of an immigrant detention center on property owned by Miami-Dade County and within the Greater Everglades ecosystem, pursuant to an undisclosed arrangement with the U.S. Department of Homeland Security ("DHS") to detain immigrants for U.S. Immigration and Customs Enforcement ("ICE"). Florida officials have stated publicly that they expect to have infrastructure in place at the site to begin detaining individuals for federal immigration purposes by July 1, 2025. Florida's governor has stated that construction of the detention center was "requested by the federal government" and that it "is fully funded by the federal government." https://www.youtube.com/watch?v=gJfG7L9reHU&ab_channel=FOX35Orlando, (at 6:01 timemark), last visited June 27, 2025.

The site of this detention center is the Dade-Collier Training and Transition Airport ("TNT Site"), a limited-use pilot training facility within the Big Cypress National Preserve. The TNT Site is located within or directly adjacent to the Big Cypress National Preserve, a nationally and state protected and ecologically sensitive area that serves as habitat for the threatened wood stork, the endangered Florida panther and Florida bonneted bat, and numerous other wildlife species. The site is proximate to Everglades National Park and within the historic Everglades,

including near areas where billions of dollars in federal and state funds have been allocated towards restoration and preservation. State and federal officials have indicated that they intend to use the TNT Site not only as a detention center to detain anywhere from 1,000 to 5,000 individuals, but also to utilize the existing runways for deportation flights – a "one-stop shop" to carry out "mass deportation." These activities necessarily require federal involvement since the State of Florida is not otherwise empowered to enforce federal immigration laws, and Florida law restricts immigration enforcement except under federal supervision and control.

Notably absent from the public statements of state and federal officials is any discussion of the significant environmental impacts that will inevitably result from the construction of a detention center within the Big Cypress National Preserve and on the edge of Everglades National Park. Given the *billions* of dollars the state and federal governments have devoted to preserving and restoring the Everglades and Big Cypress ecosystems – including the Western Everglades Restoration Project approved by Congress just six months ago – one would expect these government agencies to have seriously considered the potential environmental impacts from such an extraordinary project in arguably the most sensitive location in Florida.

In fact, federal law *demands* exactly that. The National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, requires federal agencies such as DHS to prepare an Environmental Impact Statement (EIS) for any major federal action significantly affecting the quality of the human environment. Major federal actions include any action that is subject to "substantial Federal control and responsibility." 42 U.S.C. § 4336e(10)(A); *see also Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1360 (11th Cir. 2008) (defining a "major federal action" as "an action significantly affecting the quality of the human environment"). The construction of an Everglades immigration detention center is a major federal action undertaken to implement a

federal statutory program or executive directive, since the State of Florida has no authority or jurisdiction to enforce federal immigration law. *See Arizona v. United States*, 567 U.S. 387 (2012) (holding federal law preempts state immigration law enforcement); *Florida Immigrant Coal. v. Uthmeier*, ---F. Supp. 3d---, No. 25-21524-CV, 2025 WL 1423357, at *7-10 (S.D. Fla. Apr. 29, 2025) (same); *Farmworker Ass'n of Fla., Inc. v. Moody*, 734 F. Supp. 3d 1311, 1332-37 (S.D. Fla. 2024) (same). Under Florida law, the state may not engage in noncitizen transport except "under the direct control and supervision of the United States Immigration and Customs Enforcement." Fla. Stat. § 908.13(2)(c).

As the United States Supreme Court recently confirmed, for "certain infrastructure projects that are built, funded, or approved by the Federal Government, NEPA requires federal agencies to prepare an environmental impact statement, or EIS. The EIS must address the significant environmental effects of a proposed project and identify feasible alternatives that could mitigate those effects." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 145 S. Ct. 1497, 1507 (2025). NEPA is a procedural statute that "requires federal agencies to prepare an environmental impact statement, or EIS, identifying significant environmental effects of the projects, as well as feasible alternatives. The law ensures that the agency and the public are aware of the environmental consequences of proposed projects. Properly applied, NEPA helps agencies to make better decisions and to ensure good project management." *Id.* at 1510.

To ensure compliance with NEPA, courts grant preliminary or permanent injunctive relief that requires federal agencies to prepare an adequate EIS before taking further action. *See, e.g., Miccosukee Tribe of Indians of Florida v. United States*, No. 08-21747-CIV, 2008 WL 11332080, at *10 (S.D. Fla. Nov. 14, 2008); *Florida Wildlife Fed'n v. U.S. Army Corps of Engineers*, 404 F. Supp. 2d 1352, 1366-67 (S.D. Fla. 2005). This is because a "fundamental

purpose of NEPA is to ensure that important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise cast." *Florida Wildlife Fed'n*, 404 F. Supp. 2d at 1362 (citing *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350 (1989) & *North Buckhead Civic Ass'n v. Skinner,* 903 F.2d 1533, 1540 (11th Cir. 1990)).

At the request of the federal government, Florida officials, with notice to the public or opportunity for public comment, have commenced construction of the detention center, and DHS and ICE are expected to transport detained individuals to the TNT Site as early as July 1, 2025. Already housing units, sanitation and food services systems, lighting infrastructure, diesel power generators, substantial fill material, restroom facilities and other infrastructure have been moved on site. *See* Decl. of Eve Samples, attached hereto as Exhibit A, ¶ 16. Given the ongoing construction at the Site without NEPA review of potential environmental impacts, as required by law, immediate injunctive relief is particularly appropriate here. "If construction is not enjoined, these as yet unexamined effects would begin to take place, and no amount of subsequent environmental analysis would undo them." *Florida Wildlife Fed'n*, 404 F. Supp. 2d at 1362.

Accordingly, Plaintiffs respectfully request a temporary restraining order and preliminary injunction to prevent further irreparable harm to Plaintiffs and the fragile area where Defendants are building this detention center. Indeed, given the urgency of this Motion and the flagrancy with which Defendants have flouted NEPA, Plaintiffs request that the Court enter a temporary restraining order immediately without further notice to Defendants, to maintain the status quo until the Court can hold a preliminary injunction hearing.

## II.   ARGUMENT

To obtain a temporary restraining order, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). These same elements must be established to obtain a preliminary injunction. *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018). "The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo*, 403 F.3d at 1231.

Applying these factors, Plaintiffs are entitled to a temporary restraining order and a preliminary injunction to halt the construction of the detention center and all related activity unless and until the DHS and its agents comply with NEPA.

### A. **Plaintiffs Are Likely to Succeed on the Merits.**

NEPA unambiguously requires all federal agencies, including DHS, to prepare an Environmental Impact Statement (EIS) for any major federal action significantly affecting the quality of the human environment. Major federal actions include any action that is subject to "substantial Federal control and responsibility." 42 U.S.C. § 4336e(10)(A); *see also Van Antwerp*, 526 F.3d at 1360 (defining a "major federal action" as "an action significantly affecting the quality of the human environment"). The construction of a 1,000- to 5,000-person mass detention center under the direct control and supervision of DHS to detain individuals for ICE prior to their deportation by the federal government is a major federal action undertaken to

implement a federal statutory program or executive directive – namely, the current administration's mass deportation initiative.

The significant effect of this project on the environment is undeniable: The TNT Site is encompassed by Big Cypress National Preserve, which was established expressly to "assure the preservation, conservation, and protection of the natural, scenic, hydrologic, floral and faunal, and recreational values of the Big Cypress Watershed in the State of Florida and to provide for enhancement and enjoyment thereof." 16 U.S.C. § 698f. The construction of a detention center and accompanying airport facility entails heavy construction traffic, artificial lighting, the use of massive generators, and the creation of significant , which will undoubtedly significantly impact the quality of the environment on the Site and the surrounding environment. *See* Ex. A ¶ 15. Tierra Curry, a biologist at the Center for Biological Diversity, has concluded that the ongoing construction and proposed detention center will have "numerous negative environmental effects," and will likely cause harm to endangered Florida panthers, bonneted bats and Everglades snail kites, as well as threatened wood storks and Eastern indigo snakes. Decl. of Tierra Curry, attached as Exhibit B, at ¶ 12-20.

For "certain infrastructure projects that are built, funded, or approved by the Federal Government, NEPA *requires* federal agencies to prepare an environmental impact statement, or EIS. The EIS must address the significant environmental effects of a proposed project and identify feasible alternatives that could mitigate those effects." *Seven Cnty. Infrastructure Coal.*, 145 S. Ct. at 1507 (emphasis added). Here, Defendants have not prepared an environmental impact statement *at all*, despite the unambiguous requirements of 42 U.S.C. § 4332(C).

Significantly, NEPA contains no exceptions for "emergency" actions, such as the one at issue here. Here, there is no emergency and, even if there were, no alternative arrangements have

7

been implemented. In short, there is no excuse for Defendants' failure to prepare an EIS as required under NEPA.

Plaintiffs' likelihood of success on its claims is patent.

### B. Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief.

The irreparable harm to Plaintiffs and their members if construction of the detention center is not enjoined is also patent. *Ferrero v. Assoc. Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (an injury is "irreparable" if it cannot be undone through monetary remedies).

Plaintiff Friends of the Everglades, Inc. ("Friends"), is a Florida non-profit organization with members and offices in Miami-Dade County. Its mission includes protecting and restoring the Greater Everglades ecosystem, including the Big Cypress National Preserve. *See* Ex. A. Friends' members regularly visit and use the Big Cypress National Preserve for recreational, aesthetic, scientific, and spiritual purposes and will suffer irreparable harm if the detention facility is constructed and operated at the TNT Site. *Id.* Over 18,000 Friends supporters have voiced their opposition to the project. *Id.*

Plaintiff Center for Biological Diversity (the "Center") is a national, nonprofit conservation organization that works through science, law, and policy to protect all species—great and small—hovering on the brink of extinction. *See* Exhibit B. The Center has offices throughout the United States, including in Florida, and more than 93,000 active members across the country. *Id.* The Center's members and staff derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from visiting Big Cypress National Preserve and observing the ecosystems and species who live there. *Id.* The Center's members and staff live near or regularly visit Big Cypress National Preserve and the Greater Everglades Ecosystem. *Id.*

For example, Center member Amber Crooks regularly visits Big Cypress multiple times each year to enjoy the quiet peacefulness of being in a truly natural place where she can observe wildlife and gaze up at the night sky in one of the darkest places east of the Mississippi River. *See* Decl. of Amber Crooks, attached as Exhibit C, at ¶¶ 5-20. She has plans to continue visiting the preserve, with her most immediate plans this Saturday and longer-range plans to visit this fall for hiking, wildlife observation, and photography. *Id.* ¶¶ 6-8.

The Big Cypress area, including the TNT Site, is utilized by Plaintiffs' members to observe the flora and fauna that are found there, including critically endangered Florida panthers and Florida bonneted bats. *Id.* ¶¶ 12-19; Ex. B ¶ 14. Indeed, radio telemetry data shows the presence of Florida panthers (which have large home ranges) in and around the TNT Site. Ex. B ¶¶ 14-15. *See also* Ex. A at Ex. 1. The area's preserved wetlands, immediately adjacent to the Site, are also essential to maintaining South Florida's drinking water supply and provide hurricane resilience. Transportation, construction, and detention infrastructure for up to 5,000 individuals pose a grave risk to this ecosystem and the wildlife that rely on it. Exs. A & C.

These facts establish that Plaintiffs will at a minimum suffer aesthetic and recreational injuries as a result of the construction of the detention center, and they have suffered a procedural injuries, because there has been no opportunity for public notice, comment or environmental review as Congress intended. Ex. A ¶ 19; Ex. B ¶ 21; Ex. C ¶ 22. If DHS had sought and obtained an EIS as NEPA requires, the Site would have been found unsuitable for this purpose, given the proximity to a national preserve and a national park, the potential harmful effects on multiple endangered species, and the billions of public dollars that have been devoted to preserving and restoring the Everglades ecosystem. *Id.* Based on these facts, Plaintiffs clearly have a concrete and redressable injury. *See Ctr. for a Sustainable Coast v. U.S. Army Corps of*

9

*Eng'rs*, 100 F.4th 1349, 1356-57 (11th Cir. 2024); *see also Miccosukee Tribe*, 2008 WL 11332080 at *11 ("the risk implied by a violation of NEPA is that real environmental harm will occur through inadequate foresight and deliberation") (quoting *Sierra Club v. Marsh*, 872 F.2d 497, 504 (1st Cir. 1989)). NEPA creates a procedural right. *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173 (11th Cir. 2006) ("the plaintiffs were harmed when their procedural rights under NEPA were violated"); *Ctr. for a Sustainable Coast*, 100 F.4th at 1356-57 (same). "For procedural rights cases, though injury in fact remains a firm requirement, standards for both causation and redressability are relaxed. So long as a plaintiff alleges that the challenged (or omitted) procedure protects a concrete interest, causation and redressability typically follow—even though we can't know whether that procedure, correctly performed, would have resulted in the substantive outcome that the plaintiff desires." *Ctr. for a Sustainable Coast*, 100 F.4th at 1353 (11th Cir. 2024). Plaintiffs have done that here. *See* Exs. A-C.

Moreover, Plaintiffs' injuries are irreparable. Indeed, it is well established that "[i]rreparable harm results where environmental concerns have not been addressed by the NEPA process." *Miccosukee Tribe*, 2008 WL 11332080 at *11 (citing *Protect Key West, Inc. v. Cheney*, 795 F.Supp. 1552, 1563 (S.D. Fla. 1992)). "[W]hen a decision to which NEPA obligations attach is made without the informed environmental consideration that NEPA requires, the harm that NEPA intends to prevent has been suffered." *Marsh*, 872 F.2d at 500. A NEPA violation necessarily causes irreparable harm because once a federal agency decides to go forward with a major action without a NEPA-required environmental analysis, it is unlikely to change course later, even with the benefit of an EIS. *Id.* ("[o]nce large bureaucracies are committed to a course of action, it is difficult to change that course…it is this type of harm that plaintiffs seek to avoid, and it is the presence of this type of harm that courts have said can merit an injunction in an

appropriate case"). The very purpose of NEPA is to ensure that a government agency takes a "hard look at the environmental consequences of the proposed action," *Sierra Club v. U.S. Army Corps of Engineers*, 295 F.3d 1209, 1216 (11th Cir. 2002), and the Defendants' failure to do so cannot be remedied without preliminary injunctive relief.

### C. The Remaining Factors Weigh in Favor of Injunctive Relief.

Where the government is the opposing party, the balance of equities and public interest factors merge. *Florida Immigrant Coal.*, 2025 WL 1423357 at *13; *Farmworker Ass'n of Fla.*, 734 F.Supp.3d at 1342. As the United States Supreme Court has recognized, "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.,* irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 545 (1987). The balance of harms weighs in Plaintiffs' favor here.

In contrast to the significant environmental harms that will result from the construction of a detention center/airport in the middle of a national preserve, and the procedural harm from failing to comply with law requiring an assessment of such harms before proceeding, any harm Defendants may shoulder if enjoined would be minimal at best. DHS already has and contracts with multiple detention centers in Florida and across the United States. To the extent that DHS claims to have insufficient capacity to detain people in response to its own initiative to ramp up apprehensions, that lack of planning does not require or justify bypassing federal laws to develop a new facility within a national preserve and next to a national park. Indeed, part of the NEPA process requires federal agencies to review and consider all reasonable alternatives. *See* 42

U.S.C. § 4332(C). DHS and the State have evidently failed to consider other potential sites without such devastating environmental impacts, despite NEPA's mandate that they do so.

Defendants no doubt will invoke their interest in enforcement of immigration laws to oppose injunctive relief. In taking control of the TNT Site, the State of Florida has invoked its "emergency" powers under a 2023 executive order of the Governor declaring immigration an "emergency" – an "emergency" now in its third year, with no discernible effort to develop a mass detention facility in the intervening years. Putting aside whether intractable political gridlock over immigration reform constitutes an "emergency," it does not give license to the state and federal governments to simply disregard the laws that govern federal projects affecting environmentally sensitive lands, essential waterways, national parks and preserves, and endangered species. "[E]ven a 'legitimate' governmental interest can be outweighed by the harm" to a plaintiff arising from government actions in service of that interest, as in this case. *Farmworker Ass'n of Fla.*, 734 F.Supp.3d at 1342 (enjoining enforcement of state law aimed at immigration).

Moreover, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal citations omitted). "To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Id.* The federal immigration laws enjoy no privilege over NEPA, the APA, the Endangered Species Act, the National Park Service Organic Act, or the Big Cypress enabling statute. It is not too much to ask that the federal and state governments comply with the law – *all* laws – while fulfilling their duties. As the Supreme Court has said, "our system does not permit agencies to

12

act unlawfully even in pursuit of desirable ends." *Alabama Ass'n of Realtors v. Dep't of Health & Human Servs.*, 594 U.S. 758, 766 (2021).

The harm to Plaintiffs and to the environment that NEPA is designed to protect far outweighs the Defendants' interests in constructing a mass detention facility in a national preserve without the required environmental reviews. The public interest factors weigh in favor of injunctive relief.

## CONCLUSION

The facts contained in this Motion, the attached declarations, and the Complaint confirm that Plaintiffs will be irreparably harmed without immediate injunctive relief, particularly given the ongoing construction of the detention center on the Site and Defendants' intent to begin detaining individuals on the Site by July 1, 2025. Accordingly, Plaintiffs respectfully request that a temporary restraining order be entered by no later than July 1, 2025, pursuant to Rule 65(b) and Local Rule 7.1(d). Moreover, for the reasons stated herein, Plaintiffs respectfully request that the Court subsequently enter a preliminary injunction.

Plaintiffs also request that the Court's orders granting injunctive relief require a nominal bond of $100. *See BellSouth Telecomm., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (internal citations omitted) ("the amount of security required by the rule is a matter within the discretion of the trial court…and the court may elect to require no security at all").

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Temporarily restrain and enjoin Defendants Noem, Lyons and Guthrie any of their officers, agents, servants, employees, attorneys and any other persons who are in active concert or participation with any of the Defendants from engaging in any pre-construction

activities, construction, conversion, or use of the TNT Site for purposes of immigration detention unless and until Defendants comply with NEPA and the APA;

  B. Temporarily restrain and enjoin Defendants Noem, Lyons and Guthrie and any of their officers, agents, servants, employees, attorneys and any other persons who are in active concert or participation with any of the Defendants from authorizing or permitting further development or use of the TNT Site for purposes related to a noncitizen detention center;

  C. Temporarily restrain and enjoin Miami-Dade County and any of its officers, agents, servants, employees, attorneys and any other persons who are in active concert or participation with any of the Defendants from authorizing or otherwise allowing the use of the TNT Site limited to aviation activities as a detainment center for noncitizens or related activities.

  D. Grant such other relief as the Court deems just and proper.

Pursuant to S.D. Fla. L.R. 7.1(a)(2), a proposed order as been filed and served via email to the Court in Word version.

Dated: June 27, 2025

Respectfully submitted,

| | |
|---|---|
| EARTHJUSTICE<br>4500 Biscayne Boulevard, Suite 201<br>Miami, Florida 33137<br>Telephone: (305) 440-5432<br><br>By:  s/ Tania Galloni<br> Tania Galloni, Fla. Bar No. 619221<br> tgalloni@earthjustice.org<br> Dominique Burkhardt, Fla. Bar No. 100309<br> dburkhardt@earthjustice.org<br><br>*Counsel for Friends of Everglades* | COFFEY BURLINGTON, P.L.<br>2601 South Bayshore Drive, Penthouse One<br>Miami, Florida 33133<br>Telephone: (305) 858-2900<br><br>By:  s/ Paul J. Schwiep<br> Paul J. Schwiep, Fla. Bar No. 823244<br> PSchwiep@CoffeyBurlington.com<br> Scott Hiaasen, Fla. Bar No. 103318<br> SHiaasen@CoffeyBurlington.com<br> YVB@CoffeyBurlington.com<br> LPerez@CoffeyBurlington.com<br> service@CoffeyBurlington.com<br><br>*Counsel for All Plaintiffs* |

CENTER FOR BIOLOGICAL DIVERSITY
Elise Pautler Bennett, Fla. Bar No. 106573
ebennett@biologicaldiversity.org
Jason Alexander Totoiu, Fla. Bar No. 871931
jtotoiu@biologicaldiversity.org
Post Office Box 2155
St. Petersburg, FL 33731
Telephone:  (727) 755-6950

*Counsel for Center for Biological Diversity*

### REQUEST FOR HEARING

Pursuant to S.D. Fla. L.R. 7.1(b)(2), Plaintiffs respectfully request a hearing on this motion, which will assist the Court in considering the facts and legal issues raised in this case, which involves an issue of public importance.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 27, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.

                                                  /s/   Paul J. Schwiep
                                                  Paul J. Schwiep