UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
No. 25-cv-22896-JEM

FRIENDS OF THE EVERGLADES, INC., et al.

      Plaintiffs,

v.

KRISTI NOEM, et al.,

      Defendants.

_____

**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs ask this Court to halt Florida's construction and operation of a temporary detention facility on a state-owned airfield near the Everglades because the Department of Homeland Security[1] ("DHS") did not conduct an analysis that Plaintiffs allege was required under the National Environmental Policy Act ("NEPA"). Plaintiffs' motion fails on multiple independent grounds rooted in fundamental limits on federal court jurisdiction and the scope of federal environmental law.

First, Plaintiffs fail to identify any final agency action by a federal defendant. DHS has not implemented, authorized, directed, or funded Florida's temporary detention center. Florida is constructing and operating the facility using state funds on state lands under state emergency authority and a preexisting general delegation of federal authority to implement immigration functions. The "final agency action" that the Administrative Procedure Act ("APA") requires as a prerequisite to judicial review is entirely absent here.

_____

[1] For ease of reference, this brief uses "DHS" to refer to both DHS, U.S. Immigration and Customs Enforcement ("ICE"), and the Federal Emergency Management Agency ("FEMA") unless specifically stated otherwise.

1

Second, any potential federal funding claims are unripe. Florida has received no federal funds, nor has it applied for federal funds related to the temporary detention center. Courts cannot adjudicate hypothetical future funding decisions or render advisory opinions on contingent scenarios that may never materialize.

Third, even if Florida's decision to detain aliens at its temporary detention center were deemed to be final agency action by DHS and aliens at the temporary detention center were deemed to be in ICE detention, the requested injunctive relief would be barred by 8 U.S.C. § 1252(f)(1).

Fourth, Plaintiffs demonstrate no irreparable harm. Under *Winter*, NEPA violations do not create presumptive irreparable injury. *Winter v. Natural Resources Defense Council*, 55 U.S. 7 (2008). Plaintiffs offer only speculation about impacts from a temporary facility on an already-developed airfield hosting more than 28,000 flights annually.

Each ground independently requires denial of emergency relief.

DHS generally agrees with the arguments raised in Defendant Kevin Guthrie's Opposition brief. Dkt. No. 16. But DHS's response below points the Court to salient facts provided by federal declarants—David Richardson of FEMA and Thomas Giles of Immigration and Customs Enforcement ("ICE"). These facts require denial of Plaintiffs' Motion.

## ARGUMENT

To make the required showing for issuance of a temporary restraining order—an "extraordinary and drastic remedy"—a Plaintiff must show: "(1) a substantial likelihood of success on the merits; (2) that the preliminary injunction is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the preliminary injunction would cause the other litigant; and (4) that the preliminary injunction would not be averse to the public interest." *Gissendaner v.*

*Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015).  Plaintiffs fail to make any of these showings.

## I.     Plaintiffs are unlikely to succeed on the merits because they fail to challenge a final agency action or to bring a claim properly under this Court's jurisdiction.

Plaintiffs' arguments against DHS fail on the merits for two reasons that preclude the Court's exercise of jurisdiction and demonstrate that they have failed to show a likelihood of success.

First, Plaintiffs' fail to allege a *federal* final agency action in connection with *Florida's* temporary detention and deportation facility.  Plaintiffs bring one of their NEPA claims against DHS through the APA, as they must.  Compl. ¶¶ 75-79 (Count II), Dkt. No. 1; *Lowman v. Fed. Aviation Admin.*, 83 F.4th 1345, 1356 n.12 (11th Cir. 2023).  But the APA can only be used to challenge "final agency action."  5 U.S.C. § 704; *see Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003).  The Supreme Court has articulated a two-part test for determining whether agency action is "final" under the APA: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).  The "core question" of finality "is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992).

Plaintiffs fail to identify a federal final agency action regarding construction of the temporary detention center.  Neither ICE nor FEMA has implemented, directed, or controlled the construction work at the temporary detention center.  Giles Decl. ¶ 5, attached as Exhibit 1.  And

Plaintiffs fail to identify any federal funding for the facility that could serve as a final agency action. Neither ICE nor FEMA has sent any funds to Florida in connection with the temporary detention center. *Id.* ¶¶ 5, 9-10 (explaining that ICE has not funded construction or purchased or procured any detention space from Florida for the detention of aliens at the temporary detention center); Richardson Decl. ¶ 4 (explaining that Florida has not received any grants from FEMA for the temporary detention center), attached as Exhibit 2. Nor are there any pending funding applications from Florida to the federal government regarding the facility. *Id.* (explaining that Florida has not applied for any FEMA grants for the temporary detention center).

Second, Plaintiffs' claims based on *potential* future funding decisions are not ripe. *See Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) ("Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions and wasting resources through review of potential or abstract disputes." (citation omitted)). Citing a YouTube video, Plaintiffs suggest that the detention center is "fully funded by the federal government." Dkt. No. 5 at 2. But the federal government has not paid *any* money for the facility. Several necessary steps would have to occur before Plaintiffs' claims could ripen: (1) Florida must apply for funding; (2) DHS must evaluate the request under the applicable legal standards; and (3) there must be a final decision on whether to award such funding. None of these steps has occurred. The ripeness doctrine thus counsels strongly against a temporary restraining order based on potential future funding. *See Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) ("The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes.").

Third, to the extent Plaintiffs argue that the federal action is DHS's presumptive authorization of Florida's detention of aliens at the facility, that too fails because the decision to detain aliens

at the temporary detention center is not a federal final agency action.  Florida's general authority

to perform immigration functions is authorized by the federal government based on an agreement

under subsection 287(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1357(g),

which authorizes DHS to enter into agreements with state and local law enforcement agencies to

delegate authority to carry out immigration functions.  Giles Decl. ¶¶ 7-8.  Thus, any decision to

detain aliens under a § 1357(g) agreement at the temporary detention center would be Florida's

decision, not DHS's.  *See Colo. Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1174 (10th

Cir. 2000) ("This document is merely a general agreement for state and federal agencies to work

together in the future on specific projects and as such is not 'final agency action.'" (citation omit-

ted)).

Even if detainees held by Florida pursuant to its § 287(g) authority were deemed to be in

ICE custody, the injunctive relief Plaintiffs seek would be barred.  Paragraph 242(f)(1) of the INA,

deprives district courts of jurisdiction to enjoin ICE's detention authority except in a challenge to

an individual alien's detention. 8 U.S.C. § 1252(f)(1).[2]  The Supreme Court has repeatedly held

that Section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order fed-

eral officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out

the specified statutory provisions."  *Biden v. Texas*, 597 U.S. 785, 797 (2022) (*quoting Garland v.*

*Aleman Gonzalez*, 596 U.S. 543, 544 (2022)).

---

[2] Paragraph 242(f)(1) provides:

Regardless of the nature of the action or claim or of the identity of the party or parties
bringing the action, no court (other than the Supreme Court) shall have jurisdiction or au-
thority to enjoin or restrain the operation of the provisions of part IV of [the INA] … other
than with respect to the application of such provisions to an individual alien against whom
proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1). ICE's detention authority arises from 8 U.S.C. §§ 1225, 1226, and 1231—
all provisions within Part IV of the INA.

5

Section 1252(f)(1) thus eliminates the Court's authority to issue coercive orders restraining implementation of Section 1225.

Plaintiffs' NEPA claim against Federal Defendants, Count I, Compl. ¶¶ 61-74, fails for an independent reason.  They failed to bring it under the APA's cause of action.  *Lowman*, 83 F.4th at 1356 n.12.

Plaintiffs have identified no final agency action on which their APA challenge can rely, so they have failed to show a likelihood of success on the merits.

## II.   Plaintiffs have not shown that they will suffer irreparable harm from the temporary detention center.

A NEPA violation does not prove irreparable harm—a plaintiff must still show a likelihood that environmental harm will result.  Dkt. No. 16 at 15 (citing *Winter*, 555 U.S. at 22–23); *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 145 S. Ct. 1497 (2025) ("[R]eviewing court[s] must account for the fact that NEPA is a *purely procedural statute*.").  Plaintiffs fail to make that showing here because they do not explain how construction of the temporary detention center, or the detention of aliens there, will irreparably harm their concrete interests.  *See Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, 100 F.4th 1349, 1353 (11th Cir. 2024) (holding that plaintiffs must "allege[] that the challenged (or omitted) procedure *protects a concrete interest*." (emphasis added)).

Plaintiffs claim an interest in observing sensitive wildlife and enjoying "natural" environments, like preserved wetlands and the dark night sky.  Dkt. No. 5 at 8-9.  But Plaintiffs fail to show that this temporary detention center will irreparably harm these interests.  Rule 65(b) requires a movant to set forth "specific facts" showing "imminent and irreparable injury" that will result before a party can be heard in opposition.  Fed. R. Civ. P. 65(b)(1)(A); *see Carepatrol Franchise Systems, LLC v. Kirby Care, Inc.*, No. 20-cv-22662, 2020 WL 4464698, at **1-2 (S.D. Fla. July 1,

2020) (denying a motion for temporary restraining order and preliminary injunction because plaintiff did not comply with Rule 65's procedural requirements for the issuance of a temporary restraining order).  Plaintiffs do not meet this standard. They never identify what specific "[t]ransportation, construction, and detention infrastructure" connected with the facility will result in an irreparable injury to their interests in enjoying the flora and fauna of the existing airstrip.  ECF No. 5 at 9. Connecting these dots is crucial to establishing irreparable harm because the facility is temporary, and the existing airport makes for an already developed, largely unnatural landscape. *See* Dkt. No. 16 at 6 ("About 28,000 flights have used the airfield in the last six months); *see also id.* at 17-19.  Further, the existing airport provides no meaningful public access for wildlife viewing or enjoying nearby wetlands, and Plaintiffs have failed to explain how the challenged activities diminish their access to the area more than the status quo.

Without more, Plaintiffs' claims of irreparable harm are too speculative and conclusory to support a temporary restraining order.

## III.    The public interest and balance of the equities support denial of Plaintiffs' Motion.

When the government is opposing a motion for temporary restraining order, the balance of the equities and public interest factors merge.  *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020).  Here, the significant national interest in combatting unlawful immigration favors allowing Florida to continue the development and use of its facility.  *See* Giles Decl. ¶ 11 (explaining that the temporary detention center's use in detaining aliens operationally benefits ICE and furthers its immigration enforcement mission).  As the President explained:

> Enforcing our Nation's immigration laws is critically important to the national security and public safety of the United States.  The American people deserve a Federal Government that puts their interests first and a Government that understands

its sacred obligation to prioritize the safety, security, and financial and economic well-being of Americans.

Protecting the American People Against Invasion, 90 Fed. Reg. 8443, 8443 (Jan. 20, 2025).  If the facility is temporarily restrained, this critical national interest will be hindered.  *See* Giles Decl. ¶ 11 (explaining that the operation of the temporary detention center will further ICE's immigration enforcement mission by decompressing other detention facilities used to house aliens throughout the United States).  In comparison to the speculative, conclusory harms claimed by Plaintiffs, *see supra* Sect. II, the public interest and balance of the equities favor denial of Plaintiffs' Motion.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' request for a temporary restraining order.

Respectfully submitted on July 3, 2025.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

PETER M. TORSTENSEN, JR.
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*s/   Hayley A. Carpenter*
HAYLEY A. CARPENTER (CA Bar No. 312611)
Trial Attorney
Natural Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0242
hayley.carpenter@usdoj.gov

*Counsel for Kristi Noem, in her official capacity as Director of Homeland Security; and Todd Lyons, in his official capacity as Acting Director of the United States Immigration and Customs Enforcement*