# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FRIENDS OF THE EVERGLADES, INC., a Florida 501(c)(3) not-for-profit corporation, and CENTER FOR BIOLOGICAL DIVERSITY, a 501(c)(3) nonprofit organization,<br><br>    Plaintiffs,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, in his official capacity as Acting Director of the UNITED STATES IMMIGRATION CUSTOMS ENFORCEMENT; KEVIN GUTHRIE, in his official capacity as Executive Director of the Florida Division of Emergency Management; and MIAMI-DADE COUNTY, a political subdivision of the State of Florida<br><br>    Defendants. | Civil Case No. 1:25-cv-22896 |

## BRIEF OF FLORIDA IMMIGRANT COALITION
## AS AMICUS CURIAE IN SUPPORT OF PLAINTIFFS

---

Rebecca Sharpless (Fla. Bar No. 0131024)
Andrea Jacoski (Fla. Bar. No. 1059001)
rsharpless@law.miami.edu
ajacoski@law.miami.edu
**IMMIGRATION CLINIC –
UNIVERSITY OF MIAMI SCHOOL OF LAW**
1311 Miller Drive, Suite B400
Coral Gables, FL 33146
Tel: (305) 284-3576
Fax: (305) 284-6092

Alana Greer (Fla Bar No. 92423)
Will Mann (Fla Bar No. 1058086)
alana@communityjusticeproject.com
will@communityjusticeproject.com
**COMMUNITY JUSTICE PROJECT, INC.**
3000 Biscayne Blvd. Suite 106
Miami, Florida 33137
Tel: (305) 907-7697

## Table of Contents

Table of Contents ................................................................................... *Error! Bookmark not defined.*

Table of Authorities ................................................................................................................. *iii*

Interest of Amicus Curiae ........................................................................................................... 1

Summary of the Argument .......................................................................................................... 1

Argument .................................................................................................................................... 2

    I.    Immigration Enforcement is a Federal Responsibility. States May Act Only with Federal Authorization. ................................................................................................ 2

    II.    A State Cannot Arrange a Place of Immigration Detention. ............................................ 3

    III.    The TNT is a Place of Immigration Detention. ................................................................ 6

    IV.    Federal Law Specifies When and How the State Can Assist with Immigration Enforcement ................................................................................................................... 8

    V.    The State's 287(g) Agreement Does Not Authorize the State to Create TNT Without Prior Federal Approval. ................................................................................................... 9

Conclusion ................................................................................................................................ 11

## Table of Authorities

### CASES

*Arizona v. United States*, 567 U.S. 387, 407-09 (2012)..................................................................2, 3
*CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 490–91 (D.N.J. 2023) ........................................6
*DeCanas v. Bica*, 424 U.S. 351, 354 (1976)..................................................................................3
*Fla. Immigrant Coal. v. Uthmeier,* No. 25-21524-CV, 2025 WL 1423357 (S.D. Fla. Apr. 29, 2025)..................................................................................................................................3
*Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 762 (9th Cir. 2022)........................................................4
*United States v. Texas*, 97 F.4th 268 (5th Cir. 2024)......................................................................3
*United States v. Texas*, No. 24-50149, 2025 WL 1836640 (5th Cir. July 3, 2025).......................3

### STATUTES

18 U.S.C. § 4001(b)(1) ....................................................................................................................3
18 U.S.C. § 4086..............................................................................................................................3
8 C.F.R. § 235.3(e)...........................................................................................................................5
8 U.S.C. § 1103(a)(1).......................................................................................................................2
8 U.S.C. § 1103(a)(10).....................................................................................................................9
8 U.S.C. § 1226(a) ...........................................................................................................................8
8 U.S.C. § 1231(g) ....................................................................................................... 1, 2, 3, 4, 6, 8, 9, 10
8 U.S.C. § 1252c..............................................................................................................................9
8 U.S.C. § 1324(c) .......................................................................................................................8, 9
8 U.S.C. § 1357(a)(2)......................................................................................................................8
8 U.S.C. § 1357(a)(4)......................................................................................................................8
8 U.S.C. § 1357(b) ..........................................................................................................................8
8 U.S.C. § 1357(g) ............................................................................................................. 9, 10, 11
8 U.S.C. § 1357(g)(3) ...................................................................................................................10
8 U.S.C. §§ 1357(a)–(f) ..................................................................................................................9
8 U.S.C. §§1101(a)(18)...............................................................................................................2, 8
8 U.S.C.§ 1103(g) ...........................................................................................................................2
IIRIRA, Pub. L. No. 104-208, Div. C, § 373, Stat. 3009-546 3009-647 ........................................4

## Interest of Amicus Curiae

Florida Immigrant Coalition (FLIC), is a non-profit organization and statewide coalition of 85 member organizations and over 100 allies, founded in 1998 and formally incorporated in 2004. FLIC is led by their membership, including grassroots and community organizations, farmworkers, youth, advocates, lawyers, and union members. FLIC works towards the fair treatment of all people, including immigrants. The organization's core constituency are immigrants whose marginalization exists at the intersection of immigration status and other vulnerabilities. FLIC files this amicus brief to explain the circumstances in which Congress has authorized the designation of appropriate places for civil immigration detention and to provide an analysis of what role state and local officials are permitted to play within the immigration enforcement system Congress created. The Court's correct resolution of the issues presented here is of great importance to FLIC, its members, and the communities they serve.

## Summary of the Argument

The Secretary of Homeland Security has the sole legal authority "to arrange for appropriate places" of immigration detention. 8 U.S.C. § 1231(g). State and local governments have no authority to arrange for places of immigration detention, and nothing permits the federal government to delegate its 8 U.S.C. § 1231(g) power to them. The people detained at Dade-Collier Training and Transition Airport (TNT) are in civil immigration detention, not criminal detention. If TNT is a lawful "place[]" of immigration detention, TNT must have been "arrange[d]" by the Secretary of Homeland Security. 8 U.S.C. § 1231(g). Amicus Curiae Florida Immigrant Coalition urges the Court to grant plaintiffs' motion for a temporary restraining order because the TNT is a place of immigration detention authorized by the federal government and under its control.

**Argument**

I. **Immigration Enforcement is a Federal Responsibility. States May Act Only with Federal Authorization.**

The Immigration and Nationality Act is the "system Congress created" for the immigration arrest, detention, and removal process. *Arizona v. United States*, 567 U.S. 387, 407-09 (2012). This federal scheme assigns the responsibility for immigration enforcement—including "arrang[ing] for appropriate places of detention for aliens detained pending removal or a decision on removal"—to federal authorities. 8 U.S.C. § 1231(g); *see also* 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens[.]"); *id.* at § 1103(g) (authority to issue regulations and instructions necessary to carry out immigration enforcement). Federal officers—not state or local officials—are tasked with investigating, arresting, and detaining people suspected of violating immigration law. State involvement is permitted in these specific enforcement activities only when explicitly authorized by federal law. For instance, the federal government may delegate to state and local officers the power that "immigration officers" have to enforce immigration law, including investigating and arresting people suspected of violating immigration law. *See* 8 U.S.C. § 1101(a)(18) (defining "immigration officer"). But *no* federal law authorizes the State to "arrange for appropriate places of detention." 8 U.S.C. § 1231(g). Only the federal government can authorize a place of immigration detention.

States have no inherent authority to regulate in the immigration field. *See Arizona v. United States*, 567 U.S. 387, 295 (2012) ("The federal power to determine immigration policy is well settled."); *Hampton v. Mow Sun Wong*, 426 U.S. 88 (1976) ("It is important to note that the authority to control immigration is ... vested solely in the Federal Government, rather than the States ...."); *DeCanas v. Bica*, 424 U.S. 351, 354 (1976) ("Power to regulate immigration is

2

unquestionably exclusively a federal power."). "For nearly 150 years, the Supreme Court [and other federal courts have] held that the power to control immigration—the entry, admission, and removal of noncitizens—is exclusively a federal power." *Fla. Immigrant Coal. v. Uthmeier,* No. 25-21524-CV, 2025 WL 1423357, at *7 (S.D. Fla. Apr. 29, 2025) (citing *United States v. Texas*, 97 F.4th 268, 278–79 (5th Cir. 2024)); *see also United States v. Texas*, No. 24-50149, 2025 WL 1836640, at *22 (5th Cir. July 3, 2025).

## II. A State Cannot Arrange a Place of Immigration Detention.

Especially when Congress enumerates a specific immigration power, the State cannot act without federal authorization. *Arizona v. United States*, 567 U.S. 387, 401 (2012). The INA provision granting the federal government the power to authorize places of immigration detention, 8 U.S.C. § 1231(g), is labeled "Places of Detention," and states:

> (1)   The Attorney General[1] shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal.

This provision has been part of the INA since its original enactment in 1952[2] and mirrors others that delegate the authority to provide for people in federal detention. *See* 18 U.S.C. § 4001(b)(1) ("The control and management of Federal penal and correctional institutions ... shall be vested in the Attorney General, who shall promulgate rules for the government thereof ..."); 18 U.S.C. § 4086 ("United States marshals shall provide for the safe-keeping of any person arrested, or held

---

[1] Following the Homeland Security Act of 2002, many references in the INA to the "Attorney General" are now read to mean "DHS Secretary." *See Clark v. Suarez Martinez*, 543 U.S. 371, 374 n. 1 (2005).
[2] The provision was originally codified at 8 U.S.C. § 1252(c) (1952), Immigration and Nationality Act, Pub. L. No. 82-414, ch. 477, § 242(c), 66 Stat. 163, 210 (1952). The provision was reenacted and moved to its current location at section 1231(g) as part of a reorganization of the statute under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. Pub. L. No. 104-208, Div. C. §§ 305 & 306, Stat. 3009-546, 3009-597 to 3009-612.

3

under authority of any enactment of Congress pending commitment to an institution."). Courts have recognized that the authority to "arrange for appropriate places of detention" under section 1231(g) is solely a federal power. *See, e.g., Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 762 (9th Cir. 2022) ("Congress sought to delegate to the DHS Secretary the responsibility to 'arrange for appropriate places of detention.'"). Legislative history of 8 U.S.C. § 1231(g) shows that Congress wanted "to ensure that noncitizens are detained in the appropriate type of civil detention facility, rather than in punitive camps or farms." Alina Das, *The Law and Lawlessness of U.S. Immigration Detention*, 138 Harv. L. Rev. 1186, 1250–51 (2025).[3]

A provision found in another part of the INA, 8 U.S.C. § 1103(a)(11), authorizes Immigration and Customs Enforcement (ICE) to contract out its detention responsibilities "with a State or political subdivision of a State" for "persons in administrative detention in non-Federal institutions." Congress enacted 8 U.S.C. § 1103(a)(11) when it recodified the "Places of Detention" provision described above at section 1231(g). *See* IIRIRA, Pub. L. No. 104-208, Div. C, § 373, Stat. 3009-546 3009-647 (codifying current Section 1103(a)(11) at Section 1103(a)(9)). 8 U.S.C. § 1103(a)(11) states, in relevant part:

> The Attorney General, in support of persons in administrative detention in non-Federal institutions, is authorized—

---

[3] *See also* Das, at 1227 n. 328 (citing *Crime to Promote the Overthrow of Government: Hearing on H.R. 5138 Before Subcomm. No. 3 of the H. Comm. on the Judiciary*, 76th Cong. 40 (1939) (statement of Ralph Emerson, Rep., Maritime Unions of the Committee for Industrial Organizations) (opposing the detention provisions "[i]nsofar as [they] would go towards setting up any specific concentration camps" and stating: "[W]e would hate to see this country adopt a law that would in any way follow the example of Nazi Germany. . . . I think we can take other measures to take care of them if they are deportable, without regimenting them in such camps as that, which I would not want to see any human being in"); *id.* at 24 (statement of Read Lewis, Rep., Foreign Language Information Service) (opposing detention provision as authorizing the detention of immigrants "in a concentration camp for the rest of [their] li[ves]")).

4

> (A) to make payments from funds appropriated for the administration and enforcement of the laws relating to immigration, naturalization, and alien registration for necessary clothing, medical care, necessary guard hire, and the housing, care, and security of persons *detained by the Service* pursuant to Federal law under an *agreement* with a State or political subdivision of a State …
>
> (B) to enter into a cooperative *agreement* with any State, territory, or political subdivision thereof, for the necessary construction, physical renovation, acquisition of equipment, supplies or materials required to establish acceptable conditions of confinement and detention services in any State or unit of local government which agrees to provide guaranteed bed space for persons *detained by the Service*.

8 U.S.C. § 1103(a)(11) (emphasis added). Nothing in these provisions permits a State or political subdivision of a State to authorize a place of immigration detention. Only the federal government can arrange for such a place. But after the federal government authorizes a place for immigration detention, the State can act under section 1103(a)(11), but it must do so under an "agreement" with the federal government. People held in detention are still "detained by the [Immigration and Naturalization] Service." *Id*. Federal regulations make clear the necessity for federal approval *prior to* the State taking action:

> Whenever an alien is taken into Service custody and detained at a facility other than at a Service Processing Center, the public or private entities contracted to perform such service *shall have been approved for such use by the Service's Jail Inspection Program or shall be performing such service under contract in compliance with the Standard Statement of Work for Contract Detention Facilities*. Both programs are administered by the Detention and Deportation section having jurisdiction over the alien's place of detention. *Under no circumstances shall an alien be detained in facilities not meeting the four mandatory criteria for usage*.

8 C.F.R. § 235.3(e) (emphasis added). Taken together, the "'purpose and intended effects' of these statutes, ... is to permit the federal government to make independent decisions on the proper manner for housing its own detainees. These statutes "give[] both responsibility and broad discretion to the Secretary to choose the place of detention for deportable aliens."

5

*CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 490–91 (D.N.J. 2023) (internal citations omitted).

### III.  The TNT is a Place of Immigration Detention.

The TNT's sole purpose is to operate as a "place[] of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g). Everyone detained at TNT is in civil immigration detention; no one at TNT is in criminal custody. The makeshift cages and tents were erected to hold people in immigration detention. Agents and elected officials of the State of Florida have made numerous, unambiguous statements stating that TNT is a civil immigration jail. On June 27, 2025, Florida Governor Ron DeSantis wrote on x.com, "Florida is stepping up to help increase deportations … Alligator Alcatraz is a secure facility in Florida that will stage criminal illegal aliens for mass deportation."[4] On July 1, 2025, he described the TNT as "Florida's on-stop shop for staging illegal aliens for deportation. Alligator Alcatraz can stage 3000 detainees for efficient removal–and has a two-mile runway to allow federal aircraft to transport illegal aliens directly out of the country."[5]

On July 1, 2025, Florida Attorney General James Uthmeier shared an image on x.com with the phrase "Alligator Alcatraz" and commented "One way in. One flight out."[6] On July 2, he wrote "Alligator Alcatraz will be checking in hundreds of criminal illegal aliens tonight. Next stop: back

---

[4] Ron DeSantis (@GovRonDeSantis), X (Jun 27, 2025, 9:20 am), https://x.com/GovRonDeSantis/status/1938588190450872598 .
[5] Ron DeSantis (@GovRonDeSantis), X (Jul 1, 20215, 3:15 pm), https://x.com/GovRonDeSantis/status/1940127034858250439 .
[6] James Uthmeier (@AGJamesUthmeier), X (Jul. 1, 2025, 10:15 am), https://x.com/AGJamesUthmeier/status/1940051516750016761 .

to where they came from."[7] On July 6, he highlighted the "transport [of] illegal aliens to Alligator Alcatraz before they're sent back to where they came from."[8]

The State of Florida understands that, as a place of immigration detention, TNT must meet ICE's National Detention Standards.[9] These standards, consisting of 232 pages, were reissued in 2025 and address specifications ranging from the size of "hold rooms in detention facilities" to "law libraries and legal materials."[10] In the "State of Florida Immigration Enforcement Operations Plan—a pitch to the federal government to deem the TNT and other Florida sites as appropriate to house immigrant detainees, the State promised that "[e]ach detention center would adhere to ICE's National Detention Standards." D.E. 24-1 at 13. Despite that assurance, the State noted that "DHS could issue waivers for … select ICE detention standards—such as requirements for barber services or dining facilities that do not meet current federal specifications" in order to "streamline the setup of detention facilities." *Id.* These statements establish that, from its inception, TNT has been a place of civil immigration detention.

---

[7] James Uthmeier, (@AGJamesUthmeier), X (Jul 2, 2025, 5:01 pm), https://x.com/AGJamesUthmeier/status/1940516085255831962 .

[8] James Uthmeier, (@AGJamesUthmeier), X (Jul 6, 2025, 1:41 pm), https://x.com/AGJamesUthmeier/status/1941915334144905253 .

[9] 2025 National Detention Standards, U.S. Immigration and Customs Enforcement, *available at* https://www.ice.gov/detain/detention-management/2025.

[10] *Id*. After Congressional hearings investigating the lack of adequate medical care in immigration detention centers, Congress passed a provision barring ICE from funding contracts for detention facilities that fail two consecutive overall performance evaluations. *See* Consolidated Security, Disaster Assistance, and Continuing Appropriations Act of 2009, Pub. L. No. 110-329, Div. D., Tit.II, 122 Stat. 3574, 3658-59 (2008). Since 2008, Congress has renewed this provision. 2024 H.R. 4366; 118 H.R. 4366. H.R.1968 - 119th Congress (2025-2026): Full-Year Continuing Appropriations and Extensions Act, 2025, H.R.1968, 119th Cong. (2025).

### IV. Federal Law Specifies When and How the State Can Assist with Immigration Enforcement.

Consistent with immigration control being a federal power, the INA limits enforcement authority to designated federal "immigration officers." *See* 8 U.S.C. § 1101(a)(18) (defining "immigration officer" as "*any employee or class of employees of the Service or of the United States designated by the Attorney General … to perform the functions of an immigration officer specified by this chapter or any section of this title*") (emphasis added). Section 1357 of Title 8 outlines the powers of these officers, including the authority to arrest people for civil and criminal immigration violations. *See*, *e.g.*, 8 U.S.C. § 1357(a)(2), 8 U.S.C. § 1357(a)(4); *id*. at 1357(b) (power to take evidence regarding entry or residence status); § 1226(a) (authorizing detention based on a warrant issued by the Attorney General).

In some limited circumstances, the federal government may delegate these powers to State or local officers—but only with express authorization. States may engage in immigration enforcement only in four narrow situations, each defined and limited by federal statute. *None* of these carefully delineated provisions includes the power to arrange for a place of detention. As discussed above, that power, granted by Congress in 8 U.S.C. § 1231(g), lies solely with the Secretary of Homeland Security.

Of the four provisions permitting State immigration enforcement actions, three require specific federal authorization before a State may act. The only exception—8 U.S.C. § 1324(c)—permits state and local officers to arrest individuals for the *criminal* immigration offenses of transporting, smuggling, or harboring unauthorized noncitizens, but only if their regular duties include enforcing criminal laws. Section 1324(c) does not authorize the State to arrange for a place of immigration detention or even detain people for *civil* immigration violations. The other three provisions—each of which requires express federal authorization—are as follows:

8

1.      8 U.S.C. § 1252c permits state and local law enforcement to arrest previously deported noncitizens suspected of illegal reentry under federal law. However, such arrests must be based on "appropriate confirmation" of immigration status from federal authorities and are permitted only for the time necessary for federal officials to take custody.

2.      8 U.S.C. § 1103(a)(10) allows the Attorney General to temporarily authorize state and local officers to enforce immigration law, but only in the event of "an actual or imminent mass influx of aliens" and only under strict federal control.

3.      8 U.S.C. § 1357(g)—cited by Defendants as the source of State power in this case (D.E. 21 at 5)—provides the most detailed framework for state involvement. As explained below, this provision allows state officers to perform specific functions of federal immigration officers, but only pursuant to a *formal written agreement* with the Attorney General. Such agreements must meet detailed requirements and are subject to ongoing federal oversight. None of the specific functions include arranging for appropriate places of immigration detention.

These four provisions—8 U.S.C. §§ 1324(c), 1252c, 1103(a)(10), and 1357(g)—all have to do with deputizing State officers to carry out the work of "immigration officers" by investigating and arresting people for immigration violations. None of the provisions touch on the distinct power of the Secretary of Homeland Security to arrange for appropriate places of detention. Under 8 U.S.C. § 1231(g), this power lies solely with the federal government, and it cannot be delegated. If TNT was authorized, it must have been authorized by the federal government.

V.    **The State's 287(g) Agreement Does Not Authorize the State to Create TNT Without Prior Federal Approval.**

Statements of the federal government suggest 8 U.S.C. § 1357(g) as the claimed source of State authority. D.E. 21 at 5. This provision, following 8 U.S.C. § 1357(a)–(f), reaffirms that arrest and other immigration enforcement actions are "functions of an immigration officer" that belong to the federal government. Under § 1357(g), these functions may be delegated to state officers in what are commonly referred to as 287(g) agreements only if:

1. The Attorney General enters into a written agreement with the State;
2. The agreement complies with the detailed terms of § 1357(g); *and*

9

> 3. Federal authorities retain control and supervision over the state's immigration enforcement activities.

State officers may arrest individuals for immigration purposes *only* with express federal authorization and *only* under continuous federal supervision and accountability. Without a valid agreement that meets § 1357(g)'s statutory requirements, the State lacks authority to arrest anyone under federal immigration law.

The Florida National Guard and several other state law enforcement agencies have recently entered 287(g) agreements.[11] Under these agreements, commonly known as 287(g) agreements, any exercise of power "by an officer or employee of a State" "shall be subject to the direction and supervision of the Attorney General." 8 U.S.C. § 1357(g)(3). The terms of the 287(g) agreement further emphasize this federal control, stating "the activities of participating LEA [law enforcement agency] personnel under this MOA derive from federal authority."[12] The agreement lays out the supervision authority of the federal government:

> XI. ICE SUPERVISION
> Immigration enforcement activities conducted by participating LEA personnel will be *supervised and directed* by ICE. Participating LEA personnel are not authorized to perform immigration officer functions except when working under the supervision or direction of ICE.[13]

(emphasis added).

The powers delegated under these agreements are specific and enumerated.[14] But these delegated powers do not, and could not, include the authority to "arrange for" TNT as an "appropriate place[] of detention." 8 U.S.C. § 1231(g). Although deputized State officers under 8

---

[11] Memorandum of Agreement between ICE and the Florida National Guard, entered into on April 2, 2025, available at https://www.ice.gov/doclib/287gMOA/MOA_Between_ICE_FloridaNatGuard_04022025.pdf
[12] *Id.* at 8.
[13] *Id.* at 5.
[14] *Id.* at 2-3.

10

U.S.C. § 1357(g) have considerable authority to investigate civil and criminal immigration violations, this power does not extend to authorizing a place of detention. That power lies exclusively with the Secretary of Homeland Security. In any event, even if 287(g) agreements were construed to delegate the power to arrange for places of immigration detention, the State's power would be "supervised and directed" by ICE.[15]

## Conclusion

Amicus Curiae Florida Immigrant Coalition urges the Court to grant plaintiffs' motion for a temporary restraining order because the TNT is a place of immigration detention authorized by the federal government and under its control.

Respectfully submitted,

/s/ Rebecca Sharpless
Rebecca Sharpless (Fla. Bar No. 0131024)
Andrea Jacoski (Fla. Bar No. 1059001)
rsharpless@law.miami.edu
ajacoski@law.miami.edu
**IMMIGRATION CLINIC –
UNIVERSITY OF MIAMI SCHOOL OF LAW**
1311 Miller Drive, Suite B400
Coral Gables, FL 33146
Tel: (305) 284-3576
Fax: (305) 284-6092

Alana Greer (Fla Bar No. 92423)
Will Mann (Fla Bar No. 1058086)
alana@communityjusticeproject.com
will@communityjusticeproject.com
**COMMUNITY JUSTICE PROJECT, INC.**
3000 Biscayne Blvd. Suite 106
Miami, Florida 33137
Tel: (305) 907-7697

*Counsel for Amicus Curiae*

---

[15] *Id.* at 5.

11