UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
No. 25-cv-22896-KMW

FRIENDS OF THE EVERGLADES, INC., et al.

    Plaintiffs,

v.

KRISTI NOEM, et al.,

    Defendants.

**DEFENDANT FDEM'S OPPOSITION TO
THE MICCOSUKEE TRIBE'S MOTION TO INTERVENE**

Defendant Guthrie ("FDEM") opposes the Motion to Intervene filed by the Miccosukee Tribe of Indians (the "Tribe"), Doc. 33, and in support states:

**INTRODUCTION**

The Tribe's bid to intervene as of right fails in one of two ways. If, on the one hand, the Tribe is adopting Plaintiffs' claims in toto (as the Tribe says it is, Doc. 33 at 18), then the Tribe fails to show it is inadequately represented. If, on the other hand, the Tribe seeks to assert different claims or relief than that sought by Plaintiffs (as the Tribe—to avoid failing the inadequacy prong—says it might, Doc. 33 at 15), then the Tribe must show it independently has standing. *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439–40 (2017). This, the Tribe has not done. Whichever path the Tribe chooses, the destination is the same: no intervention of right.

As for permissive intervention, the Tribe's entry into the case would be entirely duplicative and tax party and judicial resources and delay adjudication of the issues. Such intervention would be especially problematic now, as the parties are fully engaged in preparing for an evidentiary

1

hearing less than two weeks away. The Tribe's injection into the case would risk prolonging the single-day hearing set by the Court and delaying adjudication of the preliminary injunction.[1]

I.     **THE TRIBE HAS NO RIGHT TO INTERVENTION OF RIGHT**

A party may intervene of right only if its interest is inadequately represented by existing parties to the lawsuit. *See Kennedy v. DeSantis*, No. 22-cv-21827-Williams/Sanchez, 2023 WL 11804228, at *3 (S.D. Fla. Mar. 29, 2023). A party that seeks to assert the exact same claims, and seeks the exact same relief, as an existing party is *not* inadequately represented. *See Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910–11 (11th Cir. 2007) (denying intervention when proposed intervenor did not propose additional claim or defense and sought same objective as party); *Meadowfield Apartments, Ltd. v. United States*, 261 F. App'x 195, 196 (11th Cir. 2008) (denying intervention when proposed intervenor sought same relief and made substantially same arguments). And if the party is inadequately represented—that is, if the party seeks "additional relief beyond that which the plaintiff requests"—then an "intervenor of right must demonstrate Article III standing." *Town of Chester*, 581 U.S. at 440 ("In sum, an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing."). The Tribe cannot simultaneously pass both of these tests.

    **A.**    **To the Extent the Tribe Seeks to Mimic Plaintiffs' Allegations and Claims, It Is Adequately Represented**

A putative intervenor must include with its motion "a pleading that sets out the claim … for which intervention is sought." Fed. R. Civ. P. 24(c). The Tribe asserts that it should be excused from this "technical requirement" because its "purpose … is to place the other parties on notice of

---

[1] Of course, to even consider intervention, the Court must first conclude that venue in this District is proper. As FDEM has explained, venue is not proper in the Southern District of Florida and the case should be transferred to the Middle District. *See* Doc. 50 at 2-5. The Middle District can then take up the intervention motion.

the position, claim, and relief sought by the intervenor"—and the Tribe, it says, seeks "to assert … two claims … found in counts I-II of [Plaintiffs'] operative complaint." Doc. 33 at 18. Moreover, if the Plaintiffs amend their complaint, "the Tribe intends to join the amended complaint." *Id.* Thus, the Tribe reasons, it "has provided Defendants with sufficient notice of its position, its claims, and the relief it seeks." *Id.* Put differently, the Tribe asserts that it has provided sufficient notice because it will *exactly copy* Plaintiffs' allegations, claims, and requested relief.

But if that is so, then the Tribe cannot claim to be inadequately represented, and its bid for intervention of right fails. If the Tribe seeks simply to mimic Plaintiffs in every particular, then Plaintiffs—who are already vigorously litigating this case—adequately represent the Tribe's interests. *See Sierra Club*, 488 F.3d at 910–11 (denying intervention when proposed intervenor did not propose additional claim or defense and sought same objective as party); *Athens Lumber Co., Inc. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (denying intervention when plaintiff and proposed intervenor both sought to uphold constitutionality of statute); *Meadowfield Apartments*, 261 F. App'x at 196 (denying intervention because "Intervenors seek exactly the same relief as does the United States"); *Blake v. Batmasian*, 2016 WL 7447253, at *9 (S.D. Fla. Sept. 15, 2016) ("There is a presumption of adequate representation where an existing party seeks the same objectives as the interveners.").

In an attempt to avoid this obvious conclusion, the Tribe claims that it has property rights that go beyond Plaintiffs' interests. Doc. 33 at 15. Yet the Tribe does not purport to have rights to the airport property itself, and it does not intend to bring any claim invoking its property rights, so the "factual differences" in how Plaintiffs and the Tribe are situated are "not germane" to the relevant legal issues concerning NEPA and the APA. *Blake*, 2016 WL 7447253, at *9.

The Tribe next posits that it "may not share the ultimate goals and objectives as the Plaintiffs" and that Plaintiffs may be willing to settle when the Tribe is not, but it points to precisely zero facts supporting that rank speculation. Doc. 33 at 15. Contrary to this unsupported speculation, the record shows that Plaintiffs are at least as determined as the Tribe to obstruct the construction and operation of the detention facility. Elise Bennett, an attorney for the Center for Biological Diversity, has called the facility a "reckless attack on the Everglades" and "particularly despicable."[2] Tania Galloni, an attorney for Friends of the Everglades, Inc., claimed, "[w]e will use every legal tool to protect America's Everglades."[3] Indeed, while the Tribe sat on the sidelines, Plaintiffs filed suit and have gone to great lengths to press the Court for expedited relief. *See* Doc. 50 at 1 (listing Plaintiffs' many filings). The Tribe has presented no factual allegations or evidence indicating that either Plaintiff will accept a settlement that does not provide the Tribe with all the relief it seeks. Its contrary speculation is plainly insufficient to meet the Tribe's burden. *See Sierra Club*, 488 F.3d at 911 (rejecting unsupported hypothesis that party was "more likely to settle"); *A.R. v. Dudek*, 2014 WL 12519764, at *3 (S.D. Fla. Apr. 7, 2014) (finding "speculation that a claim may be settled, however 'fails to demonstrate that intervention … is warranted.'" (quoting *Williams Island Synagogue, Inc. v. City of Aventura*, 222 F.R.D. 554, 556–57 (S.D. Fla. 2004))); *League of United Latin Am. Citizens, Council # 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) (proposed intervenor "must 'produce something more than speculation as to the purported inadequacy.'" (quoting *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir.

---

[2] *Groups sue to protect Everglades from reckless detention center*, Friends of the Everglades (June 27, 2025), https://www.everglades.org/wp-content/uploads/2025/06/FOE-Alligator-Alcatraz-Press-Release.pdf.

[3] *Legal Warning: Everglades ICE Facility Causing More Damaging Environmental Violations*, Ctr. for Biological Diversity (July 11, 2025), https://biologicaldiversity.org/w/news/press-releases/legal-warning-everglades-ice-facility-causing-more-damaging-environmental-violations-2025-07-11/.

1979))). And to the extent the Tribe seeks to rely on some as-yet unidentified "dispute over litigation strategy or tactics," that does not justify intervention as of right. *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 954 (9th Cir. 2009).

  **B.** **To the Extent the Tribe Seeks to Assert Unspecified, Different Claims or Relief than Plaintiffs, It Has Failed to Show Entitlement to Intervention of Right**

  Perhaps sensing that its bid for intervention of right is doomed because of its failure to meet the inadequacy-of-representation prong, the Tribe hedges. Even though the Tribe claims it is adopting Plaintiffs' complaint—and will adopt any amended complaint (even without seeing it)—the Tribe also claims that it "may not share the ultimate goals and objectives as the Plaintiffs," and it "does not intend to waive its rights or limit itself to joining counts I-II in the forthcoming amended complaint." Doc. 33 at 15, 18. What, exactly, this means is anyone's guess. But one thing is certain: these vague disclaimers are insufficient to "'place the other parties on notice of the position, claim, and relief sought by the intervenor,'" and thus the Tribe cannot claim an exception to Rule 24(c)'s requirement that it file a complaint in intervention that identifies its different claims or requests for relief. Doc. 33 at 18 (quoting *Danner Const. Co., Inc. v. Hillsborough Cnty.*, 2009 WL 2525486, at *2 (M.D. Fla. Aug. 17, 2009)). Having failed to meet that requirement, the Tribe cannot base its intervention on different claims or different relief.

  Moreover, where an intervenor of right seeks to pursue claims or relief "that is different from that which is sought by a party with standing," that intervenor must demonstrate standing "for each claim he seeks to press and for each form of relief that is sought." *Town of Chester*, 581 U.S. at 439–40. But having failed to even specify any different claim or form of relief it will seek, the Tribe cannot possibly demonstrate standing for such a claim or form of relief. *See Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (courts must "require every plaintiff to file a complaint which contains sufficient allegations of standing"); *Tsao v. Captiva MVP Rest.*

5

*Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) (a plaintiff has the burden of "alleging facts that 'plausibly' demonstrate each element" of standing).[4]

### C. The Tribe's Interests Are Not Protected By NEPA

A putative intervenor must "claim[] an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). Courts have interpreted Rule 24(a)'s language to require a "legally protectable interest." *E.g.*, *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990). To show a sufficient interest, a prospective plaintiff-intervenor must show statutory standing, which includes satisfying the zone-of-interests test. *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28–29 (D.C. Cir. 2000); *see also United States v. Hampton Corp.*, 502 F. Supp. 3d 1376, 1379–80 (D.N.D. 2020) ("A party seeking to intervene under Rule 24(a)(1) must establish, in addition to the requirements of that Rule, both Article III standing and statutory standing."). The zone-of-interests test requires a court to "discern the interests arguably to be protected by the statutory provision" and then to "inquire whether the plaintiff's interests affected by the agency action in question are among them." *Hollywood Mobile Ests. Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1269 (11th Cir. 2011) (alteration omitted) (citation and internal quotation marks omitted).

The interests that NEPA protects are environmental interests. *See Town of Stratford v. Fed. Aviation Admin.*, 285 F.3d 84, 88 (D.C. Cir. 2002) (NEPA "cannot be used as a handy stick by a party with no interest in protecting against an environmental injury to attack a defendant."). But the Tribe cannot show an environmental interest because its environmental allegations are too vague to plausibly show a concrete risk of harm. The Tribe states that its members are "worr[ied]"

---

[4] The Tribe has not demonstrated standing even for the claims and forms of relief it seeks to copy from Plaintiffs. Nor have Plaintiffs, as FDEM will explain in its forthcoming motion to dismiss.

or "concerned" about "interruption to endangered Florida panther and Florida bonneted bat habitat"; "potential" water pollution from the facility; and "unknown" environmental impacts. Doc. 33 at 8–10.  But circumspect "worr[ies]" of "potential" and "unknown" "possibil[ities]" that "may" one day occur are not concrete claims of injury.  *See Bycko v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 7411752, at *7 (D.N.J. Nov. 9, 2023).

The Tribe also states that the facility's operation will impair its members' "rights" and "freedom" to use the Big Cypress National Preserve for hunting, fishing, trapping, and other traditional and ceremonial purposes.  Doc. 33 at 8–9.  That alleged harm is similarly too speculative.  *See La Cuna De Aztlan Sacred Sites Protec. Circle Advisory Comm. v. U.S. Dep't of Interior*, 2012 WL 2884992, at *8 (C.D. Cal. July 13, 2012) (finding denial of access claim "unduly speculative" because plaintiffs had not shown they were barred from site or threatened with arrest).

And beyond these speculative and vague claims of environmental interests, the Tribe points only to alleged interests that are not environmental at all.  The Tribe claims that it fears "the possibility of a facility escape posing a security risk for their community."  Doc. 33 at 8.  NEPA has nothing to do with promoting the security of a community.  In any event, the whole point of the detention facility is to *promote* the security of all Floridians and Americans by helping to facilitate and streamline the detention of the huge influx of criminal aliens who illegally entered the country in the last several years.  Closing the facility (as the Tribe desires) would thus impair its claimed security interest, not enhance it.  If security is the Tribe's concern, it should be seeking to participate in support of Defendants, not Plaintiffs.

The Tribe finally alleges the inconvenience of increased traffic.  Doc. 33 at 8–10.  But again, traffic is not an environmental harm to be mitigated by NEPA.  *See Canyon Park Bus. Ctr. Owners' Ass'n v. Buttigieg*, 2022 WL 2317059, at *4 (W.D. Wash. June 28, 2022) ("As Canyon

7

Park fails to allege any specific environmental impacts that the increased traffic and congestion could cause, it has not alleged an injury within NEPA's zone of interests."); *Our Money Our Transit v. Fed. Transit Admin.*, 2014 WL 3543535, at *8 (W.D. Wash. July 16, 2014) ("Moreover, although Plaintiffs argue that the EA fails to fully account for impacts to traffic, Plaintiffs do not set forth any possible *environmental* impacts that were potentially overlooked or that would render the EA inadequate for NEPA purposes."). Any harm or annoyance the Tribe may experience from increased traffic congestion is, at most, economic and psychological. *See Borough of Carlstadt v. U.S. Army Corps of Eng'rs*, 2006 WL 305314, at *7 (D.N.J. Feb. 8, 2006) (finding plaintiff's interest was economic and plaintiff lacked prudential standing despite emphasis on traffic). So even if the Tribe has Article III standing to assert a traffic-based harm, that harm is not a legally protectable interest under NEPA.

\* \* \*

For all these reasons, the Tribe has failed to demonstrate it meets the strict requirements for intervention as of right. Its application under Rule 24(a) must therefore be denied.

## II. THE COURT SHOULD DENY PERMISSIVE INTERVENTION BECAUSE INTERVENTION WOULD ADD UNNECESSARY DELAY AND BURDEN

The Tribe also seeks permissive intervention. Doc. 33 at 16–17. A court "may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). But the district court has full discretion to deny permissive intervention. *E.g.*, *West Virginia v. U.S. Dep't of Treas.*, 571 F. Supp. 3d 1229, 1248 (N.D. Ala. 2021), *aff'd on other grounds*, 59 F.4th 1124 (11th Cir. 2023); *United States v. S. Fla. Water Mgt. Dist.*, 922 F.2d 704, 712 (11th Cir. 1991); *see also* 7C Fed. Prac. & Proc. Civ. § 1913 (3d ed.) ("[E]ven though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention."). In exercising that

discretion, courts must consider the possibility of undue delay and prejudice in deciding whether to grant permissive intervention. Fed. R. Civ. P. 24(b)(3). Adding parties "inevitably delays proceedings," *Athens Lumber*, 690 F.2d at 1367, because, for example, they add "more discovery requests," *South Carolina v. North Carolina*, 558 U.S. 256, 287–88 (2010) (Roberts, J., concurring in the judgment in part and dissenting in part). Here, the Court should deny permissive intervention because the Tribe would inject into the case additional briefing and discovery that would seriously burden the existing parties and the Court. The Tribe will have its own ideas and desired discovery requests. It may need to present witnesses of its own. It will file additional briefs and require additional courtroom time at hearings and oral arguments. All this will hinder the parties, prolong discovery, lengthen briefing timelines, and consume precious court resources.

The additional delay and burden of intervention strongly favor denial because the putative intervenor is already represented adequately by Plaintiffs. The Tribe asserts duplicative claims, so it is "unlikely that any new light will be shed on the issues to be adjudicated." *Chiles v. Thornburgh*, 865 F.2d 1197, 1215 (11th Cir. 1989). Because the Tribe "will add nothing of substance to the resolution"—it is, after all, seeking to raise identical claims to Plaintiffs—permissive intervention should be denied "in the interest of avoiding undue delay." *Fla. Clean Water Network Inc. v. EPA*, 2009 WL 10674045, at *2 (N.D. Fla. Sept. 29, 2009); *see also League of United Latin Am. Citizens*, 884 F.2d at 189 (courts should consider adequate representation in deciding requests for permissive intervention); *Gumm v. Jacobs*, 2020 WL 1322575, at *6 (M.D. Ga. Mar. 20, 2020) (indicating that permissive intervention is not granted when the proposed intervenor "add[s] nothing to the case, meaning she is likely adequately represented and her presence will just slow things down" (citation omitted)).

All of this is especially true given the posture of the case. The parties are litigating at a breakneck pace toward an evidentiary hearing in less than two weeks. Increasing the number of Plaintiffs now will interject complication and delay with no added benefit. *Cf. Serv. Emps. Int'l Union Loc. 1 v. Husted*, 515 F. App'x 539, 542–43 (6th Cir. 2013) (affirming denial of permissive intervention in part because of "significant risk of upsetting the expedited schedule necessitated by the upcoming election"); *United States v. Borge*, 249 F.R.D. 387, 389 (S.D. Fla. 2008) (finding prejudice when discovery cut-off and trial were "fast approaching"). Consider, on that score, just the management of the hearing itself. If the Tribe is a party, it will presumably want witnesses and the opportunity to examine adverse witnesses. Expanding the number of parties will thus expand the scope of the hearing, potentially risking the single-day schedule the Court has permitted. And that does not even consider the additional burden on the parties of preparing to confront new exhibits and witnesses that have yet to be aired. The Tribe's intervention now, in short, risks confusion, delay, and prejudice. Permissive intervention should be denied.

## CONCLUSION

The Court should deny the Tribe's Motion to Intervene.

Dated: July 25, 2025                                   Respectfully submitted,

James Uthmeier                                         s/ *Jesse Panuccio*
  *Attorney General of Florida*                        Jesse Panuccio (FBN 31401)
Jeffrey Paul DeSousa (FBN 110951)                      Evan Ezray (FBN 1008228)
  *Acting Solicitor General*                           **BOIES SCHILLER FLEXNER LLP**
Nathan A. Forrester (FBN 1045107)                      401 East Las Olas Blvd., Suite 1200
  *Chief Deputy Solicitor General*                     Fort Lauderdale, Florida 33301
Robert S. Schenck (FBN 1044532)                        jpannucio@bsfllp.com
  *Assistant Solicitor General*
**Office of the Attorney General**
The Capitol, PL-01
Tallahassee, FL 32399
jeffrey.desousa@myfloridalegal.com                     *Counsel for Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2025, the foregoing was filed with the Clerk of Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

s/ *Jesse Panuccio*
Jesse Panuccio
