**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25-cv-22896-KMW

FRIENDS OF THE EVERGLADES, INC., a Florida not-for-profit corporation, and CENTER FOR BIOLOGICAL DIVERSITY, a 501(c)(3) nonprofit organization,

       Plaintiffs,

vs.

KRISTI NOEM, in her official capacity as Secretary of the UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, in his official capacity as Acting Director of the UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; KEVIN GUTHRIE, in his official capacity as Executive Director of the Florida Division of Emergency Management; and MIAMI-DADE COUNTY, a political subdivision of the State of Florida,

       Defendants.

and

THE MICCOSUKEE TRIBE OF INDIANS,

       Proposed Intervenors.

## PLAINTIFFS' REPLY IN SUPPORT OF EXPEDITED DISCOVERY

Plaintiffs hereby respectfully reply to the opposition of Defendant Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management (the "State"), D.E. 56, to Plaintiffs' Motion for Expedited Discovery, D.E. 55 (the "Motion").

### 1. The Information Is Relevant and Should be Ordered Disclosed to Advance the Just and Speedy Resolution of This Dispute

A critical, if not dispositive, issue in this matter is the relationship of the State and Federal Defendants in connection with the construction and operation of the TNT Site – as the State and Federal Defendants themselves have asserted in this action. *See* D.E. 16 & 21. For that reason, on June 24, before this action was filed, Plaintiff asked the State to provide under Florida's Public Records Act, Fla. Stat. ch. 119, "[a]ll communications between the [State] and the [Federal Defendants] pertaining to [the] planned use of the TNT site to provide temporary facilities in connection with immigration enforcement activities." D.E. 55-6, at No. 5. Over one month later, the State continues to withhold this information.

As demonstrated in Plaintiffs' Reply in Support of Plaintiff's Expedited Motion for Temporary Restraining Order and Preliminary Injunction, because states lack authority to detain and remove undocumented immigrants, the activities at the TNT Site are necessarily and inherently federal in nature. *See* D.E. 24, at 4-6; *see also Arizona v. United States*, 567 U.S. 387, 409 (2012) (holding that state has no authority "to decide whether an alien should be detained for being removable" because "the removal process is entrusted to the discretion of the Federal Government."); *Florida Immigrant Coal. v. Uthmeier*, ---F. Supp. 3d---, No. 25-21524-CV, 2025 WL 1423357, at *7-10 (S.D. Fla. Apr. 29, 2025) (Williams, J.) (holding that Florida statutes providing for state and local enforcement of immigration laws were unenforceable and unconstitutional as federal law occupied field); *Farmworker Ass'n of Fla., Inc. v. Moody*, 734 F. Supp. 3d 1311, 1332-37 (S.D. Fla. 2024) (Altman, J.) (same). Thus, the operation of the TNT Site as an immigration detention center necessarily implicates federal action, triggering NEPA, *see Goos v. I.C.C.*, 911 F.2d 1283, 1294 (8th Cir. 1990) (holding that whether an agency action or project is a major federal action for NEPA purposes turns on legal control: whether some federal action "is a legal condition precedent to accomplishment of an entire nonfederal

project"), and NEPA's requirements may not be circumvented by pretending the TNT Site does not implicate federal action.

Remarkably, however, the State and Federal Defendants continue to withhold information regarding the interplay between the State and federal governments while advancing inconsistent and evasive positions regarding their respective roles in the construction, operation, and supervision of the TNT Site and the detainees held there. *See* D.E. 55 ¶¶ 3-4 (describing admissions by Defendants Guthrie and Noem of federal involvement and approval of detention center); *see also C.M., et al. v. Noem, et al.*, Case No. 1:25-cv-23182-RAR, D.E. 21, filed July 25, 2025 (requesting a status conference to clarify "which entities have custody over the immigrants detainees at [the TNT Site], and the legal basis for their custody"), attached as Exhibit 1. This has created public confusion, *see* S. Duncan, Who's In Charge at Alligator Alcatraz? 'We've Gotten a Lot of Runaround', Miami Herald, July 25, 2025,[1] as well as confusion within the agencies themselves. For example, White House Deputy Chief of Staff Stephen Miller has described the facility as an "ICE Facility," D.E. 40, at 4 n.6, yet the State continues to insist that the site is "a *state* project on *state* land … hous[ing] a *state* airfield …." D.E. 24 at 2 (emphases in original). Reportedly, deportation flights "operated by the Department of Homeland Security" have commenced from the Site just last week, but under whose authority remains unclear.[2] Even in its opposition to the Motion, the State is strategically vague, stating that "virtually every Florida law enforcement agency has a 287(g) agreement with the federal government," D.E. 56,[3] at 6, but declining to disclose whether such an agreement exists between the Florida Division of Emergency Management ("FDEM") – the state agency charged with managing the TNT Site, *see* D.E. 16 at 5 – and the federal government.

---

[1] https://www.miamiherald.com/news/local/immigration/article311367205.html
[2] https://www.wilx.com/2025/07/25/deportation-flights-floridas-alligator-alcatraz-detention-center-have-begun-desantis-says/
[3] FDEM is not a law enforcement agency.

Having made their relationship the central pillar of their defenses to Plaintiffs' motion for preliminary injunctive relief, the State and Federal Defendants cannot now resist discovery into these very issues. More importantly, these are government actors and their effort to withhold this information should not be countenanced. *See, e.g., Union Oil Co. of Cal. v. Leavell,* 220 F.3d 562, 568 (7th Cir. 2000) (Easterbrook, J.) ("What happens in the halls of government is presumptively public business…."); *United States v. Costa*, 356 F. Supp. 606, 608 (D.D.C.), *aff'd,* 479 F.2d 921 (D.C. Cir. 1973) ("This Court has often stated that 'the public has the right to know' the reasons which underlie the decisions of those people to whom is granted the public trust, be they elected officials, administrative heads, or tenured judges. This is fundamental to a republican form of government, and is especially important today as we find ourselves confronted with a growing public distrust of governmental decisions in general, and Court decisions in particular.").

"Court proceedings are held for the solemn purpose of endeavoring to ascertain the truth." *Estes v. State of Texas,* 381 U.S. 532, 540 (1965). As Judge Ruiz recognized at a status conference in a related matter earlier today, understanding how operations at the TNT Site are being conducted, and by whom, will enhance judicial efficiency by narrowing the legal questions to be answered by the Court. *See* 7/28/25 Status Conference, *C.M.*, et al. *v. Noem*, et al., Case No. 1:25-cv-23182-RAR, transcript pending. The procedural rules are to "be construed, administered, and employed by the court … to secure the just, speedy, and inexpensive determination of every action…." Fed. R. Civ. P. 1. Put simply, the State's effort to evade is improper, particularly given the board right to public records in Florida.[4] The State and Federal

---

[4] Article I § 24 of the Florida Constitution provides:

> (a)   Every person has the right to inspect or copy any public record made or received in connection with the official business of any public body, officer, or employee of the state, or persons acting on their behalf, except with respect to records exempted pursuant to this

4

Defendants should provide this Court with information in order to fully evaluate their central positions.

### 2. The Discovery Sought Is Not Burdensome

The discovery requests are not onerous. Interrogatory number 3 asks the State to identify agreements, whether formal or informal, between FDEM or other State agency, and any federal agency relating to the use of the TNT site as a detention center. D.E. 55-4 No. 3. The same interrogatory is posed to both the Federal and State Defendants. *See* D.E. 55-3 No. 2. Interrogatory number 8 asks whether the detention center at the Site "is being operated pursuant to a Section 287(g) agreement.[5] (*Id.* No. 8.) Corresponding document requests seek discovery of such agreements, if any. To be sure, because the operation of an undocumented immigrant detention center is necessarily a federal endeavor,[6] the Court can and should enjoin this federal project until NEPA compliance is achieved. However, disclosure of the requested information will assist the Court in evaluating the parties' positions. It is hard to fathom why the State has resisted disclosing this information, given its obligation to operate in the Sunshine. *See, e.g., Sarasota Citizens for Responsible Gov't v. City of Sarasota*, 48 So. 3d 755, 762 (Fla. 2010) (Florida's Sunshine Law is "to protect the public from 'closed door' politics"; therefore, "the law must be broadly construed to effect its remedial and protective purpose.")

---

section or specifically made confidential by this Constitution. This section specifically includes the legislative, executive, and judicial branches of government and each agency or department created thereunder; counties, municipalities, and districts; and each constitutional officer, board, and commission, or entity created pursuant to law or this Constitution.

[5] Notably, the same threshold issue arose today in the related matter before Judge Ruiz, but again the State deflected, refusing, without explanation, to disclose whether such an agreement exists. 7/28/25 Status Conference in *C.M.*, et al. *v. Noem*, et al., Case No. 1:25-cv-23182-RAR, transcript pending.

[6] In the event FDEM insists it is operating a federal immigration detention other than under federal authority, it is acting ultra vires.

Similarly, Plaintiffs have requested an opportunity to have environmental consultants with relevant expertise visit the Site. While the dramatic adverse environmental impacts of the Site are patent, *see, e.g.,* D.E. 24-4, 38-6, 38-8, 49, a site visit will assist experts in providing the court information about environmental impacts. The Site has been the subject of Presidential and Gubernatorial press conferences, and the State offers no reason why it would be disruptive or interfere with operations to permit a site visit by Plaintiffs' experts.

Additionally, the proposal for development of the TNT Site into a detention center was announced on or around June 19, 2025, when Florida Attorney General James Uthmeier posted on social media.[7] Therefore the time frame involved in searching for and producing records is exceedingly short, thereby reducing any burden.

### 3. Plaintiffs Have Acted Promptly to Seek These Records Which Are Public

The State's suggestion of "sandbagging" and "silence," D.E. 56, at 3, in seeking such information is inaccurate. Even ***before*** this action was filed, on June 24, 2025, Plaintiff Friends, through counsel and under Florida's Public Records Act, Fla. Stat. ch. 119, requested all communications between FDEM and any federal agency pertaining to the planned use of the TNT Site for immigration activities, as well as environmental evaluations of the impacts of the Site. D.E. 55-6. On many occasions Friends has followed up on these public records requests, including with the State's counsel here, but regrettably the State Defendant has not produced the information. *See* Exhibit 2. As an agency of the State, FDEM is statutorily obliged to make these records available. *See Everglades L. Ctr., Inc. v. S. Fla. Water Mgmt. Dist.*, 290 So. 3d 123, 129 (Fla. 4th DCA 2019)("[T]he public records law is to be construed 'liberally in favor of the state's policy of open government. If there is any doubt as to whether a matter is a public record subject to disclosure, the doubt is to be resolved in favor of disclosure.") (internal citations and quotation

---

[7] https://www.nbcmiami.com/news/local/alligator-alcatraz-timeline-everglades-detention-center-from-beginning-to-now/3663585/.

marks omitted). Given Florida's broad public records laws, and the obligation to provide records requested over one month ago, the State's objections that production of this information in advance of the hearing is somehow unfair, or that it has been "sandbagged" is false. Plaintiffs have acted promptly.

While the State and Federal Defendants continue to insist that construction activities have no environmental impact, they have yet to produce any analyses or information in support of such assertions, although Plaintiffs requested this information over one month ago. The document requests seek disclosure of such information, if any. D.E. 55-2 No. 8: ("All documents pertaining to or discussing the environmental impacts of any use of the TNT site is an immigrant detention center.") Once again, disclosure of this information will assist the Court in evaluating the Defendants' positions on this issue, and it was requested from the State over one month ago.

To be sure, Plaintiffs have met their burden of demonstrating, including through sworn testimony, the likely irreparable environmental harm from the activities at the Site. *See, e.g.,* D.E. 5-1, 5-2, 5-3, 24-4, 24-5, 38-4 & 38-6. The documentary basis, if any, for Defendants' contrary contentions should be disclosed.

### 4. Caselaw Supports Expediting Discovery

In *Betty's Best, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule 'A'*, No. 1:23-CV-22322-KMW, 2023 WL 7279324, at *1 (S.D. Fla. Nov. 3, 2023) (Reid, Mag., J.), on which the State relies, D.E. 56 at 3, the plaintiff sought expedited discovery against 64 defendants covering an overbroad and indefinite timeframe. The court noted that expedited discovery may be appropriate where "the administration of justice outweighs the prejudice to responding party," but given the overbreadth of the requested discovery and the burdensomeness of the information sought, the court appropriately exercised its discretion to deny an expedited response.

Here, the information sought is narrowly targeted to issues injected by the State and Federal Defendants in opposition to the injunction request. Again, the State takes the position that it has constructed and is operating a non-citizen detention center without federal involvement. It should not be permitted to advance this argument while simultaneously refusing to provide documents concerning the arrangements, if any, with the Federal Defendants. As noted above, reportedly, deportation flights have commenced from the Site. The administration of justice supports requiring disclosure. The Court, and the public, are entitled to know how, by whom, and under whose authority, the operations at the Site are being conducted.

Dated:   July 28, 2025.

Respectfully submitted,

| | |
|---|---|
| EARTHJUSTICE<br>4500 Biscayne Boulevard, Suite 201<br>Miami, Florida  33137<br>Telephone:  (305) 440-5432<br><br>By:      s/   Tania Galloni<br>    Tania Galloni, Fla. Bar No. 619221<br>    tgalloni@earthjustice.org<br>    Dominique Burkhardt, Fla. Bar No. 100309<br>    dburkhardt@earthjustice.org<br>    Alisa Coe, Fla. Bar No. 10187<br>    acoe@earthjustice.org<br><br>*Counsel for Friends of the Everglades* | COFFEY BURLINGTON, P.L.<br>2601 South Bayshore Drive, Penthouse One<br>Miami, Florida  33133<br>Telephone:  (305) 858-2900<br><br>By:      s/   Paul J. Schwiep<br>    Paul J. Schwiep, Fla. Bar No. 823244<br>    PSchwiep@CoffeyBurlington.com<br>    Scott Hiaasen, Fla. Bar No. 103318<br>    SHiaasen@CoffeyBurlington.com<br>    YVB@CoffeyBurlington.com<br>    LPerez@CoffeyBurlington.com<br>    service@CoffeyBurlington.com<br><br>*Counsel for Plaintiffs* |

CENTER FOR BIOLOGICAL DIVERSITY
Elise Pautler Bennett, Fla. Bar No. 106573
ebennett@biologicaldiversity.org
Jason Alexander Totoiu, Fla. Bar No. 871931
jtotoiu@biologicaldiversity.org
Post Office Box 2155
St. Petersburg, FL 33731
Telephone:  (727) 755-6950

*Counsel for Center for Biological Diversity*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 28, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the Service List below via transmission of Notice of Electronic Filing generated by CM/ECF.

            s/   Paul J. Schwiep

| Service List | |
|---|---|
| **Nathan A. Forrester**<br> Chief Deputy Solicitor General<br>nathan.forrester@myfloridalegal.com<br>**Robert S. Schenck**<br> Assistant Solicitor General<br>robert.schenck@myfloridalegal.com<br>Office of the Attorney General<br>The Capitol, PL-01<br>Tallahassee, Florida  32399-1050<br>Telephone:  (850) 414-3300<br>jenna.hodges@myfloridalegal.com<br><br>_____<br><br>BOIES SCHILLER FLEXNER LLP<br>**Jesse Panuccio, Esq.**<br>jpanuccio@bsfllp.com<br>**Evan Ezray, Esq.**<br>eezray@bsfllp.com<br>401 East Las Olas Boulevard, Suite 1200<br>Fort Lauderdale, Florida  33301<br>Telephone:  (954) 356-0011<br>jpanuccio@BSFLLP.com<br><br>*Counsel for Defendant Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management* | HAYDEN P. O'BYRNE<br>United States Attorney<br>**Carlos J. Raurell**<br> Assistant U.S. Attorney<br>carlos.raurell@usdoj.gov<br>99 Northeast 4th Street<br>Miami, Florida  33132<br>Telephone:  (305) 961-9243<br>melissa.Jiminson@usdoj.gov<br><br>_____<br><br>ADAM R.F. GUSTAFSON<br>Acting Assistant Attorney General<br>Environment and Natural Resources Division<br> United States Department of Justice<br>**Peter M. Torstensen, Jr.**<br> Deputy Assistant Attorney General<br>Environment and Natural Resources Division<br> United States Department of Justice<br>**Hayley A. Carpenter**<br> Trial Attorney<br>hayley.carpenter@usdoj.gov<br>Natural Resources Section<br>Ben Franklin Station<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Telephone:  (202) 305-0242<br><br>*Counsel for Kristi Noem, in her official capacity as Secretary, United States Department of Homeland Security, and Todd Lyons, in his official capacity as Acting Director, United States Immigration and Customs Enforcement* |

Case No. 1:25-cv-22896-KMW

| | |
|---|---|
| Geraldine Bonzon-Keenan<br>Miami-Dade County Attorney<br>**Christopher J. Wahl**<br>    Assistant County Attorney<br>wahl@miamidade.gov<br>**Monica Rizo Perez**<br>    Assistant County Attorney<br>rizo@miamidade.gov<br>**David M. Murry**<br>    Assistant County Attorney<br>DMMurray@FlyMIA.com<br>Stephen P. Clark County<br>111 Northwest 1st Street, Suite 2810<br>Miami, Florida  33128<br>Telephone:  (305) 375-5151<br>Victor.Rodriguez3@miamidade.gov<br>Madalis.Gonzalez@miamidade.gov<br>KGriffin@FlyMIA.com<br><br>*Counsel for Miami-Dade County* | **Todd R. Friedman, Esq.**<br>todd@toddfriedmanpa.com<br>Todd R. Friedman, P.A.<br>1101 Brickell Avenue<br>Suite S-700<br>Miami, Florida 33131<br>Telephone:  (786) 536-7190<br><br>*Counsel for The Miccosukee Tribe of Indians* |