UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
No. 25-cv-22896-KMW

FRIENDS OF THE EVERGLADES, INC., et al.,

    Plaintiffs,

v.

KRISTI NOEM, et al.,

    Defendants.

**DEFENDANT FDEM'S SUPPLEMENTAL REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

Judge Altman has twice held that the Southern District is not "the proper venue" for challenges related to the detention facility because it is in "Ochopee, [Florida], Ochopee is in Collier County, and Collier County is in the Middle District of Florida." *Garcia v. Guthrie*, No. 25-cv-23136 (S.D. Fla.), Doc. 5 at 1 (citing *Castillo v. U.S. Immigr. & Customs Enf't*, No. 25-cv-23022 (S.D. Fla.), Doc. 7 at 1). Plaintiffs point to no other facts making venue proper here: all the detention, construction, and decisionmaking they challenge occurred elsewhere. A decision holding otherwise would be contrary to the venue statute and threaten an unworkable intra-district split that the Eleventh Circuit would need to quickly resolve. This Court does not have venue and should transfer the case to the Middle District of Florida, just as Judge Altman has twice done.

**ARGUMENT**

**I.   FDEM DID NOT WAIVE ITS VENUE DEFENSE**

FDEM has not waived its challenge to venue, which was filed as part of FDEM's first defensive move and before the Court held even its first status conference in this matter.

*First*, Plaintiffs misstate the facts. This Court accepted FDEM's supplemental brief (and all of Plaintiffs' supplemental filings) at the status conference. *See* Transcript of Status Conference (Ex. 1) at 7 ("So everyone's supplement is going to be recognized[.]"). FDEM's venue argument is now part of its first filing, such that there can be no possible waiver (even if a TRO response could constitute a waiver, which it cannot). *Cf. Wiggins v. Jedson Engr., Inc.*, 2020 WL 6993840, at *1 (E.D. Tenn. Apr. 29, 2020) (collecting cases holding that a court can allow "amendment of a Rule 12(b) motion to include a previously omitted defense"); *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, 2017 WL 4997838, at *6 (S.D.N.Y. Oct. 20, 2017); *Vanslambrouck v. Fairfield Indus. Inc.*, 2011 WL 2435947, at *2 (M.D. Fla. June 15, 2011); *Polaroid Corp. v. Feely*, 889 F. Supp. 21, 24 (D. Mass. 1995). An amendment becomes part of the original filing, purging any possible waiver. *See Seal v. Riverside Fed. Sav. Bank*, 825 F. Supp. 686, 692 n.10 (E.D. Pa. 1993).[1]

*Second*, even if the supplemental filing was not incorporated into the original TRO opposition, the filing of such an opposition did not waive a venue defense under the Federal Rules of Civil Procedure. Waiver occurs only if venue is omitted from either a "responsive pleading" or

---

[1] Even if the Court had not already accepted the supplement to the TRO opposition, it would be free to do so now. As with a responsive pleading, leave to amend "should freely give leave when justice so requires." Fed. R. Civ. P. 15. That is especially true because Plaintiffs do not argue prejudice and the Court has permitted further briefing and will hold a hearing on venue.

a Rule 12 motion. Fed. R. Civ. P. 12(h)(1)(B)(ii); *Lane v. XYZ Venture Partners, LLC*, 322 F. App'x 675, 678 (11th Cir. 2009). An opposition to a motion for an emergency TRO asking the Court to enter immediate relief is neither a Rule 12 motion nor a responsive pleading. Fed. R. Civ. P. 7(a); *see Lane*, 322 F. App'x at 678; *Odouk v. St. Leo Univ.*, 2010 WL 11507608, at *3 (N.D. Ga. Mar. 10, 2010). Simply put, nothing in the text of the Rules mandates or permits waiver of a venue objection when a defendant merely opposes a motion for an immediate TRO.

*Third*, principles of equity counsel against waiver. Courts have repeatedly refused to find waiver based on TRO proceedings. *See Lithia Ramsey-T, LLC v. City Line Auto Sales, LLC*, 2023 WL 1883355, at *5 (D.N.J. Feb. 9, 2023) (rejecting waiver argument when defendants filed response to show cause order and appeared at preliminary-injunction hearing); *Pickett v. City of Houston*, 2009 WL 1158842, at *2 (S.D. Tex. Apr. 29, 2009) ("The City's mere attendance at the TRO hearing does not constitute waiver."); *Johnson v. Masselli*, 2008 WL 111057, at *3 (N.D. Ind. 2008) (rejecting waiver argument when venue was raised after TRO order, hearings, and discovery); *Friedberg v. Mut. Holdings, Ltd.*, 2005 WL 1213282, at *3 (E.D. Pa. May 19, 2005) (rejecting waiver argument when motion to dismiss was filed after six months and after grant of TRO); *see also Bartlett v. Bartlett*, 2017 WL 106043, at *2 (N.D. Ill. Jan. 11, 2017) (finding motion to disqualify did not waive venue defense). TROs are, by nature, fast-moving motions, and parties often must respond without adequate time to investigate the facts and law. Faced with the possibility of imminent court action at Plaintiffs' behest, a defendant should reasonably be allowed to respond (and supplement its response) "without losing its right to object" to venue. *See Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (finding personal-jurisdiction defense was not waived by motion for expedited discovery and to continue preliminary-injunction hearing).

That approach tracks Eleventh Circuit law. In the analogous arbitration context, the Eleventh Circuit has explained that the "waiver doctrine is typically implicated when parties have 'invoked the litigation machinery' before reversing course and claiming that arbitration was the proper avenue all along." *Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1201 (11th Cir. 2023).[2] Here, FDEM did not invoke litigation in this District. *See id.* (requiring "extensive use of the litigation process" to find waiver). On the contrary, FDEM's limited action

---

[2] Relatedly, opposing a TRO does not waive arbitration. *E.g.*, *Hupala v. Tianhai C. Air Conditioning Co.*, 2023 WL 1824441, at *1 (W.D. Wash. Jan. 3, 2023).

2

prior to raising venue was a defensive response to Plaintiffs' request for an immediate TRO, *see Johnson*, 2008 WL 111057, at *3, and FDEM raised its venue defense at an "early stage," permitting Plaintiffs and the Court to manage the litigation appropriately, *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018); *see also Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgt., Ltd.*, 364 F.3d 884, 887 (7th Cir. 2004) ("[I]mproper venue must be pleaded early, but not at the earliest possible opportunity."). Plaintiffs filed their complaint and moved for a TRO on Friday, June 27, 2025. Docs. 1, 5. FDEM worked over the weekend to file a TRO opposition and an accompanying declaration on Monday, June 30. Docs. 16, 16-1. After Plaintiffs amended their motion to clarify that this case has no real connection to Miami-Dade County, Doc. 31 at 3 n.2, FDEM supplemented its response with the venue issue *before* there was any hearing on the TRO or even a status conference in the case, Docs. 50, 52. Under the circumstances, FDEM "moved quickly enough" and has not waived its venue argument. *See Johnson*, 2008 WL 111057, at *3.[3]

Waiver is especially inappropriate absent unfairness to Plaintiffs or the Court. Plaintiffs "allege no prejudice" stemming from learning of the venue defects prior to even having a status conference before the Court. *Broad. Co. of the Carolinas v. Flair Broad. Corp.*, 892 F.2d 372, 378 (4th Cir. 1989); *see also Bartlett*, 2017 WL 106043, at *2. Nor have significant judicial resources been expended. *See Rosati's Fran., Inc. v. Fire It Up, LLC*, 2015 WL 3961703, at *4 (N.D. Ill. June 29, 2015) ("Defendants did not ... cause the Court to spend unnecessary time on the case before asserting these defenses."). Fairness thus does not require waiver. Rather, because the parties are briefing the matter and the Court is conducting a hearing, it would waste resources if the defense *were* found waived. *See* Doc. 54.

*Fourth*, the cases cited by Plaintiffs are inapt. In those cases, months had passed, or significant judicial resources were expended, before a venue defense was asserted. *United States v. Dardashti* is a good example. There, the defendant challenged service four months after proof of service was filed, despite clear knowledge of the suit, and only after the plaintiff had moved for

---

[3] Plaintiffs make the unfounded and false accusation that because the venue objection was raised after reassignment of the case, FDEM was "holding back" the venue defense "to find out which way the wind was blowing." Doc. 61 at 3. Regardless of the judge assigned, the State is raising the venue issue in *every* detention-facility case wrongly filed in this District if the Court does not recognize the venue defect sua sponte. *Compare C.M. v.* Noem, No. 25-cv-23182 (S.D. Fla., Doc. 26 (raising venue objection in case before Judge Ruiz), *with Garcia*, No. 25-cv-23136 (S.D. Fla.), Doc. 5 at 1 (Judge Altman sua sponte recognizing venue defect and transferring case).

3

default judgment, the defendant had filed two long motions to set aside the default judgment, and the court had held a hearing. *See* 2016 WL 6561480, at *1-3 (S.D. Fla. Apr. 15, 2016). Plaintiffs' other cases are similar.[4] Tellingly, Plaintiffs cite no case like this one, where the venue defect was raised quickly, before the hearing or decision on injunctive relief, and before *any* judicial proceedings had occurred. In such circumstances, there is no waiver.

## II. VENUE IS IMPROPER IN THIS DISTRICT

### A. Venue in this District Is Not Proper Under Section 1391(e)

Plaintiffs' lead argument is that venue is proper in this District under section 1391(e) because Friends of the Everglades has its principal place of business in Stuart and it sued a federal official. Doc. 61 at 3-4.[5] That argument is belied by reading to the end of the statute. Even when a federal official is sued, "[a]dditional persons may be joined as parties" only "in accordance with … such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." 28 U.S.C. § 1391(e)(1). The statute is thus "wholly irrelevant for suits brought against state officials." Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3815 (4th ed.); *see also Rogers v. Civil Air Patrol*, 129 F. Supp. 2d 1334, 1337 (M.D. Ala. 2001) ("[R]eliance on section 1391(e) to justify venue over … a non-federal defendant[] is misplaced."). Instead, "a plaintiff distressed by official misconduct who sues both a federal and a nonfederal defendant who participated in the activity undergirding the lawsuit must press his claim in a district having venue with respect to the nonfederal defendant by authority other than [section] 1391(e)."

---

[4] *See Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 691 (1st Cir. 1992) (defense raised two months after complaint and following stipulated order concerning discovery); *Gulf States Regl. Ctr., LLC v. Jaddou*, 2024 WL 3553533, at *1, *4 (E.D. La. July 25, 2024) (defense raised two months after preliminary-injunction motion and after hearing and decision on injunctive relief); *Neb. Data Ctrs., LLC v. Khayet*, 2018 WL 2184456, at *2-3 (D. Neb. May 10, 2018) (defense raised more than two months after complaint and after two hearings); *TLC Vision (USA) Corp. v. Freeman*, 2013 WL 2181267, at *5 (E.D. Mo. May 20, 2013) (defense raised after two months of litigation, two hearings, and multiple court orders); *Bautista-Perez v. Holder*, 681 F. Supp. 2d 1083, 1091-92 (N.D. Cal. 2009) (defense raised after decision on preliminary injunction); *George Wash. Univ. v. DIAD, Inc.*, 1996 WL 470363, at *1 (D.D.C. Aug. 9, 1996) (defense raised eight weeks after complaint and after two hearings on injunctive relief); *Barnstead Broad. Corp. v. Offshore Broad. Corp.*, 869 F. Supp. 35, 37-39 (D.D.C. 1994) (defense raised after ruling on injunctive relief).

[5] Left unexplained is why FoE seemingly forum-shopped around its home division in Fort Pierce and filed the suit 107 miles south of its residence. *Cf.* S.D. Fla. IOP 2.02.00 (implementing a rule to keep cases in the division that will "reduc[e] the expense and inconvenience to litigants and counsel associated with holding and attending court in distant locations").

*Lamont v. Haig*, 590 F.2d 1124, 1130 n.36 (D.C. Cir. 1978). Put differently, venue for the claim against FDEM must be determined "as if" the Federal Defendants "were not" parties. *Hensley v. U.S. Dist. Ct. E. Dist. of Cal.*, 2008 WL 480000, at *5 (E.D. Cal. Feb. 19, 2008); *see also Knight v. Corp. for Nat. & Cmty. Serv.*, 2004 WL 2415079, at *3 (E.D. Pa. Oct. 28, 2004); Doc. 50 at 2 n.2. Plaintiffs must accordingly ground venue against FDEM, if at all, in section 1391(b).

In any case, Plaintiffs are wrong that venue against the Federal Defendants is proper under section 1391(e). Venue for claims against federal officials follows the plaintiff's residence only "if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). Citing out-of-circuit district court cases, Plaintiffs say real property is "involved" only in suits about "real property interests." Doc. 61 at 3-4. But Plaintiffs do not explain how that limitation follows from the text. *See Ferguson v. Lieurance*, 565 F. Supp. 1013, 1015 (D. Nev. 1983) (rejecting Plaintiffs' construction as "legal sophistry"); *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009) (same and holding that real property was involved in action challenging federal management of land). The ordinary understanding of a suit that "involves" real property surely encompasses a suit where, as here, real property is "central" to the case: Plaintiffs' contention is that a parcel in Collier County cannot be used as a detention facility because of environmental concerns on that parcel. *FPL Energy, LLC v. United States*, 2008 WL 4097664, at *1 n.1 (S.D. Fla. Aug. 29, 2008). Regardless, even under Plaintiffs' test, real property interests are involved: Plaintiffs allege Defendants wrongfully commandeered Miami-Dade's property, Doc. 1 ¶¶ 44, 93, which no doubt "concern[s]" "right, title or interest in [the] real property," *Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1116 (N.D. Cal. 2014).

### B.    Plaintiffs Are Also Mistaken That Venue Is Proper Under Section 1391(b)

Plaintiffs also err in contending that "a substantial part of the events or omissions giving rise to the claim[s] occurred" in the Southern District. 28 U.S.C. § 1391(b)(2). That standard calls for "a two-part inquiry." *NuTek Int'l, Inc. v. Moxley-W.*, 2014 WL 12623811, at *4 (M.D. Fla. Mar. 26, 2014) (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003)). "First, a court should identify the nature of the claims and the acts or omissions" that "gave rise" to them. *Id*. Second, the court should ask "whether a substantial part of those acts took place in this District." *Id*. In that effort, "the Court must ask what acts or omissions *by the defendant* gave rise to the lawsuit and consider where they occurred"—Plaintiffs' actions are irrelevant. *Rodriguez–Diaz v. Donald*, 2015 WL 11217234, at *2 (S.D. Fla. Apr. 1, 2015) (Williams, J.) (discussing

5

*Jenkins*, 321 F.3d at 1372). The court should also "take seriously the adjective 'substantial.'" *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). "[O]nly those acts and omissions [with] a close nexus to the [alleged] wrong" will suffice. *Jenkins*, 321 F.3d at 1372.

Plaintiffs allege three main wrongs: the federal government did not conduct an environmental impact study before the State built the detention facility (Counts I-II); FDEM commandeered the Dade-Collier Training and Transition Airport without satisfying certain state law requirements (Count III); and Miami-Dade County "acquiesce[d]" to FDEM's actions (Count IV). Doc 1 ¶¶ 61-94.[6] Yet the "events or omissions giving rise to th[ose] claim[s] occurred" outside this District. 28 U.S.C. § 1391(b)(2). As Plaintiffs do not dispute, the federal government's decisionmaking (to the extent there is any) occurred in the District of Columbia; FDEM's decision to commandeer the airport occurred in Tallahassee; and all detention activities are occurring in Collier County. *See* Doc. 50 at 4. For just that reason, Judge Altman has twice held that the Southern District is not "the proper venue" for challenges to the detention facility: That facility is in "Ochopee, [Florida], Ochopee is in Collier County, and Collier County is in the Middle District of Florida." *Garcia*, No. 25-cv-23136, Doc. 5 at 1 (citing *Castillo*, No. 25-cv-23022, Doc. 7 at 1). "[T]he Middle District" is thus the "appropriate venue" for challenges to the facility, *id.* at 2, and a decision holding otherwise would threaten an untenable intra-district split.

Plaintiffs' attempts to sidestep this analysis fail. They first claim that venue is proper because a tiny sliver of the commandeered parcel is "located in" Miami-Dade County. Doc. 61 at 4. Yet Plaintiffs' claims do not turn on the airport parcel writ large; they turn on the *detention facility* that exists on the parcel. And no portion of that facility sits in Miami-Dade. Doc 50-1 ¶¶ 2, 3 (depicting Collier County on the left side of the bisecting line and Miami-Dade County on the right side). The Miami-Dade sliver of the parcel forms no part of Plaintiffs' claims, "much less a substantial part of them." *Wholesale, LLC v. Travelers Indem. Co. of Conn.*, 2012 WL 1991456, at *2 (S.D. Fla. May 29, 2012) (Williams, J.). That sliver is thus, at best, tangential to "the heart of the dispute." *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1317 (S.D. Fla.

---

[6] Plaintiffs sometimes suggest Miami-Dade's "acquiescence" to FDEM's commandeering decision occurred in Miami-Dade. Doc. 61 at 6. Later they abandon that claim, asserting "it is the State and Federal Defendants whose actions and omissions implicated Miami-Dade County." *Id.* at 8 n.4. Regardless, FDEM's initial response remains true: Miami-Dade did not yield anything because it could not stop the FDEM's action, and Plaintiffs' "acquiescence" theory would at most establish venue against the County, not FDEM. *See* Doc. 50 at 3 n.2.

2018); *see Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 190 (D.D.C. 2018) ("Peripheral and tangential events occurring in the district will not establish venue.").

Plaintiffs next say that Miami-Dade County "own[s]" the Collier County parcel that houses the detention center. Doc. 61 at 4. But venue depends on where the "events or omissions … occurred," not on where the landowner lives. 28 U.S.C. § 1391(b)(2). Were it otherwise, a defendant to a battery charge occurring at a Target store in Aventura could be "haled into" the District of Minnesota—"a remote district having no real relationship to the dispute"—merely because the Target corporation resides in Minneapolis. *Rodriguez–Diaz*, 2015 WL 11217234, at *2. That is not the law. *Cf. Pittsburgh Logistics Sys., Inc. v. Glen Rose Transp. Mgmt.*, 2020 WL 7406848, at *3 (W.D. Pa. Dec. 17, 2020) (venue existed at trademark owners' residence not because owner lived there, but because it was "the location of the property" driving the dispute).

Plaintiffs are also wrong that venue lies in the Southern District because the "omi[tted]" NEPA report would have "review[ed] … environmental impacts in the Southern District." Doc. 61 at 8-9. In a NEPA case like this one, the relevant government action is the decision not to conduct the NEPA study. *See Friends of Earth v. Haaland*, 2022 WL 185196, at *2-4 (D.D.C. Jan. 20, 2022). Venue is therefore proper in the district where that decision was made, but it is not proper in a district simply because parts of the district would have been studied in the report. *Id. Friends of Earth* bears that out. There, Louisiana argued that venue existed in the Western District of Louisiana because an omitted NEPA report would have "consider[ed]" both "locations in the Western District" and "research that would have partially occurred in [the] district." *Id.* at *4. That argument, the court held, misunderstood the "relevant omission" in a NEPA case: The "lack of a decision to conduct or consider further research." *Id.* That principle stems from the basic premise that, in APA cases, "courts generally focus on where the decisionmaking process occurred to determine where the claims arose." *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009) (collecting cases).[7] And since the decision not to conduct a NEPA study was made in agency offices in the District of Columbia and the Eastern District of Louisiana, venue in the Western District was improper. *Friends of Earth*, 2022 WL 185196, at *4, *7.

That reasoning governs here. Plaintiffs' NEPA and APA claims challenge the federal

---

[7] *Accord Awad v. Mayorkas*, 2022 WL 1215521, at *2 (M.D. Fla. Apr. 7, 2022); *Mashpee Wampanoag Tribe v. Zinke*, 2019 WL 2569919, at *7 (D.D.C. June 21, 2019); *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 2005 WL 8176727, at *3 (E.D. Cal. July 7, 2005).

government's failure to conduct a NEPA study. Doc. 1 ¶¶ 61-79. But Plaintiffs have alleged no facts suggesting that the government's decision not to conduct the study was made in this District. Nor have Plaintiffs disputed FDEM's point that the "decision[]" not to conduct a study was made either in "Tallahassee, Washington, D.C., or on site" in Collier County. Doc. 61 at 6.

To sidestep that problem, Plaintiffs say they are not challenging the "decision-making about the detention facility," but rather "Defendants' failure to comply with federal environmental laws." Doc. 61 at 6. The only environmental law that Plaintiffs cite, though, is NEPA. *See* Doc. 1 ¶¶ 61-74. And the federal government violates NEPA only by declining to conduct a NEPA study before engaging in a major federal action. 42 U.S.C. § 4332. The alleged "relevant omission" is thus the government's "decision" to press forward with a project before conducting a NEPA study. *See Friends of Earth*, 2022 WL 185196, at *2-4. That decision was not made in this District.[8]

Plaintiffs claim next that even if all Defendants' actions occurred outside this District, venue is proper because those actions will "impact" people, places, and things within the District. Doc. 61 at 5, 8-10. Plaintiffs posit that Miami-Dade residents enjoy dark skies and ecological areas that are "downstream" of and allegedly "threatened" by the detention facility. *Id.* at 8-10. Plaintiffs even suggest that venue lies anywhere the "endangered Florida panther" roams, *see id.* at 9—a roughly 400-mile stretch that spans from Monroe County to Fort Myers to Georgia's Okefenokee Swamp. *See* Fla. Fish & Wildlife Conservation Comm., Description and Range, https://myfwc.com/wildlifehabitats/wildlife/panther/description/ (explaining that a panther ventured to "western Georgia"). Those arguments rest on a mistaken premise—that Plaintiffs' injuries are relevant "actions or omissions" under the venue statute. They are not. Section 1391(b)(2) focuses on where the "acts or omissions [of] *the defendant*" occurred, *Rodriguez–Diaz*, 2015 WL 11217234, at *2, not on where Plaintiffs, Intervenors, or a host of roaming animals may "feel[] the effects of a defendant's conduct," *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)).

*Woodke* is instructive. *See Rodriguez–Diaz*, 2015 WL 11217234, at *2 n.1 (noting that the Eleventh Circuit has "explicitly endorsed [*Woodke*'s] interpretation of the venue statute"). In

---

[8] For the same reasons, it does not matter if the NEPA report would have required "research to be undertaken" in Miami-Dade. *Friends of Earth*, 2022 WL 185196, at *4; *see* Doc. 61 at 9 (implying that fact might be relevant). Again, the "relevant omission" in a NEPA claim is "the lack of a decision to conduct or consider further research." *Friends of Earth*, 2022 WL 185196, at *4. And Plaintiffs have alleged no facts showing that decision occurred in this District.

*Woodke*, the owner of an infringed trademark asserted venue "in the district of his residency because that [wa]s" where he would feel the infringement's "ultimate effect." 70 F.3d at 985. The Eighth Circuit rejected the claim. The statute's "focus," the court explained, is the "relevant activities of the defendant, not of the plaintiff" (or anyone else for that matter). *Id.* The court thus held that a wrong's "effect" is not a relevant "action or omission" when assessing venue. *See id.* "[I]f Congress had wanted to lay venue where the plaintiff was residing when he was injured, it could have said so expressly." *Id.*; *see also Abramoff v. Shake Consulting, LLC*, 288 F. Supp. 2d 1, 5 (D.D.C. 2003) ("[T]hat the plaintiff may feel damages in [a district] does not create venue.").

That reasoning has foreclosed Plaintiffs' "impact" theory in cases much like this one. In *Friends of Earth*, for example, Louisiana argued that venue was proper in the Western District of Louisiana because "the impacts of the challenged administrative action [would] be felt" there. 2022 WL 185196, at *5. The court agreed that the district would "certainly feel some of the impacts" of the agency's decision, yet it still spurned the claim because "impacts alone cannot create proper venue." *Id.* Nor does *Friends of Earth* stand alone. The Central District of California reached a similar result in a case challenging a land regulation on "critical habitat[s]." *Home Builders Ass'n*, 2005 WL 8176727, at *1-3. The relevant "actions or omissions" for venue purposes, held the court, were the "Defendants' rule-making activities," not the "the critical habitat determinations that [were] the product of the rule[.]" *Id.* at *3.

This case falls squarely within those precedents. Plaintiffs protest that they and others in Miami-Dade will feel the impacts of Defendants' actions. Doc. 61 at 7-8. But those effects are not the "focus" of the venue statute. *Woodke*, 70 F.3d at 985. The statute instead "focus[es] on relevant activities of the defendant[s]," none of which occurred in the Southern District. *Id.*

Plaintiffs three contrary citations are unpersuasive. *See* Doc. 61 at 7. In two of them, the defendant's action and the plaintiff's injury occurred in the same place. *See Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 46 (D.D.C. 2006) (management of a water facility in Florida harmed snail kite population in Florida); *C2F, Inc. v. Bee Paper Co.*, 2008 WL 4791012, at *9 (D. Or. Oct. 28, 2008) (negotiations in Oregon harmed business in Oregon). Venue was proper in those cases because the defendant's offensive act *also* occurred in the relevant district. *See Friends of Earth*, 2022 WL 185196, at *5 (distinguishing those cases from cases, like this one, in which the action and the injury do not occur in the same district). Plaintiffs' remaining citation did find venue proper in a district that would feel the effects of actions taken in another district. *See W. Org. of*

9

*Res. Councils v. U.S. Bureau of Land Mgmt.*, 2021 WL 718857, at *4 (D. Mont. Feb. 24, 2021). But as Plaintiffs' own citation makes clear, *see C2F*, 2008 WL 4791012, at *9, that district court was bound by Ninth Circuit precedent rejecting *Woodke*'s holding that courts must "focus on relevant activities of the defendant, not the plaintiff," *id.* (explaining that the Ninth Circuit has rejected *Woodke*). This Court, by contrast, is bound by *Jenkins*, which has "explicitly endorsed [*Woodke*'s] interpretation of the venue statute." *Rodriguez–Diaz*, 2015 WL 11217234, at *2 n.1.

Plaintiffs' "impact" theory fails for another reason: The impacts it hypothesizes have not yet occurred. Its response speculates that the detention facility "threaten[s]" future harms to land, people, and animals in Miami-Dade. *See* Doc. 61 at 5, 8-10. But section 1391(b)(2) refers in the past tense to events that have already "occurred." It thus excludes venue choices based on speculative future injuries, like those Plaintiffs imagine here. *See Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264, 268 (7th Cir. 1978) ("To base a venue determination on the possibility of some future administrative ruling approaches the question backwards.").

In their final bid, Plaintiffs—incredibly—ask this Court to ignore the limits on its power and enter a preliminary injunction even if it lacks venue. Doc. 61 at 3 n.2. That would be serious error. The key to preliminary relief is likely success on the merits. A case without proper venue will not succeed on the merits. *See Fla. Hometown Democracy, Inc. v. Browning*, 2008 WL 3540607, at *1 (S.D. Fla. Aug. 12, 2008) (denying a preliminary injunction because venue was improper). Plaintiffs' citations do not hold otherwise. Their first case holds that venue is not "jurisdictional," so a court can "adjudicate" a claim if venue has been waived. *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1349 (11th Cir. 1982). In their second case, a court issued a preliminary injunction despite a pending transfer motion, but only because the motion *conceded* venue and asked only for discretionary transfer to another division. *See Arval Serv. Lease S.A. v. Clifton*, 2014 WL 12614422, at *1 (M.D. Fla. Nov. 21, 2014); *Arval Serv. Lease S.A. v. Clifton*, No. 3:14-cv-1047, Doc. 29. Finally, the court in their third case *denied* an injunction on the merits and transferred the case for lack of venue. *S. Visions, LLP v. Red Diamond, Inc.*, 2018 WL 8221528, at *8 (N.D. Ga. Dec. 10, 2018). That in no way supports the novel premise that courts may grant sweeping interim relief even when venue is improper and disputed.

## CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion a temporary restraining order or preliminary injunction because venue is improper in this District.

10

| | |
|---|---|
| Dated: July 29, 2025 | Respectfully submitted, |
| James Uthmeier<br>  *Attorney General of Florida*<br>Jeffrey Paul DeSousa (FBN 110951)<br>  *Acting Solicitor General*<br>Nathan A. Forrester (FBN 1045107)<br>  *Chief Deputy Solicitor General*<br>Robert S. Schenck (FBN 1044532)<br>  *Assistant Solicitor General*<br>**Office of the Attorney General**<br>The Capitol, PL-01<br>Tallahassee, FL 32399<br>jeffrey.desousa@myfloridalegal.com | s/ *Jesse Panuccio*<br>Jesse Panuccio (FBN 31401)<br>Evan Ezray (FBN 1008228)<br>David Costello (FBN 1004952)<br>**BOIES SCHILLER FLEXNER LLP**<br>401 East Las Olas Blvd., Suite 1200<br>Fort Lauderdale, Florida 33301<br>jpanuccio@bsfllp.com<br><br>*Counsel for Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2025, the foregoing was filed with the Clerk of Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

s/ *Jesse Panuccio*
Jesse Panuccio