# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

FRIENDS OF THE EVERGLADES, INC., a Florida 501(c)(3) not-for-profit corporation, and CENTER FOR BIOLOGICAL DIVERSITY, a 501(c)(3) nonprofit organization,

    Plaintiffs,

vs.

KRISTI NOEM, in her official capacity as Secretary of the UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, in his official capacity as Acting Director of the UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; KEVIN GUTHRIE, in his official capacity as Executive Director of the FLORIDA DIVISION OF EMERGENCY MANAGEMENT; and MIAMI-DADE COUNTY, a political subdivision of the State of Florida,

    Defendants.
_____/

CIVIL DIVISION

CASE NO. 25-CV-22896-JEM

**THE TRIBE'S REPLY IN SUPPORT OF MOTION TO INTERVENE (D.E. 33)**

Interested Party, the Miccosukee Tribe of Indians of Florida (the "Tribe"), replies in support of its Motion to Intervene. *See* D.E. 33 (the "Motion").

### I. The Defendants' Differing Positions Favor Granting Intervention.

The Federal Defendants "take no position" on the Tribe's Motion. *See* D.E. 59. Defendant Miami-Dade County did not respond to the Tribe's Motion. This leaves the Hon. Kevin Guthrie, in his official capital as Executive Director of the Florida Division of Emergency Management ("FDEM" or "Defendant"), as the only Defendant who opposed the Motion. *See* D.E. 58.

The lack of consensus among the party-defendants favors granting intervention: "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Ctr. for Biological Diversity v. Animal & Plant Health Inspection Serv.*, 2010 WL 11444278, at *2 (S.D. Fla. Oct. 19, 2010) (quoting *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) (emphasis in original).

### II. FDEM's Response.

FDEM argues that the Tribe cannot intervene as a matter of right because (1) the Tribe mimics Plaintiffs' allegations and claims, (2) the Tribe has failed to show entitlement to intervention as a matter of right, (3) the Tribe's interests are not protected by NEPA, and (4) intervention would create unnecessary delay and burden.

#### A. FDEM Does Not Challenge Several Factors under Rule 24(a)(2).

Before addressing FDEM's arguments, the Tribe notes that FDEM only challenges the inadequacy-of-representation element of Rule 24(a)(2). *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993) ("Pursuant to the *Chiles* criteria, a proposed intervenor must show: (1) that the intervention application is timely; (2) that an interest

1

exists relating to the property or transaction which is the subject of the action; (3) that disposition of the action, as a practical matter, may impede or impair the ability to protect that interest; and (4) the existing parties to the lawsuit inadequately represent the interests."); *cf.* D.E. 58 at p.1.

**B. The Tribe's Interests Are Not Adequately Represented.**

The Tribe's interests are not adequately represented by the existing parties.

The inadequacy of representation "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). *See also Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) (quoting *Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir.1989)) ("The proposed intervenors' burden to show that their interests *may be* inadequately represented is minimal."); *USAA Life Ins. Co. v. Doss*, 2016 WL 877843, at *2 (M.D. Fla. Jan. 29, 2016), *report and recommendation adopted*, 2016 WL 866463 (M.D. Fla. Mar. 7, 2016) ("The Supreme Court has noted that the burden to satisfy this requirement 'should be treated as minimal.'") (quoting *Trbovich*).

First and foremost, the Tribe has shown that representation of its interest "may be" inadequate because the Tribe's members *live* adjacent to the TNT Site, and hunt, gather, and observe sacred rituals adjacent to the site. The federal and Florida governments passed several laws confirming the Tribe's right to use and enjoy these lands. Neither of the Plaintiffs share these characteristics or qualities with the Tribe. Consequently, the Tribe has met its "minimal burden."

Second, FDEM's claim that "if the Tribe seeks simply to mimic Plaintiffs in every particular, then Plaintiffs—who are already vigorously litigating this case—adequately represent the Tribe's interests." *See* D.E. 58 at 3. However, "as the Supreme Court recognized, 'the fact

2

that the interests are similar does not mean that the approaches to litigation will be the same.'" *S. Florida Equitable Fund LLC v. City of Miami, Fla.*, 2010 WL 2925958, at *5 (S.D. Fla. July 26, 2010) (citing *Trbovich,* 404 U.S. at 539).

Here, the Tribe has interests that (may) conflict with Plaintiffs' interests. The Tribe's primary interest is the health, safety, and welfare of its members, whereas Plaintiffs' ultimate objectives include enjoining "any further pre-constructive activities, construction, conversion, or use of the TNT Site for purposes of immigration detention **unless and until Defendants comply with NEPA and the APA**." *See* D.E. 1 at ¶B (emphasis added).

Yet, beyond compliance with NEPA and the APA, the Tribe has additional interests, including enforcement of rights specific to the Tribe. *See e.g.* Executive Order No. 13175; P.L. 105-313.    For example, E.O. 13175 (Consultation and Coordination with Indian Tribal Governments) seeks "to establish regular and meaningful consultation and collaboration with tribal officials in the development of Federal policies that have tribal implications, to strengthen the United States government-to-government relationships with Indian tribes, and to reduce the imposition of unfunded mandates upon Indian tribes[.]" It requires, among other things, that each federal agency "have an accountable process to ensure meaningful and timely input by tribal officials in the development of regulatory policies that have tribal implications." *Id*. at §5.

Likewise, the Miccosukee Reserved Area Act acknowledges, *inter alia*, the Tribe's right to protect Everglades National Park. *See* D.E. 33 at p. 3 (citing P.L. 105-313). For example, section 6 of the Miccosukee Reserved Area Act provides,

> PREVENTION OF DEGRADATION.— —Pursuant to the requirements of the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.), the Tribe shall prevent and abate degradation of the quality of surface or groundwater that is released into other parts of the Park . . . .

3

P.L. 105-313, §6(3)(A).

Quite simply, Plaintiffs do not share these same rights, interests, duties, or obligations. And FDEM does not address any of these laws particular to the Tribe in its response.

Instead, FDEM argues that "the Tribe does not purport to have rights to the airport property itself, and it does not intend to bring any claim invoking its property rights, so the 'factual differences' in how Plaintiffs and the Tribe are situated are 'not germane' to the relevant legal issues concerning NEPA and the APA." *See* D.E. 58 (citing *Blake v. Batmasian*, 2016 WL 7447253, at *9 (S.D. Fla. Sept. 15, 2016)).  However, the Tribe is situated in a materially different manner from the Plaintiffs because of, *inter alia,* the Tribe's legal rights and relation to the land. And in *Blake*, the **plaintiff** filed a motion to amend, or alternatively to intervene *six months after the expiration of deadline to add parties*. *Id*. at *2.  It is *Blake* that is not germane here.

The Tribe's rights, interests, duties, and obligation differ from Plaintiffs. Since the Tribe has met its "minimal burden," and since neither the Federal Defendants nor the County have opposed the Tribe's Motion, an order granting the Tribe's Motion is proper. *See Ctr. for Biological Diversity*, 2010 WL 11444278, at *2 ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action.") (citation omitted).

### C.  The Tribe Showed Entitlement to Intervention of Right.

Next, FDEM argues, "Perhaps sensing that its bid for intervention of right is doomed because of its failure to meet the inadequacy-of-representation prong, the Tribe hedges." *See* D.E. 58. at 5. This conclusory argument merits a conclusory response: The Tribe did not sense that its bid for intervention of right is doomed because of its failure to meet the inadequacy-of-prong representation, and the Tribe did not hedge.

4

In its Motion, the Tribe wrote that it "seeks to intervene to assert two claims against the Defendants: (1) violations of the NEPA and (2) violations of the Administrative Procedure Act. These claims can be found in counts I-II of the operative complaint." *See* D.E. 33 at p. 18. The Tribe also noted that Plaintiffs intended to amend the complaint upon the expiration of a 60-day, pre-suit, notice period. *Id*. As a result, the Tribe advised that it "intends to join the amended complaint as an intervenor-plaintiff. In doing so, the Tribe expressly does not intend to waive its rights or limit itself to joining counts I-II in the forthcoming amended complaint." *Id*.

In accordance with the authorities cited in the Motion, the Tribe requests the opportunity to file a pleading upon being granted intervention. *See e.g. Nat. Res. Def. Council v. Serv.*, 2016 WL 5415127 at *5 (M.D. Fla. Sept. 28, 2016 (directing intervenor to file pleading within 15 days of order granting intervention).

In the authority cited by FDEM, the District Court rejected FDEM's argument concerning Rule 24(c). *See Danner Const. Co., Inc. v. Hillsborough Cnty.*, 2009 WL 2525486, at *2 (M.D. Fla. Aug. 17, 2009) ("Danner asserts it cannot properly respond to the motions to intervene since no responsive pleading was filed. However, this District and the Eleventh Circuit have rejected such a strict reading of Rule 24(c) . . . and this Court also rejects the strict reading argued by Danner.") (citations omitted). Discussing the Eleventh Circuit's opinion in *Piambino*, the District Court observed that the intervenor's "failure to file a pleading in the nature of a complaint as required by Rule 24(c) was inconsequential." *Danner*, 2009 WL 2525486, at *2 (discussing *Piambino v. Bailey*, 757 F.2d 1112, 1121 (11th Cir.1985)). "In fact, the court noted that the majority of circuits, including the Eleventh Circuit, have chosen to disregard non-prejudicial technical defects in motions to intervene and allow intervention where the motion does not prejudice the party." *Danner*, 2009 WL 2525486, at *2. As here, in *Danner*, the "Motions state a

5

defense to the action, as required by Rule 24(c), and do not prejudice the Plaintiffs since the motions "clearly spell[ ] out [the intervenors'] position in this case." *Id*. (quoting *Petrik v. Reliant Pharmaceuticals, Inc.*, 2007 WL 3283170 at *2 (M.D. Fla. 2007). Accordingly, the Court should also reject FDEM's position.

### D. Standing is Not Part of the Intervention Analysis.

The Tribe has standing to participate in this controversy. For example, the Tribe was deprived of "meaningful and timely input" in the development of regulatory policies that have tribal implications. *See* E.O. 13175. Likewise, the Tribe has a duty to prevent the degradation of ground and surface water flowing to or from the subject site.

Regardless, FDEM does not cite the standing analysis applicable to the Tribe as an intervening party, which is lower than the typical case: "Intervening parties, however, need not in every instance demonstrate that they independently fulfill the familiar requisites of injury-in-fact, causation, and redressability. Because of lessened justiciability concerns in the context of an ongoing Article III case or controversy, intervenors in this circuit may in some cases be permitted to 'piggyback' upon the standing of original parties to satisfy the standing requirement." *Dillard v. Chilton Cnty. Com'n*, 495 F.3d 1324, 1330 (11th Cir. 2007) "Commonly, intervenors 'ride 'piggyback' on the . . . undoubted standing' of original parties to an ongoing case or controversy. Indeed, we have formalized this rule, stating that 'a party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable case or controversy between the parties already in the lawsuit.'" *Id*. at 1336 (quoting *Diamond v. Charles*, 476 U.S. 54, 64 (1986); *Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir.1989). *See also Tosto v. Zelaya*, 2012 WL 12850139, at *3 (S.D. Fla. Aug. 16, 2012), *aff'd sub nom.*, 769 F.3d 1296 (11th Cir. 2014) (same).

### E. The Tribe Has an Environmental Interest.

Next, FDEM argues that "NEPA protects . . . environmental interests" but "the Tribe cannot show an environmental interest because its environmental allegations are too vague to plausibly show a concrete risk of harm." *See* D.E. 58 at p 6. The Eleventh Circuit disagrees.

"We agree that a plaintiff need not prove that their injury can be traced to specific molecules of pollution emitted by the alleged polluter. It is enough that a plaintiff 'show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged' in the specific geographic area of concern.'" *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271, 1280 (11th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir.2000)). *See also RB Jai Alai, LLC v. Sec'y of Fla. Dept. of Transp.*, 47 F. Supp. 3d 1353, 1362 (M.D. Fla. 2014). ("[T]he 'zone of interests' test is permissive in nature and should be construed in favor of allowing judicial review of administrative action."); *Okeelanta Corp. v. United States Army Corps of Eng'rs.*, 2022 WL 19919781, at *7 (S.D. Fla. Apr. 28, 2022) ("That the Corps has not yet jumped through the last regulatory hoop necessary to start the flow of water from Lake Okeechobee to the STA does not render [p]laintiffs' threat of injury impermissibly speculative . . . Construction is currently underway. This is not some theoretically possible or partially designed project—the STA is presently being built.").

In *Riverkeeper*, the Eleventh Circuit held that a plaintiff had standing to assert a claim concerning the "diminution in downstream water quality" under NEPA. *Riverkeeper*, 781 F.3d at 1283 (discussing, *inter alia*, 42 U.S.C. § 4332(2)(C)). *See also Okeelanta Corp.*, 2022 WL 19919781, at *11 ("It is well settled that, in a NEPA suit, 'a cognizable procedural injury exists when a plaintiff alleges that a proper [environmental impact statement] has not been prepared . . .

7

and when the plaintiff also alleges a 'concrete' interest—such as an aesthetic or recreational interest—that is threatened by the proposed actions.' . . . **As nearby landowners alleging harm to physical property they own and use, [p]laintiffs have a concrete interest threatened by the challenged agency action . . . and thus have alleged a procedural injury under NEPA**.") (emphasis added).

FDEM does not cite any cases from this Circuit to support its argument. For example, *Bycko v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 7411752 (D. N.J. Nov. 9, 2023) is unhelpful because *Bycko* did not involve claims under NEPA or the APA and contains no discussion of procedural standing to assert such claims. In *La Cuna De Aztlan Sacred Sites Protec. Circle Advisory Comm. v. U.S. Dep't of Interior*, 2012 WL 2884992 (C.D. Cal. July 13, 2012), the plaintiffs failed to state a claim because they did not allege that the *existing* environmental impact study or record of decision were inadequate. *Id*. at 5. Here, Plaintiffs allege the absence of any EIS or other review. *See* D.E. 1 at ¶43. Moreover, FDEM cites to language in *La Cuna* discussing the plaintiff's failure to state a claim under the Religious Freedom Restoration Act, which has its own distinct pleading requirements. *Id*. at *6-7.

As to increased traffic, the Tribe invites FDEM's citation to *Canyon Park Bus. Ctr. Owners' Ass'n v. Buttigieg*, 2022 WL 2317059 (W.D. Wash. June 28, 2022), which provides that "[t]raffic and congestion has been considered a 'quality of life' injury within NEPA's zone of interests." *Id*. at *3 (citing *RB Jai Alai, LLC v. Sec'y of Fla. Dep't of Transp.*, 47 F. Supp. 3d 1353, 1362 (M.D. Fla. 2014)). Unlike here, the *Canyon Park* plaintiff's compliant "focuse[d] heavily on whether the Project will increase traffic" and failed to allege other environmental harms independent of alleged traffic concerns. *Id*. Thus, the plaintiff lacked standing because "courts do not assume environmental injuries based on allegations of **only** increased traffic or congestion."

8

*Id.* (emphasis added). Here, the primary focus of the Motion is adverse downstream environmental effects for the Tribe and its members. Thus, changes in traffic patterns caused by the construction and operation of a detention center at the TNT Site properly may be considered a "quality of life" injury under NEPA according to FDEM's authorities. *Id*.

Here, the Tribe alleged that the construction and operation of a detention facility either has or will cause adverse downstream environmental effects for the Tribe and its members who live in close proximity to the TNT Site. *See generally*, D.E. 33, Intro. §§ III, IV; Argument §§ I(b)-(c), II; D.E. 33-1 (showing Tribal Villages within three miles of the TNT site); D.E. 33-2 (showing the Miccosukee Reserved Area and Tribal sites and camps within Big Cypress Preserve, many of which are downstream of the TNT Site); D.E. 33-3 (showing the general water flows in the region).

Here, the Tribe has environmental interests under NEPA, which include protecting against adverse downstream environmental effects to the land, water supply, fish and game stocks, Tribal sites, camps, and villages, and the health of Tribal members and the Reserved Area community, all of which are located either downstream or adjacent to the TNT Site. *See* D.E. 33 at 3-5.

### F. Permissive Intervention Would Not Result in Delay or Burden.

To borrow a phrase, FDEM speculates that adding the Tribe to this case will result in delay and burden. Contrary to FDEM's argument, the record reflects that this is one-month-old case, the Tribe filed its motion less than three weeks after its commencement, no discovery has been taken,[1] Defendants have not responded to the complaint, the Federal Defendants and FDEM have until August 26 to respond to the complaint, FDEM represented in its extension request that "Plaintiffs . . . will not be prejudiced by this extension," *see* D.E. 39, Plaintiffs alleged that they will seek leave to amend the complaint, and FDEM alleges that "the parties are litigating at a breakneck

---

[1]     *But see* D.E. 64.

pace toward an evidentiary hearing in less than two weeks." *See* D.E. 1 at ¶53. *Cf. Ctr. for Biological Diversity v. Animal & Plant Health Inspection Serv.*, No. 10-14175-CIV, 2010 WL 11444278, at *2 (S.D. Fla. Oct. 19, 2010) ("Arborgen's Motion to Intervene is timely because this case is still at an early stage, as evidenced by the fact that Arborgen's motion was filed before Plaintiffs filed their Second Amended Complaint.")

Moreover, FDEM's claim of burden is not supportable. FDEM claims that "the Tribe would inject into the case additional briefing and discovery that would seriously burden the existing parties and the Court." *See* D.E. 58 at 9. However, the parties are required to file joint motions and consolidated responses and replies. *See* D.E. 41. The Court will control the scope of discovery, *see* D.E. 64, and the Court will control the conduct of its hearings, *see* F.R.E. 611(a)(2). As a result, the Tribe should not be excluded from participating.

## CONCLUSION

Based upon the foregoing, Interested Party Miccosukee Tribe of Indians of Florida requests entry of an order granting intervention.

Dated: July 29, 2025                                          Respectfully submitted,

**CHRISTOPHER AJIZIAN, P.A.**

By: /s/ *Christopher Ajizian*
Christopher Ajizian, Esq.
Florida Bar No. 1010170
chris@ajizianlaw.com
1101 Brickell Avenue
Suite S-700
Miami, FL 33131
Tel: (305) 699-5001
-and-
**TODD R. FRIEDMAN, P.A.**
Todd R. Friedman, Esq.
Fla. Bar No. 97919
1101 Brickell Avenue
Suite S-700

                                                  Miami, Florida 33131
                                                  786-536-7190
                                                  todd@toddfriedmanpa.com
                                                  *Counsel for Intervenor-Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that on July 29, 2025 a true and correct copy of the foregoing was filed on the Court's CM/ECF filing system and thereby served by email on counsel of record.

By: /s/ *Todd Friedman*