**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:25-cv-22896-KMW**

FRIENDS OF THE EVERGLADES, INC., a Florida not-for-profit corporation, and CENTER FOR BIOLOGICAL DIVERSITY, a 501(c)(3) nonprofit organization,

       Plaintiffs,

vs.

KRISTI NOEM, in her official capacity as Secretary of the UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, in his official capacity as Acting Director of the UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; KEVIN GUTHRIE, in his official capacity as Executive Director of the Florida Division of Emergency Management; and MIAMI-DADE COUNTY, a political subdivision of the State of Florida,

       Defendants.

and

THE MICCOSUKEE TRIBE OF INDIANS OF FLORIDA,

       Intervenor/Plaintiff.

## PLAINTIFFS' PRE-HEARING BRIEF

Plaintiffs Friends of the Everglades and Center for Biological Diversity ("Plaintiffs") and Intervenor-Plaintiff The Miccosukee Tribe of Indians of Florida (the "Tribe") hereby respectfully submit this Pre-Hearing Brief in advance of the preliminary injunction hearing scheduled for August 6, 2025 in order to provide the Court with what Plaintiffs and the Tribe believe is the

applicable legal framework for consideration of the evidence Plaintiffs and the Tribe plan to present at the hearing.

1. **What Are the Elements for the Entry of a Preliminary Injunction?**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *see also Doe 1 v. Bondi*, No. 1:25-CV-01998-VMC, 2025 WL 1188469, at *3 (N.D. Ga. Apr. 18, 2025) (enjoining termination of F-1 student visas issued under Student and Exchange Visitor System). "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418 (2009); *Melendez v. Sec'y, Florida Dep't of Corr.*, 2022 WL 1124753, at *17 (11th Cir. Apr. 15, 2022) (same); *Guerra-Castro v. Parra*, 2025 WL 1984300, at *1 (S.D. Fla. July 17, 2025) (same).

2. **What Does NEPA Require?**

"NEPA was the first of several landmark environmental laws enacted by Congress in the 1970s. Subsequent statutes included the Clean Air Amendments of 1970, the Clean Water Act of 1972, and the Endangered Species Act of 1973, among others." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 145 S. Ct. 1497, 1507 (2025). NEPA constitutes a "a set of 'action-forcing' procedures that require that agencies take a 'hard look' at environmental consequences,' . . . provide for broad dissemination of relevant environmental information . . . NEPA itself does not mandate particular results, but simply prescribes the necessary process." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) (internal citation omitted). "NEPA requires federal agencies to prepare an Environmental Impact Statement for any 'major Federal action[ ]

significantly affecting the quality of the human environment.'" *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 833 F.3d 1274, 1278 (11th Cir. 2016) (quoting 42 U.S.C. § 4332(2)(C)); *see also* 42 U.S.C. §4332(C) (requiring the head of the lead agency to consult with and obtain comments from pertinent agencies and make those comments publicly available throughout the agency review processes). Thus, NEPA "requires federal agencies to prepare an environmental impact statement, or EIS. The EIS must address the significant environmental effects of a proposed project and identify feasible alternatives that could mitigate those effects." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colorado*, 145 S. Ct. 1497, 1507 (2025).

"NEPA serves the dual purpose of informing agency decisionmakers of the environmental effects of proposed federal actions and ensuring that relevant information is made available to members of the public so that they 'may also play a role in both the decisionmaking process and the implementation of that decision.'" *Black Warrior Riverkeeper*, 833 F.3d at 1278 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989)). "[T]he risk implied by a violation of NEPA is that real environmental harm will occur through inadequate foresight and deliberation." *Sierra Club v. Marsh*, 872 F.2d 497, 504 (1st Cir. 1989), *quoted in Miccosukee Tribe of Indians of Fla. v. United States*, No. 08-21747-CIV, 2008 WL 11332080, at *11 (S.D. Fla. Nov. 14, 2008).

### 3. How Do NEPA and the APA Interact?

"The APA provides the cause of action for a NEPA challenge." *WildEarth Guardians v. U.S. Forest Serv.*, 137 F.4th 1068, 1082 (10th Cir. 2025) (citing *New Mexico Cattle Growers Ass'n v. U.S. Fish & Wildlife Serv.*, 248 F.3d 1277, 1281 (10th Cir. 2001)). Under the APA, the court must "hold unlawful and set aside agency action" that is "found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or that is undertaken "without

observance of procedure required by law." 5 U.S.C. § 706(2)(A) & (D). Under NEPA's "hard look" requirements, courts "will overturn an agency's decision as arbitrary and capricious . . . if it suffers from one of the following: (1) the decision does not rely on the factors that Congress intended the agency to consider; (2) ***the agency failed entirely to consider an important aspect of the problem***; (3) the agency offers an explanation which runs counter to the evidence; or (4) the decision is so implausible that it cannot be the result of differing viewpoints or the result of agency expertise." *Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1216 (11th Cir. 2002) (citing *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (emphasis added).

### 4. What Is Required to Show Standing in a NEPA Case?

"To show a cognizable injury in fact in a procedural injury case, a plaintiff must allege that the agency violated certain procedural rules, that these rules protect a plaintiff's concrete interests, and that it is reasonably probable that the challenged action will threaten these concrete interests." *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1170 (11th Cir. 2006) (citing *Sierra Club v. Johnson,* 436 F.3d 1269, 1278–79 (11th Cir.2006)). "It is well settled that, in a NEPA suit, 'a cognizable procedural injury exists when a plaintiff alleges that a proper EIS has not been prepared ... [and] when the plaintiff also alleges a 'concrete' interest—such as an aesthetic or recreational interest—that is threatened by the proposed actions.'" *Id.* at 1171 (quoting *Johnson*, 436 F.3d at 1279).

### 5. What Does "Federal Action" Mean Under NEPA and What Agency Actions Are at Issue in this Case?

Federal actions triggering NEPA include any actions that are subject to "substantial Federal control and responsibility." 42 U.S.C. § 4336e(10)(A). "Major federal action can exist when the primary actors are not federal agencies." *United States v. S. Florida Water Mgmt. Dist.*, 28 F.3d

1563, 1572 (11th Cir. 1994). A "federal agency's authority to influence" nonfederal activity is "the touchstone of major federal activity." *Id.* (internal citation omitted) (noting that "[t]he federal agency must possess actual power to control the nonfederal activity"). Under this standard, "a non-federal project is considered a 'federal action' if it cannot 'begin or continue without prior approval by a federal agency.'" *Maryland Conservation Council, Inc. v. Gilchrist,* 808 F.2d 1039, 1042 (4th Cir. 1986); *see also Indian River Cnty. v. Rogoff*, 201 F. Supp. 3d 1, 15 (D.D.C. 2016) (holding federal action exists if "federal agency must undertake 'affirmative conduct' before the non-federal actor may act."); *Goos v. I.C.C*., 911 F.2d 1283, 1294 (8th Cir. 1990) (holding that "federal action" for NEPA purposes may be found if federal action "is a legal condition precedent to accomplishment of an entire nonfederal project"); *Fund For Animals v. Clark*, 27 F. Supp. 2d 8, 12–13 (D.D.C. 1998) (federal action found where federal defendants "had a hand in developing the bison management plan" along with state agency, and state agency engaged "federal defendants to seek their help in developing a plan to manage the bison [such that] having become so intimately involved in the discussion and planning of the hunt, the federal defendants cannot now claim to have no responsibility under NEPA with respect to the hunt or the supplemental feeding programs").

In the context of this case, Plaintiffs allege that the Federal Defendants approved and authorized the construction and operation of a detention center to hold noncitizens for immigration purposes at the Everglades Detention Center without complying with NEPA. They further allege that the State and Federal Defendants have undertaken a partnership to detain noncitizens at the Everglades Detention Center without complying with NEPA. Plaintiffs ask that the Court hold these actions unlawful and set them aside.

6. <u>**What does "Final Agency" Action Mean**</u>?

Agency action is "final" for purposes of APA review when "(1) the action … 'mark[s] the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature'; and (2) is 'one by which rights or obligations have been determined or from which legal consequences will flow.'" *Bennett v. Spear,* 520 U.S. 154, 177–78 (1997), *cited in Alabama v. Centers for Medicare & Medicaid Servs.*, 780 F. Supp. 2d 1219, 1226 (M.D. Ala. 2011), *aff'd,* 674 F.3d 1241 (11th Cir. 2012). The "core question" is whether the decision-making process has advanced to the point that it "will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). Decisions that are "tentative" or preliminary are not final, while decisions that have a "direct effect on . . . day-to-day business" are reviewable. *Id.* at 797; *see also Abbott Labs. v. Gardner,* 387 U.S. 136, 152 (1967).

7. <u>**What Does Likelihood of Irreparable Harm Mean**</u>?

Injunctive relief for a NEPA violation is proper where irreparable injury is likely. *Winter v. Natural Resources Defense Council,* 555 U.S. 7, 10 (2008). "[E]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e. irreparable." *Fla. Key Deer v. Brown*, 386 F. Supp. 2d 1281, 1285–86 (S.D. Fla. 2005), *aff'd sub nom. Fla. Key Deer v. Paulison*, 522 F.3d 1133 (11th Cir. 2008) (quoting *Amoco Production Co. v. Village of Gambell, AK,* 480 U.S. 531, 545 (1987)). A presumption of "[i]rreparable harm results where environmental concerns have not been addressed by the NEPA process. . . . This harm is not merely a procedural harm; 'the risk implied by a violation of NEPA is that real environmental harm will occur through inadequate foresight and deliberation.'" *Miccosukee Tribe of Indians of Fla. v. United States*, No. 08-21747-CIV-UNGARO, 2008 WL 11332080, at *11 (S.D. Fla. Nov. 13, 2008) (quoting *Sierra Club v. Marsh*, 872 F.2d 497, 504 (1st

Cir. 1989)) (citing *Protect Key West, Inc. v. Cheney*, 795 F. Supp. 1552, 1563 (S.D. Fla. 1992)). *See also Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 995 (8th Cir. 2011) ("the failure to comply with NEPA's requirements causes harm itself, specifically the risk that real environmental harm will occur through inadequate foresight and deliberation") (affirming preliminary injunction).

"[W]here injury to an endangered species is threatened, legal remedies are necessarily inadequate." *Fla. Key Deer*, 386 F. Supp. 2d at 1285 (citing *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 314 (1982)); *see also Sierra Club v. Norton,* 207 F.Supp.2d 1310 (S.D. Ala. 2002) (finding that the threatened destruction of the optimal habitat of an endangered species is clearly irreparable)). Where harm to a species is alleged in the context of a NEPA claim, plaintiffs "need not show harm to the species as a whole." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1257 (10th Cir. 2003). Courts have found likely irreparable harm in a NEPA action where a plaintiff demonstrates a project will cause "soil disturbance and dust" impacting water resources, noise and "bright lights" impacting aesthetic interests, and potential ("could harm") adverse impact on endangered species. *San Luis Valley Ecosystem Council v. U.S. Fish and Wildlife Serv.*, 657 F. Supp. 2d 1233, 11240 (D. Col. 2009).

### 8. May States Operate Immigrant Detention Centers Absent Federal Involvement?

"'[T]he only entity in the business, so to speak, of [buying private] immigration det[ention] is the federal government.'" *CoreCivic, Inc. v. Governor of New Jersey*, No. 23-2598, 2025 WL 2046488, at *6 (3d Cir. July 22, 2025) (quoting *United States v. King County*, 122 F.4th 740, 757 (9th Cir. 2024) (striking down a ban on deportation flights as violating both prongs of intergovernmental immunity)). "Only the federal government has the power to decide whether, how, and why to hold aliens for violating immigration law. It alone has the power to make these

contracts in the first place." *CoreCivic, Inc.*, 2025 WL 2046488, at *6.; *see also Arizona v. United States*, 567 U.S. 387, 394 (2012) (describing the federal government's immigration power as 'broad [and] undoubted')."

### 9. May The Court Enjoin Ongoing Operations at the TNT Site?

The Court may enjoin ongoing operations at the TNT site "unless and until" Defendants act "in full accordance with NEPA[.]" *See Save Greers Ferry Lake, Inc. v. Dep't of Def.*, 255 F.3d 498, 501–02 (8th Cir. 2001) (enjoining use of boat docks on a lake's shoreline until defendants implement a new shoreline management plan in full accordance with NEPA and lawfully issue new permits for use of the docks at issue); *Hualapai Indian Tribe v. Haaland*, 755 F. Supp. 3d 1165, 1199–1200 (D. Ariz. 2024) (enjoining "any ground disturbance, construction, *operations*, drilling, or any other activity" until defendants comply with NEPA, even though challenged oil drilling project was in its third phase) (emphasis added).

The Court may also enjoin any new or ongoing construction activities. *See Miccosukee Tribe of Indians of Fla. v. United States*, 2008 WL 11332080, at *13 (S.D. Fla. Nov. 14, 2008) (enjoining defendants from taking "any further steps" toward implementing a restoration project plan until they comply with NEPA); *Sierra Club v. Norton*, 207 F. Supp. 2d 1310, 1341–42 (S.D. Ala. 2002) (enjoined further construction until NEPA compliance, noting an injunction was also necessary to preserve the court's ability to eventually enter meaningful and effective relief in the case[1]); *Sierra Club v. Martin*, 71 F. Supp. 2d 1268, 1329 (N.D. Ga. 1996) (enjoining any further timber cutting, road building, and land sales until NEPA compliance).

---

[1] "Additional construction and the destruction of the very habitat this action was brought to protect, would potentially preclude or limit the court's ability to craft a meaningful remedy. Failure to enjoin the construction would seriously diminish plaintiff's opportunity to obtain relief in this case." *Id*. Issuing a preliminary injunction would also serve to prevent any alleged harm to defendants associated with crafting final relief in this case. *Envtl. Def. v. United States Army Corps*

**10. What Bond Requirements Apply?**

The Court may exercise its discretion to waive any bond requirement. *See BellSouth Telecomms. Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005); *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1359–61 (N.D. Ga. 2022); *Doe 1 v. Bondi*, No. 1:25-CV-01998-VMC, 2025 WL 1188469, at *5 (N.D. Ga. Apr. 18, 2025). If the Court does exercise its discretion to require a bond, a nominal bond is appropriate where the preliminary injunction is in the public interest and a substantial bond requirement would "stifle the intent" of NEPA by precluding citizen enforcement. *Nat. Res. Def. Council v. Morton*, 337 F. Supp. 167, 169 (D.D.C. 1971) (setting bond at *$100); Davis v. Mineta*, 302 F.3d 1104, 1126 (10th Cir. 2002) ("Ordinarily, where a party is seeking to vindicate the public interest served by NEPA, a minimal bond amount should be considered."); *Sierra Club v. Norton*, 207 F. Supp. 2d 1342, 1343 (S.D. Ala. 2002) (imposing a nominal bond in environmental case where to do otherwise would "effectively bar plaintiffs—two non-profit public interest organizations—from obtaining meaningful judicial review or appropriate relief"); *Ala. ex rel. Baxley v. Corps of Eng'rs*, 411 F. Supp. 1261, 1276 (N.D. Ala. 1976) (setting nominal bond of $1.00 for non-profit environmental plaintiffs).

Dated:   August 5, 2025

Respectfully submitted,

---

*of Eng'rs*, 515 F. Supp. 2d 69, 88 (D.D.C. 2007) (ordering the U.S. Army Corps of Engineers to "deconstruct that portion of the project which it has already built" where the agency had been permitted to continue construction during the case and the court ultimately found it was not compliant with NEPA and the Clean Water Act).

EARTHJUSTICE
4500 Biscayne Boulevard, Suite 201
Miami, Florida  33137
Telephone:  (305) 440-5432

By:        s/   Tania Galloni
   Tania Galloni, Fla. Bar No. 619221
   tgalloni@earthjustice.org
   Dominique Burkhardt, Fla. Bar No. 100309
   dburkhardt@earthjustice.org
   Alisa Coe, Fla. Bar No. 10187
   acoe@earthjustice.org

*Counsel for Friends of the Everglades*

CENTER FOR BIOLOGICAL DIVERSITY
Elise Pautler Bennett, Fla. Bar No. 106573
ebennett@biologicaldiversity.org
Jason Alexander Totoiu, Fla. Bar No. 871931
jtotoiu@biologicaldiversity.org
Post Office Box 2155
St. Petersburg, FL 33731
Telephone:  (727) 755-6950

*Counsel for Center for Biological Diversity*

COFFEY BURLINGTON, P.L.
2601 South Bayshore Drive, Penthouse One
Miami, Florida  33133
Telephone:  (305) 858-2900

By:        s/   Paul J. Schwiep
   Paul J. Schwiep, Fla. Bar No. 823244
   PSchwiep@CoffeyBurlington.com
   Scott Hiaasen, Fla. Bar No. 103318
   SHiaasen@CoffeyBurlington.com
   YVB@CoffeyBurlington.com
   LPerez@CoffeyBurlington.com
   service@CoffeyBurlington.com

*Counsel for Plaintiffs*

TODD R. FRIEDMAN, P.A.
1101 Brickell Avenue, Suite S-700
Miami, Florida  33131
Telephone:  (786) 536-7190

By:    s/  Todd R. Friedman
   Todd R. Friedman, Fla. Bar No. 97919
   todd@toddfriedmanpa.com

CHRISTOPHER AJIZIAN, P.A.
1101 Brickell Avenue, Suite S-700
Miami, Florida  33131
Telephone:  (305) 699-5001

By:    s/ Christopher Ajizian
   Christopher Ajizian, Fla Bar No. 1010170
   chris@ajizianlaw.com

*Counsel for The Miccosukee Tribe of Indians*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 5, 2025, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the Service List below via transmission of Notice of Electronic Filing generated by CM/ECF.

              s/   Paul J. Schwiep

| Service List | |
|---|---|
| **Nathan A. Forrester**<br> Chief Deputy Solicitor General<br>nathan.forrester@myfloridalegal.com<br>**Robert S. Schenck**<br> Assistant Solicitor General<br>robert.schenck@myfloridalegal.com<br>Office of the Attorney General<br>The Capitol, PL-01<br>Tallahassee, Florida 32399-1050<br>Telephone: (850) 414-3300<br>jenna.hodges@myfloridalegal.com<br>   _____<br><br>Boies Schiller Flexner LLP<br>**Jesse Panuccio, Esq.**<br>jpanuccio@bsfllp.com<br>**Evan Ezray, Esq.**<br>eezray@bsfllp.com<br>**David Costello, Esq.**<br>dcostello@bsfllp.com<br>401 East Las Olas Boulevard, Suite 1200<br>Fort Lauderdale, Florida 33301<br>Telephone: (954) 356-0011<br>jpanuccio@BSFLLP.com<br>ftleserve@bsfllp.com<br><br>*Counsel for Defendant Kevin Guthrie, in his official capacity as Executive Director of the Florida Division of Emergency Management* | HAYDEN P. O'BYRNE<br>United States Attorney<br>**Carlos J. Raurell**<br> Assistant U.S. Attorney<br>carlos.raurell@usdoj.gov<br>99 Northeast 4th Street<br>Miami, Florida 33132<br>Telephone: (305) 961-9243<br>melissa.Jiminson@usdoj.gov<br>   _____<br><br>ADAM R.F. GUSTAFSON<br>Acting Assistant Attorney General<br>Environment and Natural Resources Division<br> United States Department of Justice<br>**Peter M. Torstensen, Jr.**<br> Deputy Assistant Attorney General<br>Environment and Natural Resources Division<br> United States Department of Justice<br>**Hayley A. Carpenter**<br> Trial Attorney<br>hayley.carpenter@usdoj.gov<br>**Marissa Piropato**<br> Deputy Chief<br>mairssa.piropato@usdoj.gov<br>Natural Resources Section<br>Ben Franklin Station<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Telephone: (202) 305-0242<br><br>*Counsel for Kristi Noem, in her official* |

| | |
|---|---|
| | *capacity as Secretary, United States Department of Homeland Security, and Todd Lyons, in his official capacity as Acting Director, United States Immigration and Customs Enforcement* |
| GERALDINE BONZON-KEENAN<br>Miami-Dade County Attorney<br>**Christopher J. Wahl**<br>   Assistant County Attorney<br>wahl@miamidade.gov<br>**Monica Rizo Perez**<br>   Assistant County Attorney<br>rizo@miamidade.gov<br>**David M. Murry**<br>   Assistant County Attorney<br>DMMurray@FlyMIA.com<br>Stephen P. Clark County<br>111 Northwest 1st Street, Suite 2810<br>Miami, Florida  33128<br>Telephone:  (305) 375-5151<br>Victor.Rodriguez3@miamidade.gov<br>Madalis.Gonzalez@miamidade.gov<br>KGriffin@FlyMIA.com<br><br>*Counsel for Miami-Dade County* | |