**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-22896-CV-WILLIAMS**

FRIENDS OF THE EVERGLADES, INC., *et al.*,

    Plaintiffs,

v.

KRISTI NOEM, *et al.*,

    Defendants.

_____/

# ORDER

**THIS MATTER** is before the Court on Plaintiffs Friends of the Everglades, Inc. ("***Friends***") and Center for Biological Diversity's ("***CBD***") (together, "***Plaintiffs***") Renewed Motion for TRO (DE 40). Also before the Court are Defendant Executive Director Kevin Guthrie ("***Guthrie***" or the "***State***") and Defendants Secretary Kristi Noem and Acting Director Todd Lyons' (together, "***Federal Defendants***") venue challenges. (DE 50; DE 60). The Renewed Motion for TRO and the improper venue challenge are fully briefed.[1] For the reasons set forth below and stated on the record during the August 7, 2025 Hearing, Plaintiffs' Renewed Motion for TRO (DE 40) is **GRANTED IN PART AND DENIED IN PART**.[2]

---

[1] All Defendants responded in opposition to Plaintiffs' Motion for Preliminary Injunction, (DE 12; DE 16; DE 21), which addresses the arguments reiterated in Plaintiffs' Renewed Motion for TRO, and Plaintiffs replied (DE 24). Defendant Guthrie and the Federal Defendants responded to Plaintiffs' Renewed Motion for TRO specifically, (DE 50; DE 60), and Plaintiffs replied (DE 45; DE 46).

[2] A more comprehensive recitation of the proceedings and the case authority supporting injunctive relief will follow in a supporting memorandum.

I. **BACKGROUND**

The Court provides an abbreviated background meant to contextualize this Order. On June 23, 2025, the Florida Division of Emergency Management ("**FDEM**") took control of the Dade-Collier Training and Transition Airport ("**TNT**"), in order to construct a mass migrant detention and deportation facility ("**Facility**"). (DE 1 ¶¶ 1, 39). Two days later, Florida Governor Ron DeSantis announced that the Facility "is fully funded by the federal government . . . [and] was requested by the federal government." (*Id*. ¶ 35). Pre-construction and construction activities at TNT began that week. (*Id.* ¶¶ 40–42). According to Plaintiffs, no environmental assessment or impact statement as required by law was prepared prior to building on this protected land. (*Id.* ¶ 43).

On June 27, 2025, non-profit environmental organizations Friends and CBD filed this suit seeking declaratory and injunctive relief to halt the Facility's construction and operation until the project complied with certain relevant federal, state, and local laws. (*Id.* ¶¶ 1, 8, 13). Most notably, Plaintiffs claim the project is being built and operated in violation of the National Environmental Policy Act ("**NEPA**"), which requires that major federal actions significantly affecting the human environment undergo environmental review processes. (*Id.* ¶¶ 61–74) (Count I). Because no such review has been done, Plaintiffs claim, the approval and use of the Facility by the United States Department of Homeland Security ("**DHS**"), including Immigration and Customs Enforcement ("**ICE**"), is unlawful under the Administrative Procedure Act ("**APA**"). (*Id.* ¶¶ 75–79) (citing 5 U.S.C. § 701 *et seq.*) (Count II).[3]

---

[3] Plaintiffs further claim the State's participation in the project through FDEM exceeds the department's authority under Florida Statutes Chapters 252 and 944. (DE 1 ¶¶ 80–87) (Count III). Finally, Plaintiffs allege Defendant Miami-Dade County ("**Miami-Dade**")

On the same day, Plaintiffs filed their Motion for Preliminary Injunction (DE 5), requesting that the Court enjoin the State and the Federal Defendants from developing or using the TNT site as an immigration detention facility "unless and until Defendants comply with NEPA and the APA." (DE 5 at 1–2, 14). Within the following week, all Defendants responded, (DE 12; DE 16; DE 21), among other arguments, and Plaintiffs replied. (DE 24).

The Federal Defendants attached a declaration from Thomas Giles, Acting Deputy Executive Associate Director for ICE's Enforcement and Removal Operations (DE 21-1). Among other things, Giles declared that any detentions at the Facility would be pursuant to "section 287(g) of the Immigration and Nationality Act [("*INA*")], codified at 8 U.S.C § 1357(g)." (DE 21-1 ¶ 7).

A few weeks later, Plaintiffs filed a Renewed Motion for TRO, explaining that since they filed suit, the "State and Federal Defendants commenced transporting immigration detainees to the TNT [s]ite," that, according to State officials, "as many as 900 people are now being detained at the [s]ite, and [that] the State has plans to expand the number of detainees to as many as 4,000." (DE 40 at 2). Given the completion of the Facility's first phase of construction and its ongoing operations, Plaintiffs altered their request for injunctive relief, now seeking a "halt [to] any further construction on the TNT [s]ite . . ., [a] pause[ to] the transport of additional detainees to the [s]ite, and [the] ceasing [of] any

---

unlawfully acquiesced in allowing their property, TNT, to be used as a detention facility without the proper permits and in violation of county code. (*Id.* ¶¶ 88–94) (Count IV). These last two counts are not part of the basis for Plaintiffs' requests for injunctive relief.

operations related to detaining or preparing for the detention of anyone not [already] detained at the [s]ite[.]" (*Id.* at 6).[4]

On July 21, 2025, the State filed a Supplemental Response to Plaintiffs' Requests for a Temporary Restraining Order ("**Supplemental Response on Venue**"), arguing for the first time that "venue is not proper in this Court." (DE 50 at 1). At a Status Conference the next day, the Court set a briefing schedule on the issue and oral arguments for July 30, 2025. (DE 54). The Court also set an evidentiary hearing on Plaintiffs' Motion for Preliminary Injunction ("**Preliminary Injunction Hearing**") for August 6, 2025. (*Id.*). The Court heard oral arguments regarding venue on July 30, 2025, (DE 72 ("**Hearing on Venue**")), at which time Plaintiffs renewed their motion for a TRO. In light of the upcoming evidentiary hearing, the Court denied the ore tenus motion.

In the days leading up to the Preliminary Injunction Hearing, the Parties exchanged exhibit and witness lists. (DE 81; DE 82; DE 87; DE 90; DE 91). The Parties estimated the Preliminary Injunction Hearing would require one day. On August 6, 2025, the Court began the Hearing, and heard testimony from Friends Executive Director Eve Samples, State Representative Anna Eskamani, Friends member Jessica Namath, CBD member Amber Crooks, and retired United States Fish and Wildlife and Florida Fish and Wildlife ecologist Randy Kautz, who specializes in panther habitat and population dynamics. Among other testimony, the Court heard from Representative Eskamani that during her tour of the TNT site on July 12, 2025, Defendant Guthrie informed her that this Facility was the result of a written request from DHS to open a detention facility in the state.

---

[4] The case was originally assigned to Judge Jose Martinez, (DE 2), but was reassigned to this Court on July 16, 2025. (DE 37).

Crooks, Namath, and Samples discussed their use of the area around the TNT site for outdoors activities and the harm to their enjoyment of the area that has resulted from road closures, increased lighting, and increased traffic due to the project. In particular, Plaintiffs introduced photos from Namath showing industrial lighting and heavy construction machinery entering the site. She also testified that the artificial lighting brought in for the project significantly increased the brightness from the site for miles compared to her recent nighttime trips to the area just months before the project. Namath further testified that in the few days prior to the Preliminary Injunction Hearing, she had seen multiple trucks conveying equipment and paving materials entering the site, along with trucks and vans bearing ICE and CBP insignias. Finally, Namath testified that each time she had called Governor DeSantis' office to inquire about the project, she was told this was a federal project and she would need to speak with her United States senators. Kautz discussed serious risks to the endangered Florida panther from the site, including a loss of around 2,000 acres of habitat due to the increased artificial lighting. Kautz opined that he would have expected U.S. Fish and Wildlife to have conducted a review of the project prior to its construction.

      Although the Court heard testimony into the early evening, the Parties agreed the Preliminary Injunction Hearing would not conclude that day. At that time, counsel for the State and Federal Defendants informed the Court that they had scheduling conflicts which would preclude resumption of the proceedings until the following Tuesday. After some discussion with the Court, the Parties agreed that the Hearing could proceed the next day for just a half day and would then resume the following Tuesday.

The Court reconvened the case on August 7, 2025, and heard testimony from wetland ecologist, hydrologist, and soil physics expert Dr. Christopher McVoy and hydrogeologist Dillon Reio. Both witnesses opined that at least 20 acres of the site had been newly paved with asphalt. Both also testified that this 800,000 square feet of paving presented risks off runoff into the surrounding, unique wetland ecosystem, which could impede the natural flow of and introduce contaminants into the natural water system around the site. According to both witnesses, despite the possible presence of silt fencing on site, the lack of a stormwater management system risked harm to the habitat and animals.

At the close of the day's testimony, Plaintiffs renewed their request for a limited TRO, citing new fears that Defendants planned to add paving and other infrastructure over the weekend, while the Hearing was in recess. Plaintiffs based these fears, in part, on Ms. Namath's testimony that she watched paving and construction materials entering the site that week. Specifically, Plaintiffs requested that the Court prevent any additional industrial-style lighting, paving, filling, excavating, site preparation, or fencing. The Court inquired as to whether Defendants would agree that no such construction would take place over the five-day hiatus. Defendants were unwilling to make this representation.

Consequently, the Court heard argument on Plaintiffs' request. During argument, the Federal Defendants conceded that the project was operating under a 287(g) agreement between the Florida Department of Law Enforcement ("**FDLE**"), whose federally deputized officers operate the Facility, and ICE or DHS. As the Court noted, when "performing a function under" a 287(g) agreement, "an officer or employee of a State or political subdivision of a State shall be subject to the direction and supervision of

the Attorney General." § 1357(g)(3). In other words, by law, the federal government, through DHS or ICE, has "the authority to influence" the State's operation of the Facility. *United States v. S. Fla. Water Mgmt. Dist.*, 28 F.3d 1563, 1572 (11th Cir. 1994) (calling "a federal agency's authority to influence nonfederal activity" the "touchstone of major federal activity," which would trigger NEPA). After hearing argument on the motion, the Court granted Plaintiffs' narrow request for a TRO.

## II.   LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure authorizes courts to grant a preliminary injunction or temporary restraining order before final judgment in limited circumstances. The purpose of this injunctive relief is to "preserve the status quo until the [Court] renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). The primary difference between a preliminary injunction and a TRO is that a TRO "may be entered before the defendant has an adequate opportunity to respond." *Dragados USA, Inc. v. Oldcastle Infrastructure, Inc.*, No. 20-cv-20601, 2020 WL 733037, at *2 (S.D. Fla. Feb. 13, 2020). As such, the duration of a TRO is limited to fourteen days, absent an extension for good cause. Fed. R. Civ. P. 65(b)(2).

To merit a TRO, as with a preliminary injunction, Plaintiffs must show:

> (1) a substantial likelihood of success on the merits; (2) that the [TRO] is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the [TRO] would cause the other litigant; and (4) that the [TRO] would not be averse to the public interest.

*Gissendaner v. Comm'r, Ga. Dept. of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015) (quoting *Wellons v. Comm'r, Ga. Dept. of Corr.*, 754 F.3d 1260, 1263 (11th Cir. 2014)); *see also Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010) (explaining that "the

four criteria for obtaining a preliminary injunction are identical to those for issuance of a temporary restraining order").

### III. DISCUSSION

The Court will begin by briefly addressing Defendants' arguments regarding venue and the Court's jurisdiction to enjoin Defendants' conduct under 8 U.S.C. § 1252. The State and Federal Defendants each argue that venue in the Southern District of Florida is improper.[5] (DE 50 at 1; DE 60 at 1). While the Court will take up Defendants' challenges in due course, "[v]enue is not a jurisdictional prerequisite and its presence or absence does not affect [the] [C]ourt's authority to adjudicate" Plaintiffs' request. *Harris Corp v. Nat'l Iranian Radio and Television*, 691 F.2d 1344, 1349 (11th Cir. 1982). Federal Defendants agreed with this assessment during the Hearing on Venue. (DE 89 at 46 (agreeing the Court was "correct" that "venue isn't a jurisdictional question")). Given the urgency Defendants' actions create, and the possibility of additional evidence being adduced relevant to the Court's venue analysis, the Court will withhold ruling on the venue challenge pending the conclusion of the Preliminary Injunction Hearing. *See S. Visions, LLP v. Red Diamond, Inc.*, No. 18-cv-04566, 2018 WL 8221528, at *4–5 (N.D. Ga. Dec. 10, 2018) (deciding that venue was improper and the case would be transferred, but nonetheless ruling on plaintiff's motion for preliminary injunction "in the interest of justice and judicial economy"); *Arval Serv. Lease S.A. v. Clifton*, No. 14-cv-1047, 2014 WL 12614422, at *1 (M.D. Fla. Nov. 14, 2014) (deferring ruling on defendants' motion to transfer venue until after resolving plaintiff's motion for preliminary injunction due to the "urgency of the issues").

---

[5] Defendant Miami-Dade County has not challenged venue.

While Defendants' § 1252 challenge is framed as jurisdictional, the Court concludes it is without merit. Section 1252 governs "Congress's comprehensive scheme for judicial review of removal orders." *Canal A Media Holding, LLC v. U.S. Citizenship and Immigr. Servs.*, 964 F.3d 1250, 1256–57 (11th Cir. 2020). As relevant here, section 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter[.]" In other words, "[i]t prohibits federal courts from granting classwide injunctive relief" against certain provisions of the INA, specifically §§ 1221–1231. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999).

Similarly, section 1252(g) bars judicial review over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" 28 U.S.C. § 1252(g). It "is specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *A.A.D.C.*, 525 U.S. at 487. "[Section] 1252(g) is not to be construed broadly as a 'zipper' clause applying to the full universe of deportation-related claims, but instead as applying narrowly to only the three 'discrete' governmental actions enumerated in that subsection." *Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 960 (11th Cir. 2015) (citing *A.A.D.C.*, 525 U.S. at 472–73). "And although many other decisions or actions may be part of the deportation process, only claims that arise from one of the covered actions are excluded from [a court's] review[.]" *Camarena v. Dir., Immigr. and Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (internal citations and quotations omitted).

Plaintiffs are not challenging the Attorney General's decision to commence or adjudicate removal proceedings. And they do not challenge the Attorney General's decision or action to execute any removal order. Instead, Plaintiffs challenge the continued operation of a facility they allege violates NEPA requirements. Thus, Plaintiffs' claims are not barred by § 1252(g). *See Canal A Media Holding, LLC*, 946 F.3d at 1257–58 (claim was not barred by § 1252(g) where action did not fall into one of three categories as "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged").

Further, Plaintiffs are not asking this Court to stop or suspend immigration enforcement, such that § 1252(f)(1) would be triggered. Indeed, the injunctive relief they seek is compliance with NEPA requirements, and in the interim, a cessation of construction activities on the TNT site. At most, that relief could have "some collateral effect on the operation of" the government's immigration detention efforts under § 1231, which does not trigger § 1252(f)(1). *Texas v. U.S. Dep't of Homeland Sec.,* 123 F.4th 186, 209 (5th Cir. 2024) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 553 n.4 (2022)). In short, because Plaintiffs do not seek to "enjoin or restrain the operation" of any immigration statute, § 1252(f) is inapplicable.

Turning to the TRO factors, the Court addressed Plaintiffs' likelihood of success on the merits at some length in open court. But "NEPA requires federal agencies to prepare an environmental impact statement, or EIS" before constructing or operating "projects that are built, funded, or approved by the Federal Government." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 145 S. Ct. 1507, 1507 (2025). At this early stage, the Court finds that, at minimum, the Federal Defendants' legal control over the Facility's

operations, evidence that the Facility's construction was at the request of DHS, and the regular inspections of the site by ICE officials, combined with the undisputed lack of any prior environmental assessment pursuant to NEPA, create a sufficient likelihood of success on Plaintiffs' APA claim based on NEPA. *See S. Fla. Water Mgmt. Dist.*, 28 F.3d at 1572; *Goos v. I.C.C.*, 911 F.2d 1283, 1294 (8th Cir. 1990) ("While we must consider both legal and factual control, whether an agency action or project is part of some other concededly major federal action depends largely on whether the agency exercises legal control over the allegedly non-federal action or project.").

"A fundamental purpose of NEPA is 'to ensure that important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise case.'" *Fla. Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 404 F. Supp. 2d 1352, 1362 (S.D. Fla. 2005) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989)). If further expansion of the site is not temporarily paused, "these as yet unexamined effects [c]ould begin to take place, and no amount of subsequent environmental analysis would undo them." *Id.* (citing *Protect Key West, Inc. v. Cheney*, 795 F. Supp. 1552, 1563 (S.D. Fla. 1992) ("Irreparable harm results where environmental concerns have not been addressed by the NEPA process")).

For similar reasons, the balance of equities and the public interest favor granting a TRO. "These two factors merge when, as here, the government is the opposing party." *Farmworker Ass'n of Fla. v. Moody,* 734 F. Supp. 3d 1311, 1342 (S.D. Fla. 2024) (internal quotations omitted). The harm to Defendants from briefly suspending expansion of the Facility is minimal, especially given that the Court is not enjoining continued operations of the site nor even preventing additional detainees from being brought to the site if

current capacity allows.[6] Meanwhile, if the site is expanded over the next several days, "it is difficult to change that course" if the Court eventually decides NEPA statements are required. *Sierra Club v. Marsh*, 872 F.2d 497, 500, 505 (1st Cir. 1989) (vacating district court's denial of preliminary injunction related to NEPA claim and remanding).

## IV.  CONCLUSION

For the reasons set forth above and in open court, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Renewed Motion for TRO (DE 40) is **GRANTED IN PART AND DENIED IN PART**.

2. The Court **ENTERS** a Temporary Restraining Order prohibiting the State and Federal Defendants and their officers, agents, employees, attorneys, and any person who is in active concert or participation with them from installing any additional industrial-style lighting (described by witnesses as "Sunbelt" lighting); or doing any paving, filling, excavating, or fencing; or doing any other site expansion, including placing or erecting any additional buildings, tents, dormitories, or other residential or administrative facilities on the TNT site. This TRO shall last **fourteen (14) days** from the date of this Order or until the Court enters an order as to Plaintiffs' Motion for Preliminary Injunction. The TRO shall include among those "who are in active concert or participation with" the State or Federal Defendants or their officers, agents, employees, or attorneys, and thus prohibited from conducting

---

[6] As Governor DeSantis observed following today's Hearing, "Operations at [the Facility] are ongoing and deportations continuing." @GovRonDeSantis, X (August 7, 2025, 4:53 PM), https://x.com/GovRonDeSantis/status/1953560188461654357.

the activities specified above, any contractors, subcontractors, or any other individuals or entities authorized to conduct work on the TNT site. S*ee* Fed. R. Civ. P. 65(d)(2)(C) (including "other persons who are in active concert or participation with" the parties or the parties' officers, agents, servants, employees, and attorneys among those bound by any injunction).

3. Plaintiffs' Expedited Motion for Ruling on Motion for TRO (DE 31) is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 7th day of August, 2025.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE