# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| FRIENDS OF THE EVERGLADES, INC., and CENTER FOR BIOLOGICAL DIVERSITY, *Plaintiffs*, v. KRISTI NOEM, in her official capacity as Secretary of the UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, in his official capacity as Acting Director of the UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; KEVIN GUTHRIE, in his official capacity as Executive Director of the Florida Division of Emergency Management, and MIAMI-DADE COUNTY, a political subdivision of the State of Florida *Defendants*. | Civil Action No. 1:25-cv-22896 |

## DECLARATION OF SANTIAGO FUENTES

Pursuant to the authority of 28 U.S.C. § 1746, I, Santiago Fuentes, declare that, to the best of my knowledge, information, and belief, and under the penalty of perjury, the following is true and correct:

1. I am the Assistant Field Office Director (AFOD) for the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Enforcement and Removal

Operations (ERO) Miami field office. I have been the AFOD of ERO Miami since 2024.

2. As the AFOD, I oversee the Criminal Alien Program (CAP), ERO Criminal Prosecutions (ECP), and 287(g) programs for the Miami area of responsibility.

3. I began my federal career in June 2003 as a clerk with U.S. Citizenship and Immigration Services in the Miami office. In February 2004, I was a Customs and Border Protection Officer in Miami, Florida. In March 2006, I entered on duty with ICE as an Immigration Enforcement Agent and was promoted to Deportation Officer and then Supervisory Detention and Deportation Officer in 2016.

4. I am familiar with the allegations made by plaintiffs in the instant lawsuit regarding the South Florida Soft-Sided Facility South detention center (SFSSFS).

## Overview of the 287(g) Program

5. Since 1996, 8 U.S.C. § 1357 (g) has authorized ICE to delegate immigration enforcement authority to state and local law enforcement by way of an agreement between the state law enforcement agency and ICE, to perform certain immigration functions as outlined in the agreement. Practically this means that local law enforcement can perform immigration enforcement actions under the direction and supervision of ICE.

6. The purpose of the 287(g) program is to enhance the safety and security of communities by identifying and processing for removal criminal aliens who pose a threat to public safety or a danger to the community. This collaboration fosters better communication between federal and state/local law enforcement agencies. This coordinated enforcement effort allows for the swift and safe removal of dangerous criminal aliens.

7. ICE implemented the first 287(g) agreement in 2002. Since then, to participate in the 287(g) program, local law enforcement officers must be nominated by a chief officer of the law enforcement agency, must have at least two years of law enforcement work experience, complete a training and certification program, be approved by ICE, and be able to qualify for appropriate

federal security clearances. The mandatory training focuses on relevant administrative, legal, and operational issues tailored to the immigration enforcement functions to be performed, followed by an examination. Officers who are nominated and successfully complete the training and certification are authorized to participate in the 287(g) program for a period of two years from the date of authorization. After this, local training on relevant issues are provided on an ongoing basis by ICE supervisors or a designated team leader.

8. There are currently 167 Florida entities that have entered 287(g) agreements since President Trump took office, including the Florida National Guard and several Florida law enforcement entities.

9. Since 2024, I have overseen the 287(g) agreements in the Miami area of responsibility. Those agreements, including the date they were signed, are available on ICE's website. The agreements generally authorize those entities to detain aliens under federal immigration laws.

10. 287(g) agreements have several different models, the Task Force Model, the Jail Enforcement Model and Warrant Service Officer model. The Task Force Model authorizes designated state or local law enforcement officers to perform immigration enforcement functions in the field, such as during patrols or traffic stops, allowing them to question individuals about immigration status and initiate removal proceedings outside of a custodial setting. In contrast, the Jail Enforcement Model limits these functions to the secure environment of a jail or correctional facility, where trained officers screen individuals already under arrest to determine immigration status, lodge detainers, and commence removal proceedings. The Warrant Service Officer Model restricts designated officers to serving ICE administrative warrants and detainers on individuals already in their custody, without granting the broader investigative or processing authority available under the Jail Enforcement Model.

**Implementation of 287(g)**

11. When a state enters into a 287(g) program, state and local law enforcement are given the authority to serve and execute immigration administrative warrants of arrest, to arrest without a warrant any alien entering or attempting to unlawfully enter the United States in the officers view, any alien unlawfully present in the United States with probable cause if the alien is likely to escape before a warrant can be obtained, or any person committing an immigration related felony with probable cause if the alien is likely to escape before a warrant can be obtained. They may also prepare charging documents for the signature of an ICE officer, process arrested aliens for immigration violations, issue immigration detainers, take and maintain custody of aliens arrested by ICE or another local law enforcement agency on behalf of ICE, and transport arrested aliens to ICE approved facilities.

12. DHS provides credentials and guidance to local law enforcement partners, and signs warrants for service as needed. DHS is required to provide direction and supervision to local law enforcement officers when taking immigration enforcement actions.

13. State and local law enforcement officers make the decision to detain an alien under the authority given to them through the 287(g) agreements. DHS does not have the authority to order any state to detain an alien, however, DHS will confirm an alien is amenable to arrest and provide direction and supervision on questions of immigration law, as required under the 287(g) agreement. The authority to direct and supervise law enforcement officers acting under a 287(g) agreement in all matters aside from those described above, to include personnel and employment matters and operational concerns pertaining to Florida detention facilities, are retained by the State of Florida. For example, the 287(g) law enforcement agency partner is responsible for providing officer salaries, benefits, uniforms; responsible for all personnel decisions such as hiring, firing, and any disciplinary actions; sets work hours, manages officer assignments, assigns supervisors; and sets policies and procedures for their agency.

### South Florida Soft-Sided Facility South Detention Facility

14. The SFSSFS detention facility is in Collier County, Florida. DHS and Collier County have had a 287(g) agreement since 2007. This agreement confers federal immigration authority onto Collier County law enforcement officials per the terms of the agreement, as generally explained under paragraph 11.

15. Collier County currently has two 287(g) agreements, to include the Jail Enforcement Model and the Task Force Management model.

16. When ICE procures detention space from a state or local entity, it pays for that space via its appropriation for Operations and Support, which includes funding for enforcement, detention and removal operations. When it does so, the aliens are detained by the state or local entity or their contractor on behalf of ICE.

17. ICE did not and has not purchased or otherwise procured any detention space from Florida for the detention of illegal aliens at the SFSSFS detention facility. ICE did not and has not ordered, supervised, or directed the construction of the facility. ICE did not and has not weighed in on the number of detainees to be held at the facility.

18. The State of Florida has complete discretion in deciding who is detained at this facility.

19. ICE continues to provide supervision to local law enforcement at the SFSSFS detention facility for delegated immigration officer functions as required under the 287(g) program. This includes signing off on charging documents, reviewing detainers issued, running federal database system checks, and providing guidance any time immigration authority is exercised.  ICE did not designate or plan the site as a detention facility.  ICE does not direct or supervise construction or physical maintenance activities at the SFSSFS detention facility.

20. Deportation Officers normally assigned to various units throughout South Florida have been temporarily reassigned to intermittently perform work at the SFSSFS facility. This reassignment

includes first line supervisors as well as deportation officers. Officers interact with detained aliens as needed. Visits to the facility by ICE personnel are conducted several times a week but may occur as often as daily.

Signed this 12th day of August 2025.


Santiago Fuentes
Assistant Field Office Director
 Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement