# Friends of Everglades & Center for Biological Diversity
# v.
# Noem, *et al*.

Scott Hiaasen & Paul Schwiep, CB

Tania Galloni & Domnique Burkhardt, EJ

Elise Pautler Bennett & Jason Totoiu, CBD

# **What Does NEPA Require?**

NEPA is a "a set of 'action-forcing' procedures that require that agencies take a **'hard look' at environmental consequences**,' . . . and that provide for **broad dissemination of relevant environmental information.** . . . NEPA ... does not mandate particular results, but simply prescribes the necessary process." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). "**NEPA requires federal agencies to prepare an [EIS] for any 'major Federal action[ ] significantly affecting the quality of the human environment**.'" *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 833 F.3d 1274, 1278 (11th Cir. 2016) (quoting 42 U.S.C. § 4332(2)(C)); *see also* 42 U.S.C. § 4332(C).

2

# APA Provides Cause of Action

- "APA provides the cause of action for a NEPA challenge." *WildEarth Guardians v. U.S. Forest Serv.*, 137 F.4th 1068, 1082 (10th Cir. 2025). Under APA, the court **must** "hold unlawful and set aside agency action" that is "found to be . . . ***arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law***" or that is undertaken "without observance of procedure required by law." 5 U.S.C. § 706(2)(A) & (D).

- Under NEPA's "hard look" requirement, courts "will overturn an agency's decision as arbitrary and capricious" if "***the agency failed entirely to consider an important aspect of the problem***." *Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1216 (11th Cir. 2002).

3

# "Federal Action" Under NEPA

"Major federal action can exist when the primary actors are not federal agencies . . . . There are no clear standards for defining the point at which federal participation transforms a state project into federal action. . . . ***The touchstone of major federal activity constitutes a federal agency's authority to influence nonfederal activity. 'The federal agency must possess actual power to control the nonfederal activity*.'"
*United States v. S. Fla. Water Mgmt. Dist.*, 28 F.3d 1563, 1572 (11th Cir. 1994), *cited in* TRO at 7.

4

# **Federal Action Proven**

- PX 45: Secretary Noem: DHS Requested Facility (at 1:30-2:15)

- FDEMX 7: EO 23-03: Authorizes FDEM to "enter into agreements with any and all agencies of federal government . . . to meet this emergency" (at 3)

- PX 43: SERT Continuity of Operations Plan: "DHS and [FEMA] . . . ***request[ed] State . . . to supplement*** . . . capacity." (at 4)

- PX 135: ICE Field Officer Compliance Inspection of TNT Detention Center

5




PX 144 ¶ 5

# 8 U.S.C. 1103(a)(11)(B)

**(11) [DHS]** in support of persons in administrative detention in non-Federal institutions, is authorized to . . . **(B)** to enter into a ***cooperative agreement*** with any State . . . ***for the necessary construction . . . required to establish acceptable conditions of confinement and detention services in any State*** . . . which agrees to provide guaranteed bed space for persons detained by the Service.

7

# Meeting of Minds Proven

- Noem June 23 post that DHS working "***at turbo speed***" to deliver "***mass deportation,***" including the expansion of "facilities and bed space in just days, ***thanks to our partnership with Florida***." **Pls' 44, at ¶ 8 & Exh. 6**

- Noem July 1 post that TNT Site will "***provide DHS with the beds and space needed***" for immigration detention. **Pls' 44, at ¶ 4 & Exh. 2.**

- FDEM official post July 3 that facility was "stood up in record time" … "***in coordination with DHS.. and ICE***." **Pls' 44, at ¶ 3 & Exh. 1.**

- DHS official July 8 post responding to reports of squalid conditions at TNT site by saying "***ICE has higher detention standards that most U.S. prisons***." **Pls' 44, at ¶ 5 & Exh. 3.**

8

# ICE & FDHSMV 287(g) Agreement (FDEMX 28)

- Purpose: To set forth terms for LEA personnel "to perform certain functions of an immigration officer ***under the direction and supervision*** of ICE." at 1.
- Required that "participating LEA personnel be subject to ICE ***direction and supervision***." (at 1)
- "ICE officers will provide ***direction and supervision*** for participating LEA personnel . . . as to immigration enforcement functions . . . ." (at 2)
- "Participating LEA personnel are not authorized to perform immigration officer functions except when working under the ***supervision or direction*** of ICE." (at 6)
- Stephen Miller: This is an "ICE Facility." (PX 106)

9

# Venue Exists In Southern District of FL

- County has not objected
- Federal defendants subject to venue under 28 U.S.C. § 1391(e)(1)(C)
  - Plaintiff resides in S.D. Fl. and case is not about right, title or interest in real property. *Earth Island Inst. v. Quinn,* 56 F. Supp. 3d 1110, 116 (N.D. Cal. 2014).
- State Defendants:  Four pleadings filed over month—did not object to venue (D.E. 16, 28, 35 & 39)
- Venue "can be raised so easily," courts "strictly apply the waiver rule" and require defendants to raise this issue in their "***first defensive move***." *Manchester Knitted Fashions v. Amalgamated Cotton Garments*, 967 F.2d 688, 692 (1st Cir. 1992).
- Opp'n to PI motion can be such a 'first responsive pleading' or defensive move." *Bautista-Perez v. Holder*, 681 F. Supp. 2d 1083, 1091 (N.D. Cal. 2009).

10

# "Substantial Part of Events or Omissions" Occurred in Southern District of Florida

- Division commandeered Miami-Dade County (MDC) property in MDC. PX 51, 52
- Commandeered entire property 1/3 of which is in MDC. PX 87.
- Omitted conferring with MDC over impacts on MDC. PX 47-49, 104 (Mayor's letters raising MDC concerns)
- Omitted to consult with Tribe in MDC. Tribe X 22 & 23.
- Wetlands, species, runoff impacts flow to Monroe and MDC. (Dr. McVoy and Ms. Castaneda testimony)
- Impacts to Tribe reserved areas in MDC where 80% of tribal members live. Tribe X 6.

11

# Irreparable Harm Standard

- Injunctive relief for a NEPA violation is proper where ***irreparable injury is likely***. *Winter v. NRDC,* 555 U.S. 7, 10 (2008). "[E]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or … of long duration, i.e. irreparable." *Fla. Key Deer v. Brown*, 386 F. Supp. 2d 1281, 1285 (S.D. Fla. 2005). A presumption of "[i]rreparable harm results where environmental concerns have not been addressed by the NEPA process. . . . This harm is not merely a procedural harm; 'the risk implied by a violation of NEPA is that real environmental harm will occur through inadequate foresight and deliberation.'" *Miccosukee Tribe of Indians of Florida v. United States*, No. 08-21747-CIV-UNGARO, 2008 WL 11332080, at *11 (S.D. Fla., Nov. 13, 2008) (quoting *Sierra Club v. Marsh*, 872 F.2d 497, 504 (1st Cir. 1989)).

12



PX 82, at 3

13



PX 136 8/8/25



PX 139  8/8/25



| Description | Quantity | Unit | Unit Price | Total Amount |
|---|---|---|---|---|
| Geotechnical Survey | 1.00 | Each | $44,000.00 | $44,000.00 |
| Civil Engineering | 1.00 | Each | $450,000.00 | $450,000.00 |
| Permanent Fencing Installation (Per LF) | 22,000.00 | Each | $310.00 | $6,820,000.00 |
| Roadway Construction - Asphalt (Per SY) | 200,000.00 | Each | $55.00 | $11,000,000.00 |
| Vector Control Service | 1.00 | Daily | $17,500.00 | $787,500.00 |

PX 126

16



PX 10 at 3

17



Kautz PX 25 at 26

18



PX 83 at 2

19

# Big Cypress Management Area



PX 88

20