**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-22896-CV-WILLIAMS**

FRIENDS OF THE EVERGLADES, INC., *et al.*,

    Plaintiffs,

v.

KRISTI NOEM, *et al.*,

    Defendants.
_____/

## OMNIBUS ORDER

**THIS MATTER** is before the Court on Defendant Kevin Guthrie's Expedited Motion to Stay Preliminary Injunction Pending Appeal (DE 137) and Defendants Kristi Noem and Todd Lyons' (together "**Federal Defendants**" and collectively with Defendant Guthrie, "**Defendants**") Expedited Motion to Stay Preliminary Injunction Pending Interlocutory Appeal (DE 138) (together "**Motions for Stay**"). Plaintiffs filed a Response in Opposition (DE 144) ("**Response**"). Also before the Court is Plaintiffs' Motion to Strike Late-Filed Declarations ("**Motion to Strike**") (DE 141). For the reasons set forth below, the Motions for Stay and Motion to Strike (DE 137; DE 138; DE 141) are **DENIED**.

**I.  BACKGROUND**

In this case, Plaintiffs Friends of the Everglades, Inc. ("**Friends**"), Center for Biological Diversity ("**CBD**"), and the Miccosukee Tribe of Indians of Florida ("**Tribe**") (collectively, "**Plaintiffs**") filed suit against Defendants and Miami-Dade County related to Defendants' use of the Dade-Collier Training and Transition Airport ("**TNT**") to construct and operate a mass migrant detention and deportation camp. (DE 1 ¶ 1; DE 84). Plaintiffs allege, in part, that Defendants failed to conduct the environmental assessments required

by the National Environmental Policy Act ("**NEPA**") before constructing and operating the project. (DE 1 ¶¶ 61–79) (Counts I and II). The same day they filed suit, Plaintiffs requested a preliminary injunction to prevent the project's construction and operation until Defendants complied with NEPA. (DE 5; DE 85). As the litigation got underway, Defendants completed and began operating the detention camp, so Plaintiffs altered their request for injunctive relief, seeking a "halt to any further construction on the TNT [s]ite . . ., [a] pause[ to] the transport of additional detainees to the [s]ite, and [the] ceasing [of] any operations related to detaining or preparing for the detention of anyone not [already] detained at the [s]ite[.]" (DE 40 at 6).

After a four-day Preliminary Injunction Hearing over the course of eight days, on August 21, 2025, the Court granted in part Plaintiffs' Motion for Preliminary Injunction. (DE 131). Specifically, the Court enjoined Defendants and others from doing a range of activities to expand the site's infrastructure and detainee/employee population, and the Court required Defendants to remove much of the site's infrastructure over the next sixty days once attrition of the camp's population allowed for it to be done in a "safe, humane, and responsible manner." (DE 131 at 80–82). The Court did not require Defendants to remove any housing or detention dormitory facilities, allowing Defendants to maintain those facilities to prevent deterioration or damage. (*Id.* at 82 n.40). It also did not prescribe any specific processes for how Defendants must remove the other infrastructure from the site. At no time during the Preliminary Injunction Hearing, did Defendants provide the Court with any evidence or argument regarding the costs of deconstructing the camp in any particular way, nor did Defendants request the Court to craft an injunction in any

particular way to avoid unnecessary costs, should the Court choose to enter a preliminary injunction.

After the injunction was issued, Defendants filed notices of appeal. (DE 132; DE 136). Then on August 23, 2025, Defendants filed Motions for Stay. (DE 137; DE 138). In their motions, Defendants included declarations from Deputy Director of the Florida Highway Patrol Joseph C. Harrison, Ian Gadea-Guidicelli, Bureau Chief of Response at the Florida Division of Emergency Management ("**FDEM**"), and ICE Miami Field Office Director Garrett Ripa. (DE 137-1–2; DE 138-1). Harrison and Ripa largely repeated general statements about the importance of having sufficient detention capacity to support immigration enforcement activities, statements that were made during the Preliminary Injunction Hearing. Gadea-Guidicelli, who Defendants chose not to call as a witness at the Preliminary Injunction Hearing, but who provided three other declarations during the preliminary injunction proceedings, (DE 86-1; DE 120-1; 116-1), said that he anticipates that complying with the Court's preliminary injunction will cost Defendants "roughly $15-20 million" based on his "experience with FDEM's financing of the facility and conversations with FDEM's vendors." (DE 137-2 ¶ 3). He also stated without elaboration or explanation that FDEM will lose most of the "value" of the money it invested in the project if required to cease operations on the site. (*Id.* ¶ 4).

Plaintiffs also attach two declarations to their Response. First, United States Representative Maxwell Frost described what he saw and heard on an August 20, 2025 tour of the facility. Representative Frost mentioned seeing diesel fuel tankers, propane tanks, and generators stored alongside natural wetlands without a silt fence buffer and water leaking from a trailer onto the pavement. (DE 144-1). Mr. Frost was told by a

contractor employed as the TNT site manager that around 350 detainees remain on site, that ICE has advised that it now only has need for 72-hour holds of detainees, and that ICE decides "everything" occurring at the facility. (*Id.*). Finally, a CBD social media strategist provided a declaration attaching a variety of news articles and videos related to the facility and this litigation. (DE 144-2).[1]

## II. LEGAL STANDARD

"A stay [pending appeal] is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotations omitted). Instead, it is "an exercise of judicial discretion," and the "party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34 (internal quotations omitted). The factors a Court must weigh when analyzing a request for a stay pending appeal have "substantial overlap" with those "governing preliminary injunctions." *Id.* at 434. They are: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure

---

[1] With regard to all declarations filed after the conclusion of the Preliminary Injunction Hearing, the Court will exercise its discretion to consider the declarations and afford their contents whatever weight they are entitled to. *See Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1273–74 (10th Cir. 2022) (affirming trial court's decision to consider additional evidence after the preliminary injunction hearing had concluded); *Nalco Chem. Co. v. Hydro Techs., Inc.*, 149 F.R.D. 686, 689 (E.D. Wis. 1993) ("When a party requests reconsideration of a previous interlocutory order such as one denying preliminary injunctive relief, the court is 'free in its discretion to grant a reargument based either on all the evidence then of record or only the evidence before the court when it rendered its interlocutory decision, or to reopen the case for further evidence.'" (quoting *Marconi Wireless Tel. Co. of Am. v. United States*, 320 U.S. 1. 48 (1943))); *Amadi v. Dep't of Child. and Fams.*, 245 F. Supp. 3d 316, 319 (D. Mass. 2017) ("In the preliminary injunction context . . . a court has broad discretion with respect to the evidence that it may consider.") (internal quotation omitted).

the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434.

### III. DISCUSSION

Days ago, the Court discussed these exact issues in an 82-page Order granting in part Plaintiffs' request for a preliminary injunction. (DE 131). The Court found Plaintiffs were likely to succeed on their NEPA claim because the project was adversely impacting the environment and was controlled in large part by the federal government, and Defendants had done no environmental analysis at all before building and commencing operations of the facility. (*Id.* at 44–66). The Court described substantial evidence provided by Plaintiffs of several kinds of ongoing and likely future irreparable harm from the project, including to the surrounding wetlands, endangered species, and those who live, recreate, research in, and work to preserve the area. (*Id.* at 67–75). Finally, the Court found Plaintiffs' and the public's interest in preventing these harms outweighed Defendants' interest in continuing to operate the detention facility while undergoing the NEPA review process, given that Defendants "offered little to no evidence why this detention camp, in this particular location, is uniquely suited and critical" to Defendants' immigration enforcement mission. (*Id.* at 75–79).

In their Motions for Stay, Defendants simply reiterate their arguments "articulated in [their] briefing . . . [and] on the record at the evidentiary hearing[.]" (DE 137 at 2); *see also* (DE 138 at 2 (relying in its request for a stay on "the reasons articulated in Federal Defendants' briefing . . . [and] during the evidentiary hearing")). Accordingly, for the reasons discussed in the Court's August 21, 2025 Order, the Court finds these same arguments—the arguments rejected in the Order—do not establish a strong showing of

likelihood of success on the merits of their appeal. This "factor is the most important" here, where the balance of equities do not weigh heavily in favor of granting a stay. *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986).

To the contrary, the remaining stay factors also counsel against granting a stay pending appeal. Again, as noted in the Order, Defendants constructed the facility in eight days and have repeatedly emphasized that the facility was designed and constructed to be temporary. (DE 16 at 4–5, 14, 19–20; DE 16-1 ¶ 2; DE 21 at 6–7). Further, during the preliminary injunction proceedings, Defendants made no argument related to the cost of deconstructing the facility, ceasing its operations, or reinstalling infrastructure, despite Plaintiffs' specific request for relief encompassing these actions. The Court gives little weight to the after-the-fact, fourth declaration from Mr. Gadea-Guidacelli, claiming in conclusory fashion that Defendants will incur the costs he identifies if required to cease operations on the site.[2] *See White Cap, L.P. v. Heyden Enterprises, LLC*, No. 23-cv-14248, 2024 WL 3738925, at *8 (S.D. Fla. July 19, 2024) (discounting declarations containing hearsay and speculation when those declarants were not called "to the stand to testify or be subject to cross-examination"). In any event, these speculative comments do not outweigh Defendants' weak showing of likelihood of success on the merits or the ongoing harms Plaintiffs documented during the Preliminary Injunction Hearing. *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1007–08 (9th Cir. 2020) (denying motion to stay injunction pending appeal based on the "government's declarations contain[ing] only

---

[2] Moreover, the declaration fails to include any off-sets Defendants will realize by ceasing operations at this unique site.

estimates, assumptions, and projections," and given that "the government's asserted harm is largely self-inflicted").[3]

Finally, Defendants rehash the same general arguments about the importance of immigration enforcement they presented during the Preliminary Injunction Hearing. As Defendants provide no new evidence or argument about the particular dangerousness of the detainee population at the TNT site or the need for a detention facility in this particular location, the Court will not repeat the shortcomings of Defendants' claims here. *See* (DE 131 at 76–77). But the Court notes that evidence that the detainee population was dwindling at the site even before the preliminary injunction was entered and that ICE now has need for only 72-hour holds are signs that Defendants' immigration enforcement goals will not be thwarted by a pause in operations at the TNT site.

---

[3] Had Defendants requested a modification of the proposed injunction, such as a requirement to turn off, rather than remove the lighting, the Court would have seriously entertained this option to minimize the costs of complying with the injunction.

IV. **CONCLUSION**

For the reasons set forth above, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Guthrie's Expedited Motion to Stay Preliminary Injunction Pending Appeal (DE 137) is **DENIED**.

2. Federal Defendants' Expedited Motion to Stay Preliminary Injunction Pending Interlocutory Appeal (DE 138) is **DENIED**.

3. Plaintiffs' Motion to Strike Late-Filed Declarations (DE 141) is **DENIED**.

**DONE AND ORDERED** in Chambers in Miami, Florida, on this 27th day of August, 2025.

_____
KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE