**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**No. 25-cv-22896-JEM**

FRIENDS OF THE EVERGLADES, INC., *et al*.

Plaintiffs,

and

MICCOSUKEE TRIBE OF INDIANS OF FLORIDA

Plaintiff-Intervenor,

v.

MARKWAYNE MULLIN, *et al.*,

Defendants.

---

**FEDERAL DEFENDANTS' MOTION TO DISMISS**

**EXHIBIT LIST**

1 January 20, 2026 Detention Support Grant Program document

2 September 30, 2025 initial award and administrative obligation

3 September 30, 2025 Record of Environmental Consideration

4 March 5, 2026 Record of Environmental Consideration

5 March 4, 2026 FEMA "no effect" letter to FWS

6 March 6, 2026 FWS letter concurring in FEMA's "no effect" determination

7 March 12, 2026 FEMA award letter

8. May 15, 2026 Hernandez Email

# TABLE OF CONTENTS


INTRODUCTION ........ 1

LEGAL FRAMEWORK ........ 1

BACKGROUND ........ 3

STANDARD OF REVIEW ........ 4

ARGUMENT ........ 5

I. Plaintiffs (and Plaintiff-Intervenor) fail to demonstrate standing. ........ 5

A. Plaintiffs have not alleged an injury-in-fact. ........ 6

B. Plaintiffs cannot establish causation. ........ 6

C. Plaintiffs cannot establish redressability. ........ 7

II. Plaintiffs' (and Plaintiff-Intervenor's) claims are moot following closure of the Facility. ........ 7

III. The Court should dismiss Plaintiffs' claims against non-final agency actions. ........ 10

A. 287(g) Agreements and construction of the Facilities do not constitute final agency action. ........ 12

B. Plaintiffs' Count VI ESA Claims do not challenge final agency actions. ........ 12

IV. The Court should dismiss Plaintiffs' Count I NEPA claims. ........ 13

V. The Court should dismiss Plaintiffs' Count II APA claims alleging violations of the National Park Service Organic Act. ........ 14

VI. Plaintiffs fail to state a claim as to their Count V ESA claims against FEMA. ........ 15

VII. Plaintiff-Intervenor's Count III NHPA claim should be dismissed. ........ 16

VIII. The Court should dismiss this action because venue is improper. ........ 16

A. The Southern District of Florida is an improper venue for this case. ........ 17

1. Venue is improper under Section 1391(b)(1). ........ 18

2. Venue is improper under Section 1391(b)(2). ........ 18

3. Venue is improper under Section 1391(b)(3). ............................... 19

4. Venue is improper under Section 1391(e)(1) ............................... 19

CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Najjar v. Ashcroft*,
273 F.3d 1330 (11th Cir. 2001) .......... 8

*Allen v. Wright*,
468 U.S. 737 (1984) .......... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .......... 4

*Bennett v. Spear,*
520 U.S. 154 (1997) .......... 12, 15

*Brahim v. Holder*,
No. 13-23275-CIV-COHN, 2014 WL 2918598 (S.D. Fla. June 26, 2014) .......... 18

*Brooks v. Ga. State Bd. of Elections*,
59 F.3d 1114 (11th Cir. 1995) .......... 8

*Canal A Media Holding, LLC v. U.S. Citizenship and Immigr. Servs.*,
964 F.3d 1250 (11th Cir. 2020) .......... 11

*Christopher v. Harbury*,
536 U.S. 403 (2002) .......... 4

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992) .......... 8

*Cottman Transmission Sys., Inc. v. Martino,*
36 F.3d 291 (3d Cir. 1994) .......... 17

*Ctr. For Biological Diversity v. Marina Point Dev.*,
566 F.3d 794 (9th Cir. 2009) .......... 10

*Ctr. for Biological Diversity v. U.S. Dep't of the Interior,*
837 F. Supp. 3d 1080 (N.D. Cal. 2026) .......... 7

*Day v. Taylor*,
400 F.3d 1272 (11th Cir. 2005) .......... 4, 14

*Def. of Freedom Inst. for Pol'y Stud., Inc. v. U.S. Dep't of Educ.*,
No. 6:23-CV-1515-PGB-EJK, 2024 WL 1174620 (M.D. Fla. Mar. 19, 2024) .......... 5

*Eyster as Tr. of James H. Garrett GST Exempt Tr. v. Fed. Highway Admin.,* Case,
No. 5:20-cv-00172-LCB, 2023 WL 11987098 (N.D. Ala. July 21, 2023) .......... 9

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*,
62 F. Supp. 3d 1 (D.D.C. 2014) .......... 9

*Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.*,
225 F.3d 1208 (11th Cir. 2000) .......... 7, 8

*Fla. Audubon Soc'y v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996) .......... 6

*Florida Key Deer v. Paulison,*
522 F.3d 1133 (11th Cir. 2008) .......... 7

*Florida Wildlife Federation v. Goldschmidt*,
611 F.2d 547 (5th Cir. 1980) .......... 9

*Friends of the Everglades, Inc. v. Sec'y of the U.S. Dep't of Homeland Sec.*,
796 F. Supp. 3d 1234 (S.D. Fla. 2025) .......... 17, 19, 20

*Friends of the Everglades, Inc. v. Sec'y of U.S. Dep't of Homeland Sec.,*
No. 25-12873, 2025 WL 2598567 n.7 (11th Cir. Sept. 4, 2025).......... 15

*Friends of the Everglades, Inc. v. Sec'y of United States Dep't of Homeland Sec.*,
174 F.4th 822 (11th Cir. 2026) .......... 10, 11, 12, 13, 14, 17, 19

*Gagliardi v. TJCV Land Tr.*,
889 F.3d 728 (11th Cir. 2018) .......... 9

*Golden v. Zwickler*,
394 U.S. 103 (1969).......... 8

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*,
484 U.S. 49 (1987).......... 10

*HCR et al. v. Mullin*,
2026 WL 2357889 (M.D. Fla. Aug. 14, 2026).......... 8

*Hill v. White*,
321 F.3d 1334 (11th Cir. 2003) .......... 4

*Kennedy v. Floridian Hotel, Inc.*,
998 F.3d 1221 (11th Cir. 2021) .......... 4

*LabMD, Inc. v. FTC*,
776 F.3d 1275 (11th Cir. 2015) .......... 11

*Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*,
148 F.3d 1231 (11th Cir. 1998) .......... 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).......... 4, 5, 6, 7

*Marbled Murrelet v. Babbitt*,
111 F.3d 1447 (9th Cir. 1997) .......... 13

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
312 U.S. 270 (1941) ........ 8

*Moden v. U.S. Fish and Wildlife Serv.*,
281 F. Supp. 2d 1193 (D. Or. 2003) ........ 15

*Nat'l Env't Found. v. ABC Rail Corp*,
926 F.2d 1096 (11th Cir. 1991) ........ 15

*Nat'l Parks Conservation Ass'n v. U.S. Army Corps of Eng'rs*,
574 F. Supp. 2d 1314 (S.D. Fla. 2008) ........ 8, 10

*Nat'l Parks Conservation Assoc. v. Semonite*,
311 F. Supp. 3d 350 (D.D.C. 2018) ........ 14

*Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*,
45 F.4th 291 (D.C. Cir. 2022) ........ 2

*Region 8 Forest Serv. Timber Purchasers Council v. Alcock*,
993 F.2d 800 (11th Cir. 1993) ........ 7

*Rogers v. Civ. Air Patrol*,
129 F. Supp. 2d 1334 (M.D. Ala. 2001) ........ 18, 19

*S. Utah Wilderness All. v. Smith,*
110 F.3d 724 (10th Cir. 1997) ........ 9

*Sarmiento Lopez v. CMI Leisure Mgmt., Inc.*,
565 F. Supp. 3d 1271 (S.D. Fla. 2021) ........ 5

*Save the Bay, Inc. v. U.S. Army*,
639 F.2d 1100 (5th Cir. 1981) ........ 8, 9

*Save the Wekiva River and Headwaters, Inc. v. U.S. Army Corps of Eng'rs*,
Case No. 6:17-cv-1902-Orl-DCI, 2017 WL 10086128 (M.D. Fla. Dec. 29, 2017) ........ 10

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 168 (2025) ........ 2

*Sierra Club v. Martin*,
110 F.3d 1551 (11th Cir. 1997) ........ 14, 15

*Sierra Club v. Morton*,
405 U.S. 727 (1972) ........ 6

*Sierra Forest Legacy v. U.S. Forest Serv.*,
598 F. Supp. 2d 1058 (N.D. Cal. 2009) ........ 13

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976) ........ 5

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
301 F. Supp. 3d 50 (D.D.C. 2018) ........ 9, 10

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
205 F. Supp. 3d 4 (D.D.C. 2016) ........ 16

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ........ 4

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........ 6

*Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*,
143 F.3d 515 (9th Cir. 1998) ........ 15

*Trujillo v. Garland*,
No. 22-CV-23980-SCOLA/GOODMAN, 2023 WL 2374445 (S.D. Fla. Mar. 6, 2023) ........ 18

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
578 U.S. 590 (2016) ........ 11

*W. Watershed Project v. Burgum*,
No. 1:18-cv-00187-REP, 2025 WL 3853055 (D. Idaho Dec. 29, 2025) ........ 18

*Weiss v. Sec'y of Dep't of Interior,*
459 Fed. Appx. 497 (6th Cir. 2012) ........ 9

*Woodham v. Fed. Transit Admin.,*
125 F. Supp. 2d 1106 (N.D. Ga. 2000) ........ 16

**Statutes**

16 U.S.C. § 1 ........ 1, 2

16 U.S.C. § 1536(a)(2) ........ 2

16 U.S.C. § 1540(g)(1)(A) ........ 15

16 U.S.C. § 1540(g)(2)(A)(i) ........ 2

28 U.S.C. § 1391(b)(1)-(3) ........ 17

28 U.S.C. §1391(b)(1) ........ 18, 19

28 U.S.C. §1391(b)(2) ........ 18

28 U.S.C. §1391(b)(3) ........ 19

28 U.S.C. §1391(e)(1) ........ 19

28 U.S.C. §1391(e)(1)(b) ........ 17

28 U.S.C. §1391(e)(1)(B) ........ 19

28 U.S.C. §1391(e)(1)(C) ........ 20

42 U.S.C. § 4332(10)(A) ........ 13

42 U.S.C. § 4332(b)(2) ........ 2

42 U.S.C. § 4332(C) .......... 2, 13
42 U.S.C. § 4336(10)(B)(i) .......... 13
42 U.S.C. § 4336(a)(1) .......... 13
42 U.S.C. § 4336(a)(2) .......... 2, 3
5 U.S.C. § 704 .......... 11
5 U.S.C. § 706(2)(A) .......... 10
54 U.S.C. § 100101(a) .......... 2, 14
54 U.S.C. § 306108 .......... 2
8 U.S.C. § 1252(a)(2)(B)(ii) .......... 12
8 U.S.C. § 1357(g) .......... 3
8 U.S.C. § 1357(g)(1) .......... 3
Pub. L. No. 119-4 .......... 3
U.S. Const. art. III .......... 8

**Rules**

Fed. R. Civ. P. 12(b)(3) .......... 5, 17
Fed. R. Civ. P. 12(b)(6) .......... 4

**Regulations**

36 C.F.R. § 800.3 .......... 16
36 C.F.R. § 800.3(a) .......... 16
50 C.F.R. § 402.02 .......... 7

**Other Authorities**

14D WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3815 (4th ed.) .......... 20

## INTRODUCTION

The original Complaints in this matter filed by Plaintiffs Friends of the Everglades and Center for Biological Diversity and Plaintiff-Intervenor Miccosukee Tribe of Indians sought to "halt the unlawful construction" of the detention center at the Dade-Collier Training and Transition Airport ("the Facility"). Dkt. No. 1 ¶ 1; Dkt. No. 84 ¶ 2a. After a successful appeal of the Court's grant of a preliminary injunction, the State of Florida closed the facility and removed the temporary structures that housed detainees and United States Immigration and Customs Enforcement ("ICE") has ceased detention operations. The Court should dismiss Plaintiffs' and Plaintiff-Intervenor's amended complaints, Dkt. Nos. 171 and 178, on several grounds.

All of Plaintiffs' claims against Federal Defendants in their Second Amended Complaint (*i.e.*, Counts I, II, V, and VI)—and all of Plaintiff-Intervenor's claims against Federal Defendants in their Amended Complaint (*i.e.* Counts I, II, and III) are subject to dismissal on jurisdictional and other grounds. The conduct at the heart of the original or amended Complaints has ceased. Because Plaintiffs and Plaintiff-Intervenor fail to allege that they are harmed by any ongoing Federal agency actions, their claims against Federal Defendants must be dismissed on standing or mootness grounds.

Plaintiffs and Plaintiff-Intervenor fail to state a claim as to their Administrative Procedure Act ("APA") and National Environmental Policy Act ("NEPA") claims (Count II), because they fail to challenge any "major federal action" pertaining to the Facility. Plaintiffs' Endangered Species Act ("ESA") citizen-suit claims against the Federal Emergency Management Agency ("FEMA") (Count V) must be dismissed due to Plaintiffs' failure to provide a notice of intent to sue corresponding to the claims asserted in their respective amended complaints. Plaintiff-Intervenor's National Historic Preservation Act ("NHPA"), National Park Service Organic Act, and APA claims are likewise subject to dismissal for failure to state a claim.

Finally, venue is improper. The Southern District of Florida is an improper venue for this suit. The temporary detention center at issue in this suit was in Ochopee Florida, which is in the Middle District of Florida, not the Southern District. Dkt. No. 50 at 3. Dismissal of both Amended Complaints is appropriate on these grounds.

## LEGAL FRAMEWORK

There are four environmental statutes underlying Plaintiffs' claims. The first is the National Park Service Organic Act of 1916 ("Organic Act"), 16 U.S.C. § 1. Congress established

the National Park Service ("NPS"):

> to promote and regulate the use of the Federal areas known as national parks, monuments, and reservations hereinafter specified . . . to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

*Id.* The Organic Act only binds the Secretary of the Interior. 54 U.S.C. § 100101(a) ("The Secretary, acting through the Director of the National Park Service, shall promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units[.]").

The second statute involved here, the ESA, provides that federal agencies must consult with the U.S. Fish and Wildlife Service ("FWS") and/or the National Marine Fisheries Service (collectively, the "Services") to ensure that any action they authorize, fund, or carry out "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary . . . to be critical[.]" 16 U.S.C. § 1536(a)(2). If a Federal agency determines that its action will have no effect on listed species or critical habitat, consultation with the Services is not required. ESA citizen suits may not be commenced "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation." *Id.* § 1540(g)(2)(A)(i).

The third statute, NEPA, is a "purely procedural statute" that seeks to "inform agency decisionmaking." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty*, 605 U.S. 168, 173 (2025). When an agency proposes a "major Federal action[ ] significantly affecting the quality of the human environment," 42 U.S.C. § 4332(C), NEPA requires preparation of an Environmental Impact Statement or Environmental Assessment depending on the nature of the proposed action. *Id.* § 4336(b)(2). Alternatively, an agency may comply with NEPA by applying a categorical exclusion. *Id.* § 4336(a)(2) for actions that categorically do not individually or cumulatively have a significant effect on the human environment. *See* https://www.dhs.gov/ocrso/eed/epb/nepa (last visited Oct. 1, 2026).

The fourth statute, the NHPA, does not impose substantive preservation requirements. It "requires an agency, 'prior to the issuance of any license, [to] take into account the effect of the undertaking on any historic property.'" *Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 45 F.4th 291, 296 (D.C. Cir. 2022) (quoting 54 U.S.C. § 306108).

## BACKGROUND

The State of Florida ("Florida") Division of Emergency Management constructed a temporary detention Facility for illegal aliens at a state-owned airfield. Florida used state funds to build the Facility. Declaration of Thomas P. Giles ("Giles Decl."), Dkt. No. 21-1 ¶ 5. The Facility opened on July 1, 2025, with the first group of detainees arriving two days later. State officials detained illegal aliens at the Facility under authority delegated pursuant to Section 287(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1357(g). *See* Giles Decl. ¶ 7; Declaration of Santiago Fuentes, Dkt. No. 117-1 ¶ 14. INA Section 287(g) authorizes the U.S. Department of Homeland Security ("DHS") to enter into agreements with state and local law enforcement agencies to delegate authority to carry out immigration functions under federal law. 8 U.S.C. § 1357(g)(1). Pursuant to the Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, FEMA may provide financial assistance to states with a condition requiring the recipient to carry out allowable activities pursuant to the recipient's Section 287(g) agreement through its Detention Support Grant Program ("DSGP"). *See* Detention Support Grant Program Guidance document Jan. 20, 2026. Ex. 1.

Florida sought federal grant money from FEMA through the DSGP to reimburse the state for a portion of the costs to house detainees. In response to Florida's request, FEMA made an initial, preliminary award and administrative obligation of $608,400,000.00 to Florida on September 30, 2025, with various amendments issued later. Ex. 2. That award was not specific to any facility. And no funds changed hands at that time because the award was subject to a funding hold requiring Florida to submit a revised budget and a detailed cost breakout. Ex. 3.

Florida subsequently submitted a request to FEMA for reimbursement from the previously obligated funds for non-construction costs associated with operating the Facility. FEMA's determinations pursuant to NEPA, NHPA, and the ESA regarding its decision to award funding to Florida were incorporated in its Record of Environmental Consideration ("REC") dated March 5, 2026. Ex. 4.[1] On March 12, 2026, FEMA notified Florida that the hold on

[1] With respect to NEPA, FEMA invoked categorical exclusions under 42 U.S.C. § 4336(a)(2). Ex. 4 at 2. The REC also incorporated FEMA's determination pursuant to the NHPA that the award is not the type of activity with potential to affect historic properties. *Id.* at 3. With respect to the ESA, FEMA determined that the proposed action would have "no effect" on ESA-listed species or critical habitats and requested FWS to concur in this "no effect" determination by letter dated March 4, 2026. Ex. 5. FEMA reasoned that there are no consequences to listed

disbursing the funds was lifted. Ex. 7.

After FEMA lifted the funding hold on March 12, 2026, Florida submitted a payment request demonstrating that they incurred allowable costs. FEMA made its final decision to approve Florida's first payment request (for $58,292,145.00) on May 15, 2026, after completing all environmental reviews determining the costs were allowable under the terms and conditions of the grant award. Ex. 8 (Hernandez email). The Facility is currently demobilized, and the Agencies have no plans to request mobilization of the site for detainment purposes presently or in the future. *See* fn. 6 *infra.*

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) may launch facial or factual attacks on subject matter jurisdiction. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021). A "factual attack," as here, challenges subject matter jurisdiction regardless of the pleadings, and the court may consider extrinsic evidence. *Id*. Where, as here, the defendant challenges subject matter jurisdiction, the burden of establishing jurisdiction falls squarely upon the plaintiff. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). If a court determines that it lacks subject matter jurisdiction, it must dismiss the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). The Court must accept the allegations of the Complaint as true and views the facts in the light most favorable to Plaintiff. *See, e.g., Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam).[2] "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

---

species or critical habitat that are caused by the proposed action, as the use of grant funds is limited to administrative expenses and procurement of services. *Id.* By letter dated March 6, 2026, FWS concurred with FEMA's "no effect" determination. Ex. 6.

[2] On a Rule 12(b)(6) motion to dismiss, the Court can consider documents incorporated by reference into the complaint, so long as the referenced documents are central to plaintiff's claims, and the authenticity of the documents is undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

A party may move to dismiss an action based on improper venue. Fed. R. Civ. P. 12(b)(3). "When a defendant moves to dismiss on grounds of improper venue, the plaintiff has the burden of demonstrating that venue in the forum is proper." *Def. of Freedom Inst. for Pol'y Stud., Inc. v. U.S. Dep't of Educ.*, No. 6:23-CV-1515-PGB-EJK, 2024 WL 1174620, at *3 (M.D. Fla. Mar. 19, 2024).[3]

## ARGUMENT

### I. Plaintiffs (and Plaintiff-Intervenor) fail to demonstrate standing.

Standing effectuates limitations imposed by the "case or controversy" requirement of Article III of the Constitution and prudential limits imposed by the judiciary. *See Allen v. Wright*, 468 U.S. 737, 750-51 (1984). The constitutional component of standing contains three elements. First, a plaintiff must have suffered an "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560-61. Second, there must be a causal connection between the injury and the conduct that is the focus of the complaint. *Id.* The injury must be fairly traceable to the challenged action, and not injury resulting from the independent action of some third party not before the court. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-41 (1976). Third, there must be a "substantial likelihood" that the injury would be redressed by a favorable decision. *Id.* at 38, 45.

Plaintiffs bear the burden of proof, and that burden is substantially more difficult to prove when, as in *Lujan* and here, the Plaintiffs are not the object of the challenged government action or inaction. 504 U.S. at 562. Plaintiffs have not met this burden for any of their claims because 1) Plaintiffs allege no cognizable injury; 2) the alleged injuries were not caused by the actions of the Federal Defendants; and 3) this suit will not redress any of the claimed injuries.

Plaintiffs' Second Amended and Supplemented Complaint alleges two possible grounds for standing.[4] First, Plaintiffs allege that their members "are being injured by Defendants' unlawful actions, which threaten the integrity of Big Cypress National Preserve's waters and pristine night skies, the wellbeing of the plants and wildlife living there, including endangered

---

[3] The court may "consider facts outside the complaint to determine whether venue is proper." *Sarmiento Lopez v. CMI Leisure Mgmt., Inc.*, 565 F. Supp. 3d 1271, 1275 (S.D. Fla. 2021). But when doing so, "the court may only examine documents that are: (1) referred to in the complaint; (2) central to the plaintiff's claim; and (3) of undisputed authenticity." *Id.*

[4] Plaintiff-Intervenor adopts these allegations by reference. *See* Dkt. No. 178 ¶ 5. The foregoing analysis applies equally to Plaintiff-Intervenor's Amended Complaint.

and threatened species, and thus the Plaintiffs' interests in them." Dkt. No. 171 ¶ 31. Second, Plaintiffs allege that they are being injured "by being deprived of critical information and a public process" under NEPA and the ESA, respectively. *Id.* Both grounds fail to establish standing for the claims asserted.

**A. <u>Plaintiffs have not alleged an injury-in-fact</u>.**

Plaintiffs here do not assert any direct or particularized injury in connection with the violations asserted in their Complaint. The "injury in fact" test for standing requires more than an injury to a cognizable interest; "a party seeking review must allege facts showing that he is himself adversely affected. . . ." *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). The alleged injury must be concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan,* 504 U.S. at 560-61; *Loggerhead Turtle v. Cnty. Council of Volusia Cnty., Fla.*, 148 F.3d 1231, 1247 (11th Cir. 1998).

Plaintiffs suggest that increased human activity and lighting at the Facility negatively affected ESA-listed species and injured Plaintiffs' ability to view the night skies. *See, e.g*, Dkt. No. 171 ¶¶ 31, 100, 186 & 188. However, Plaintiffs do not allege that such alleged adverse effects persist now that the Facility is shut down and detention operations are discontinued. Plaintiffs thus cannot establish that they suffer any "injury in fact" that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan* 504 U.S. at 560.

Plaintiffs also fail to establish the requisite injury in fact based on some alleged failure to follow the procedures of environmental statutes such as NEPA, the ESA, and the NHPA. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation-a procedural right *in vacuo*- is insufficient to create Article III standing."). Thus, the mere violation of a procedural requirement does not permit any and all persons to sue to enforce the requirement. *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996). "[T]he Court has never freed a plaintiff alleging a procedural violation from showing a causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest." *Id.* Here, there is no ongoing or imminent threat of present or future harm to Plaintiffs' asserted environmental interests following the closure of the Facility. And Plaintiffs cannot credibly assert that further environmental reviews will protect such interests.

**B. <u>Plaintiffs cannot establish causation</u>.**

Even if Plaintiffs could credibly allege that their members are currently injured even after the Facility has been closed, Plaintiffs do not allege that their injuries are caused by any alleged actions or inactions of any of the Federal Defendants.[5] At no time have any of the Federal Defendants exercised control over the Facility, which Florida has now relinquished to Miami-Dade County. The County is solely responsible for the future disposition of the site.

### C. **Plaintiffs cannot establish redressability.**

Plaintiffs cannot establish that the relief requested—ordering the Federal Defendants to undertake further environmental reviews pursuant to NEPA, the ESA, and the NHPA—will redress their alleged injuries where the federal government is no longer present. There must be a "substantial likelihood that [Plaintiffs'] injury will be redressed by the relief [sought]." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 808 (11th Cir. 1993) (internal quotation marks omitted). Here, there is no likelihood that Plaintiffs' alleged injuries will be redressed by further environmental reviews because the subject Facility is closed and operations have ceased. Any further review will have no impact on the Facility or property.

## II. **Plaintiffs' (and Plaintiff-Intervenor's) claims are moot following closure of the Facility.**

The Facility's closure months ago renders Plaintiffs' claims moot. Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Lujan*, 504 U.S. at 559; *Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d

[5] To the extent *Florida Key Deer v. Paulison,* 522 F.3d 1133, 1143-44 (11th Cir. 2008) previously concluded that FEMA's administration of a program was a relevant "cause" of development in the Florida Keys that affected ESA-listed species, that decision is no longer applicable, because FWS subsequently modified its regulatory definition of "effect of the action." *See* 50 C.F.R. § 402.02 ("A consequence is caused by the proposed action if it would not occur but for the proposed action and it is reasonably certain to occur."). As discussed in FEMA's March 4, 2026, letter to FWS, Federal Defendants' actions in relation to the Facility are "purely administrative" and based on FWS's regulatory definition, have no effect on environmental resources of concern such as ESA-listed species or designated critical habitat. Ex. 5 at 2. A federal district court recently vacated some provisions of the FWS's ESA Section 7 regulations, including the "reasonably certain to occur" standard in the regulatory definition of "effects of the action" at 50 C.F.R. § 402.02. *See Ctr. for Biological Diversity v. U.S. Dep't of the Interior,* 837 F. Supp. 3d 1080, 1102 (N.D. Cal. 2026). But the Court reinstated the regulations in effect before revisions were made in a 2019 rulemaking. Those regulations also included the "reasonably certain to occur" standard as part of the definition of "indirect effects." *See* 50 C.F.R. § 402.02 (2018) ("Indirect effects are those that are caused by the proposed action and are later in time, but still are reasonably certain to occur.").

1208, 1216 (11th Cir. 2000). This limit requires a substantial controversy between parties having adverse legal interests of sufficient immediacy to warrant the issuance of relief. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (*quoting Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Without a case or controversy, a federal court lacks jurisdiction to grant effective relief and must dismiss the action. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (per curiam).

A moot case—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"—means that there is no live controversy under Article III of the U.S. Constitution. *Fla. Ass'n of Rehab. Facilities*, 225 F.3d at 1216-17 (citation omitted). Federal courts lack jurisdiction to "give opinions upon moot questions." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (citation omitted). A live "case or controversy" must be present at the time the case is filed and, when a case was filed, a live "case or controversy" must remain at the time of judgment. *Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1119 (11th Cir. 1995). Here, Plaintiffs' claims are moot because the conduct at the heart of Plaintiffs' original or amended complaints—the construction and operation of the Facility—has ceased. On June 25, 2026, Governor DeSantis announced that the Alligator Alcatraz immigration detention center had ended operations, noting that "[d]etainees who are still awaiting deportation have been transferred to other federal facilities, and demobilization efforts are underway."[6]

"Eleventh Circuit precedent establishes that injunctive relief claims in environmental cases are moot when the project at issue is completed." *Nat'l Parks Conservation Ass'n v. U.S. Army Corps of Eng'rs*, 574 F. Supp. 2d 1314, 1322 (S.D. Fla. 2008) (*citing Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1103 (5th Cir. 1981) (per curiam)). In *Save the Bay, Inc.*, the Court held that plaintiffs' claims for declaratory and injunctive relief based on alleged violations of

[6] *See* Governor DeSantis Highlights the Success of Alligator Alcatraz and Florida's Continued Efforts in Combatting Illegal Immigration (June 25, 2026), *available at* https://www.flgov.com/eog/news/press/2026/governor-ron-desantis-highlights-success-alligator-alcatraz-and-floridas-continued (last visited Oct. 1, 2026); *see also* https://www.fox13news.com/news/florida-alligator-alcatraz-close-deport-migrants-desantis (last visited Oct. 1, 2026). In *HCR et al. v. Mullin*, Case No. 2:25-cv-00747-SPC-DNF, a *habeas* case, Florida filed declarations including photographs documenting that all facilities have been dismantled and removed from the site. *See* Case No. 2:25-cv-00747-SPC-DNF, Dkt. No. 286. On August 14, 2026, Judge Chappell issued a memorandum opinion dismissing that case as moot. 2:25-cv-00747-SPC-DNF, 2026 WL 2357889 (M.D. Fla. Aug. 14, 2026).

NEPA were moot because construction of a railroad was completed and the railroad had been in continuous operation. 639 F.2d at 1103. Similarly, in *Florida Wildlife Federation v. Goldschmidt*, 611 F.2d 547, 549 (5th Cir. 1980) (per curiam), the court held that plaintiffs' claims for declaratory, mandamus, and injunctive relief against the U.S. Department of Transportation based on alleged NEPA violations were moot. Here, as in *Save the Bay* and *Goldschmidt,* the challenged construction and operation of the Facility that Plaintiffs seek to enjoin has concluded. Under the circumstances, the Court "can not undo what has already been done." *Id.* The conclusion of construction and operation—and closure of the Facility—also moots any remaining APA-based NEPA, NHPA, ESA, and Organic Act claims for declaratory relief. *See Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 735 (11th Cir. 2018) ("An otherwise nonjusticiable case cannot be resurrected simply by seeking declaratory relief.").[7]

FEMA has already completed a REC incorporating categorical exclusions in fulfillment of any NEPA obligations for FEMA's action. That same document concluded that the "administrative nature" of the activities were "[n]ot [the] type of activity with potential to affect historic properties." Ex. 4 at 3. FEMA has also already sought and concluded ESA consultation with FWS, which concurred in FEMA's determination that [FEMA's grant funding for the temporary shelter of detainees] would have "no effect" on ESA-listed species or designated critical habitat. *E.g., S. Utah Wilderness All. v. Smith,* 110 F.3d 724, 728 (10th Cir. 1997) (agencies had already concluded consultation and ESA claims were moot because "[t]here is no point in ordering an action that has already taken place").[8] Here, the Facility is demobilized.

---

[7] *See also Weiss v. Sec'y of Dep't of Interior,* 459 Fed. Appx. 497, 500–501 (6th Cir. 2012) (NEPA and NHPA claims are moot because construction that was the subject of federal approval and funding had been completed); *Eyster as Tr. of James H. Garrett GST Exempt Tr. v. Fed. Highway Admin.,* Case No. 5:20-cv-00172-LCB, 2023 WL 11987098, *10 (N.D. Ala. July 21, 2023) (Plaintiffs' request for declaratory relief was also mooted by the Project's completion).

[8] The Tribe's NHPA claim is moot for an additional reason: consultation now, after all construction and demobilization is complete would not be "meaningful." As with NEPA, there is a "long line of cases in the courts of appeal holding environmental challenges to completed construction projects to be moot." *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 62 F. Supp. 3d 1, 5 (D.D.C. 2014). Because the NHPA seeks to identify sites that could be at risk from construction activities, once the construction is complete, there is no further risk of injury. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 301 F. Supp. 3d 50, 62 (D.D.C. 2018) ("The alleged 'injuries' arising from Defendants' NHPA violations are tethered to the timeline of [the Dakota Access Pipeline's] construction and operation; in other words, tribal consultation and the granting of relevant federal permissions are actions that take place prior to the execution

Even assuming the construction, operation, and maintenance of the Facility was a Federal undertaking, those activities are now complete such that "consultation would no longer be 'meaningful.'" *Standing Rock Sioux Tribe*, 301 F.Supp.3d at 63 (quotations omitted).

The Tribe attempts to bypass this deficiency by alleging that there remains an undertaking based on demobilizing the Facility and Federal Defendants' alleged intent to reopen the Facility. Demobilizing the Facility is complete and Plaintiffs' allegations that the Agencies intend to reopen the Facility are unfounded. Plaintiffs suggest that further site remediation may be warranted because there are remnants of asphalt, dirt, or rebar material. Dkt. No. 171 at ¶ 113. Such allegations do not save Plaintiffs' Complaint from mootness, as they do not specifically request such actions in their Prayer for Relief, *id.* at 70, which seeks to "[e]njoin any construction, conversion, demobilization, and any other environmentally harmful activity on or use of the [Facility][.]" And "hypothetical relief the plaintiffs did not actually request in their complaint cannot overcome the mootness arguments presented here." *Save the Wekiva River and Headwaters, Inc. v. U.S. Army Corps of Eng'rs*, Case No. 6:17-cv-1902-Orl-DCI, 2017 WL 10086128, *5 (M.D. Fla. Dec. 29, 2017). Even if Plaintiffs' complaints specifically requested site remediation that relief is not available under the APA, which provides that a court shall "set aside" — not correct —agency action that it finds to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).[9]

## III. <u>The Court should dismiss Plaintiffs' claims against non-final agency actions</u>.

Plaintiffs' amended complaints once again attempt to "assemble a constellation of agency choices and transform them into final agency action." *Friends of the Everglades, Inc. v. Sec'y of United States Dep't of Homeland Sec.*, 174 F.4th 822, 831 (11th Cir. 2026). Plaintiffs challenge

---

of a given project."). "Now that construction . . . has occurred, . . . such consultation would no longer be 'meaningful.'" *Id.* at 63.

[9] The ESA does not provide an avenue for Plaintiffs' requested injunctive relief, either, because Plaintiffs fail to demonstrate any ESA violation (much less an ongoing violation) by FEMA. "The ESA allows a citizen suit for the purpose of obtaining injunctive relief only.... Of course, that is forward looking." *Ctr. For Biological Diversity v. Marina Point Dev.*, 566 F.3d 794, 804 (9th Cir. 2009). Although Federal Defendants do not concede that any ESA violations occurred, any such violations—whether substantive or procedural—are "wholly past" now that the Facility is closed. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 57 (1987) (Similar citizen suit provision in Clean Water Act does not confer jurisdiction over claims alleging "wholly past violations."); *Nat'l Parks Conservation Ass'n*, 574 F. Supp. 2d at 1323-24 (same).

agreements, plans, and decisions related to the Facility under the APA. But "the [APA] allows plaintiffs to challenge only agency actions, not decisions." *Id.*

To bring suit under the APA, plaintiffs must demonstrate the challenged agency decision is a "final agency action." 5 U.S.C. § 704; *Canal A Media Holding, LLC v. U.S. Citizenship and Immigr. Servs.*, 964 F.3d 1250, 1255 (11th Cir. 2020). Courts apply a two-prong test to determine whether an agency action is final under the APA:

> First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016). "[T]he Administrative Procedure Act allows plaintiffs to challenge only agency actions, not decisions. For a decision to amount to an agency action, it must be instantiated in an agency statement . . . designed to implement that decision . . . Without that agency statement, a decision—no matter how firm—is not final agency action." *Friends of the Everglades,* 174 F.4th at 831. (citation modified).

In the Eleventh Circuit, the court lacks subject matter jurisdiction to adjudicate APA claims challenging a non-final agency action, and dismissal is required. *LabMD, Inc. v. FTC*, 776 F.3d 1275, 1278 (11th Cir. 2015); *see Friends of the Everglades*, 174 F.4th at 831 ("Our precedents treat this issue as 'jurisdictional'") (citation omitted).

Plaintiffs allege that several agency actions violate the APA: (1) "DHS' decision to enter into, and entrance into, an agreement with the Division to construct a mass immigration detention center at the [training and transition airport ("TNT")] site"; (2) "DHS and/or ICE's authorization of the Division's operation of a federal immigration detention center"; (3) "DHS' and FEMA's commitment to fund the facility prior to its construction"; (4) "DHS' and FEMA's approval of funding requests"; (5) "DHS' and FEMA's disbursement of federal funds related to the facility"; (6) "DHS' and ICE's decision to detain people at the TNT site."; and (7) FWS's concurrence letters were final agency actions subject to APA challenge by way of the ESA. Dkt. No. 171 ¶¶ 139, 141, 143-145, 147; 247-54.

The Eleventh Circuit has already disposed of theories (1), (2), and (6) above. *Friends of the Everglades*, 174 F.4th at 830-32. The only relevant development since the time of that decision is the Agencies disbursing funding to Florida. *See* Ex. 8. And though Plaintiffs did not allege any ESA claims at the time this case was in front of the Eleventh Circuit, Plaintiffs' ESA

claim (7) challenging FWS's concurrence letter fails because the concurrence letter is not a final agency action. Funding is therefore the only possible final agency action for this Court to review, and all other theories must be dismissed because there is no applicable waiver of sovereign immunity.

**A. 287(g) Agreements and construction of the Facilities do not constitute final agency action.**

Plaintiffs attempt to identify federal agreements, the Facility's construction, and authorizations to use the Facility for federal immigration detention purposes as final agency actions. Dkt. No. 171 ¶¶ 139, 141. The Eleventh Circuit has already ruled that DHS's decision to enter into a 287(g) agreement with Florida is not a final agency action. *Friends of the Everglades,* 174 F.4th at831 ("Nor do federal detention criteria and the decision to enter into section 287(g) agreements constitute final agency action"). Likewise, the court ruled that construction activities at the Facility are not final agency action. *Id.* at 830 ("Florida, not federal, officials constructed the facility. They control the land and entirely built the facility at state expense.") (citation modified).

Even if the Agencies' decision to authorize the Division's operation of the Facility is a final agency action, the Eleventh Circuit has already ruled that decision is not judicially reviewable because it is committed to agency discretion by law and because it falls under the jurisdictional bar at 8 U.S.C. § 1252(a)(2)(B)(ii). *Id.*

**B. Plaintiffs' Count VI ESA Claims do not challenge final agency actions.**

Plaintiffs Count VI ESA-related claims against FWS are reviewed (if at all) under the APA. *Bennett v. Spear,* 520 U.S. 154, 175 (1997). A final agency action must "mark[] the 'consummation' of the agency's decisionmaking process" and "be one by which 'rights or obligations have been determined,' or 'from which legal consequences will flow'" *Id.* at 177-78 (citations omitted). Plaintiffs' ESA claims against FWS do not challenge a biological opinion or any other final agency action regarding the Facility. Instead, Plaintiffs challenge an unspecified "mix of arbitrary decision making" (Dkt. No. 171 ¶ 254) that falls short of agency action subject to APA review, much less an action that would necessitate ESA consultation, as discussed *infra*.

Assuming Plaintiffs sought to challenge the FWS letter concurring in FEMA's "no effect" determination regarding ESA-listed species, that letter is not a reviewable agency action based on the reasoning in *Bennett,* 520 U.S. at 178. FWS's concurrence letter does not mark the consummation of an agency decision making process and has no legal consequence; thus, the

cited correspondence does not constitute final agency action.[10] Because Plaintiffs fail to challenge any reviewable, final agency action, there is no waiver of sovereign immunity for Plaintiffs' Count Six claim against FWS.

**IV. <u>The Court should dismiss Plaintiffs' Count I NEPA claims.</u>**

Plaintiffs' (and Plaintiff-Intervenor's) Count I NEPA claims must be dismissed because NEPA does not require an agency to analyze the effects of non-final agency actions. 42 U.S.C. § 4336(a)(1). The construction, operation, and programmatic decisions related to the Facility are not final agency actions and therefore are not subject to NEPA. *See supra* section III.

The Agencies' remaining involvement in the Facility – its funding – is not a major federal action under NEPA. NEPA applies only to "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). A "major federal action" is "an action that the agency carrying out such action determines is subject to substantial Federal control and responsibility." *Id.* § 4336e(10)(A). In 2023, Congress excluded from "major Federal action" a non-federal action "(I) with no or minimal Federal funding; or (II) with no or minimal Federal involvement where a Federal agency cannot control the outcome of the project." *Id.* § 4336e(10)(B)(i) ; *Friends of the Everglades,* 174 F.4th T 832 ("To qualify as a major federal action, it must receive more than minimal federal funding *and* be subject to more than minimal federal control.").

Here, the Facility is demobilized and no longer used for detainment purposes, and is no longer controlled by Florida, the entity that received Federal disbursements. Therefore the Agencies do not "control" the Facility. *See* fn. 6 *supra.* Plaintiffs may argue that disbursements between the Agencies and Florida constitute a major federal action. But this theory fails for two reasons. First, the funding was a reimbursement for costs incurred by Florida. *See* Ex. 4.[11] The

---

[10] *Marbled Murrelet v. Babbitt*, 111 F.3d 1447, 1449-50 (9th Cir. 1997) (concurrence letter indicating the Service's opinion that proposed timber harvest plans would avoid taking of protected species was not "agency action" triggering requirements of ESA, absent any evidence of federal discretionary involvement or control over timber harvest plans, which instead had to be approved by the state); *Sierra Forest Legacy v. U.S. Forest Serv.*, 598 F. Supp. 2d 1058, 1069 (N.D. Cal. 2009) (the Services "concurrences in the Forest Service's 'no effect' determination were not final agency actions and are therefore not subject to judicial review under the APA.").

[11] The Court can consider Exhibit 4, which is the agency's REC, because this document applied a categorical exclusion, and Plaintiffs reference application of a categorical exclusion in their Amended Complaint. Dkt. No. 171 ¶ 108 ("On information and belief, no categorical exclusion from NEPA has been invoked by the Defendants, nor does any apply."); Ex. 4 at 2 (applying two

Agencies possessed no control over its use because the costs Florida incurred operating the Facility were wholly in the past. Second, the only activity with even the potential to cause environmental impacts – the construction, operation, and maintenance of the Facility – was outside of the Agencies' control. *Friends of the Everglades,* 174 F.4th at 832 ("The environmentalists and Tribe must prove both that the facility was federally funded and that it was subject to federal control. But they failed to do so because the facility is not federally controlled.").

**V. <u>The Court should dismiss Plaintiffs' Count II APA claims alleging violations of the National Park Service Organic Act.</u>**

Plaintiffs' APA claims alleging violation of the Organic Act must be dismissed because the Organic Act imposes no duties on the Agencies.[12] The Organic Act imposes obligations related to the management of the National Park System solely on the Secretary of the Interior and the NPS. 54 U.S.C. § 100101(a) ("The Secretary, acting through the Director of the NPS, shall promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units[.]"); *Id.* § 100102(3) ("The term 'Secretary' means the Secretary of the Interior."). The Organic Act does not impose obligations on federal agencies writ large. *Nat'l Parks Conservation Assoc. v. Semonite*, 311 F. Supp. 3d 350, 370 (D.D.C. 2018) *rev'd on other grounds*, 916 F.3d 1075 (D.C. Cir. 2019) ("But [the Organic Act] does not bind the Corps, only the Secretary of the Interior.").

Plaintiffs allege the Agencies' failure to consider the Facility's proximity to Big Cypress National Preserve in violation of the Organic Act was arbitrary and capricious under the APA. *See* Dkt. No. 171 ¶ 208. But "the APA does not expand the substantive duties of a federal agency, [it] merely provides the framework for judicial review of agency action." *Sierra Club v. Martin*, 110 F.3d 1551, 1555 (11th Cir. 1997). Accordingly, "there is no right to sue for a violation of the

---

categorical exclusions to the reimbursement); *Day*, 400 F.3d at 1276 (reiterating the holding that on a Rule 12(b)(6) motion to dismiss, courts can consider a document attached to, or incorporated by reference in, a complaint "without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."

[12] To the extent Plaintiff-Intervenor asserts slightly different claims concerning Federal Defendants' alleged failure to provide the Tribe and the public with an opportunity for notice and comment pursuant to the Organic Act and various environmental statutes, *see* Dkt. No. 178 ¶ 54, Plaintiff-Intervenor fails to state a claim because neither the APA, the Organic Act, nor any of the other referenced statutes required Federal Defendants to provide an opportunity for notice and comment regarding Defendants' actions.

APA in the absence of a relevant statute whose violation forms the legal basis for [the] complaint." *Id.* (citation modified). An agency's actions could only fail to be "in accordance with law when that agency's actions are *subject to that law.*" *Id.* (citation modified) (emphasis in original). Here, the Agencies are not subject to the Organic Act and Plaintiff has failed to plausibly allege an APA violation on its basis.

## VI. Plaintiffs fail to state a claim as to their Count V ESA claims against FEMA.

Plaintiffs allege that FEMA unlawfully failed to consult with FWS under ESA Section 7. Dkt. No. 171 ¶¶ 231-246. In *Bennett*, 520 U.S. at 173, the Supreme Court recognized that such claims are subject to the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(1)(A). Citizen suits under Section 1540(g)(1)(A) may not be commenced "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation." *Id.* § 1540(g)(2)(A)(I). Plaintiffs' ESA citizen-suit claims against FEMA must be dismissed due to Plaintiffs' failure to provide the requisite notice of intent to sue.

Plaintiffs sent a notice letter to Federal and State agencies and officials, including the Department Homeland Security, FEMA, and ICE, on July 16, 2025. Dkt. No. 38-1. At that time, none of the Federal Defendants had provided funding for the Facility or taken any reviewable agency action regarding the Facility. *Friends of the Everglades, Inc. v. Sec'y of U.S. Dep't of Homeland Sec.,* No. 25-12873, 2025 WL 2598567, *9 n.7 (11th Cir. Sept. 4, 2025) ("[T]he absence of federal funding addressed by our analysis above disposes of this case in accordance with clear congressional command."). To the extent Plaintiffs now seek to challenge some specific funding decision by FEMA, *see, e.g.,* Dkt. No. 171 ¶ 85 ("On March 12, 2026, FEMA notified the Division that the award was 'executed as a Grant' and a hold on disbursing the funds lifted."), their existing letter does not allege such violations. Plaintiffs' year-old notice is equivalent to a "pre-violation" notice letter that is insufficient to afford the Federal Defendants the opportunity to rectify subsequent alleged violations.[13] *E.g., Moden v. U.S. Fish and Wildlife*

[13] The notice provisions of the ESA and other environmental statutes serve a two-fold purpose of giving the alleged violator an opportunity to remedy the alleged violations and giving the federal agencies with statutory enforcement powers an opportunity to commence their own enforcement action. *Nat'l Env't Found. v. ABC Rail Corp*, 926 F.2d 1096, 1099 (11th Cir. 1991). Accordingly, a notice letter under the ESA must alert the recipients to the actual violation alleged in a subsequently filed complaint, and insufficiency of such notice is an absolute bar to jurisdiction. *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520-22 (9th Cir. 1998).

*Serv.*, 281 F. Supp. 2d 1193, 1206 (D. Or. 2003). Because Plaintiffs have not satisfied the mandatory notice prerequisite, the Court should dismiss Plaintiffs' Count Five claims alleging ESA violations against FEMA.

## VII. Plaintiff-Intervenor's Count III NHPA claim should be dismissed.

The Tribe alleges that Federal Defendants violated the NHPA by failing to consult on the potential effects to historic properties from providing reimbursements for the Facility. Even if Federal Defendants' funding decision is deemed to be an undertaking subject to the NHPA,[14] the Tribe fails to state a claim because FEMA's determined that the action is not the type of activity with potential to affect historic properties. Ex. 4 at 3.[15]

FEMA's determination is consistent with the NHPA. Under Section 106 regulations, "[t]he agency official shall determine whether the proposed Federal action is an undertaking . . . and, if so, whether it is a type of activity that has the potential to cause effects on historic properties." 36 C.F.R. § 800.3(a). "If the undertaking is a type of activity that does not have the potential to cause effects on historic properties . . . *the agency official has no further obligations under section 106 or this part*." *Id.* § 800.3(a)(1) (emphasis added); *see also Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 8 (D.D.C. 2016) (interpreting § 800.3).

That is exactly what FEMA did here. FEMA reasonably concluded that "[d]ue to the administrative nature of activities included in the per diem rate reimbursement, it has been determined this reimbursement is not the type of activity with the potential to affect historic properties." Ex. 4 at 3. FEMA further reasoned that the approved per diem rate does not cover construction, installation, modification, or maintenance of structures, or installation or maintenance of related infrastructure. *Id*. at 3-4.

## VIII. The Court should dismiss this action because venue is improper.

The Southern District of Florida is an improper venue for this suit. Plaintiffs' claims, at their core, allege that Federal Defendants "commandeered" the Facility without conducting required consultation and analyses under NEPA, the ESA, and the NHPA. Dkt. No. 171, at ¶ 3.

[14] *But see Woodham v. Fed. Transit Admin.,* 125 F. Supp. 2d 1106, 1110 (N.D. Ga. 2000) ("[F]ederal financial assistance alone is insufficient to trigger the requirements of the NHPA. Instead, there must, in addition, be some form of federal approval, supervision, control, or at least a certain level of consultation over the spending of the federal funds.")

[15] The Court can consider Exhibit 4. *See supra* note 8.

But the temporary detention center was in Ochopee,[16] which is in the Middle District of Florida, not the Southern District. Dkt. No. 50 at 3. All the activities that Plaintiffs allege harm their interests—construction, paving, detention, demobilization—occurred in the Middle District, not in the Southern District. And all the relevant decision-making occurred in either Washington, D.C., the Middle District or the Northern District; not the Southern District of Florida.

This Court previously ruled on this issue, finding that venue was proper in the Southern District and that Federal Defendants had waived any venue challenge, and declining to transfer venue to the Middle District on a discretionary basis. *Friends of the Everglades, Inc. v. Sec'y of the U.S. Dep't of Homeland Sec.*, 796 F. Supp. 3d 1234, 1256-67 (S.D. Fla. 2025). In vacating this Court's decision on venue and on Plaintiffs' Motion for Preliminary Injunction, the Eleventh Circuit remanded the venue issue to this Court while holding that "[t]he district court erroneously concluded that the officials had waived their venue objection by conduct." *See Friends of the Everglades,* 174 F.4th at 834. The Court then advised that Defendant Kevin Guthrie ("FDEM") and Federal Defendants were permitted to object to venue on remand, which Federal Defendants do here. *Id*.

The Court should dismiss this case for improper venue. *See* Fed. R. Civ. P. 12(b)(3). As FDEM's Supplemental Response demonstrated, Count IV (against Miami-Dade County) does not make venue proper in this District. *See* Dkt. No. 50 at 3 n.2. But even if this Court disagrees and finds that Count IV makes venue proper, it should at a minimum sever Counts I-III and V-VI—for which venue in this District is clearly improper—and dismiss those claims. *See Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 296 (3d Cir. 1994).

### A. The Southern District of Florida is an improper venue for this case.

There are four possible statutory bases for venue in this case. *See* 28 U.S.C. §§ 1391(b)(1)-(3), 1391(e)(1)(b). Dkt. No. 171 ¶ 22. But all four fail to properly locate venue in the Southern District of Florida. Therefore, the case must be dismissed. Alternatively, the Court should grant Federal Defendants' concurrently filed Motion to Transfer Venue.[17]

---

[16] *See* Dade-Collier Training and Transition Airport, https://www.miami-airport.com/dade_collier.asp (last visited Oct. 1, 2026).

[17] Federal Defendants have not waived their objection to venue in this District and make it now, at the first opportunity following remand to this Court. *See Friends of the Everglades,* 174 F.4th at 834 ("The district court erroneously concluded that the officials had waived their venue objection by conduct . . . . The circumstances here—where Florida and the Secretary were faced

1. *Venue is improper under Section 1391(b)(1).*

Section 1391(b)(1) states that venue is proper in "[a] judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." This provision does not apply to this case because Federal Defendants Markwayne Mullin and Todd Lyons are not residents of Florida.[18]

2. *Venue is improper under Section 1391(b)(2).*

Section 1391(b)(2) states that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). A substantial part of the property at issue—the Facility—is *not* located in the Southern District. Dkt. No. 50 at 3 (all buildings and pavement at the temporary detention center are in Collier County, which is in the Middle District); Dkt. No. 50-1 ¶¶ 2-5 (declaring the same). A substantial part of the events or omissions giving rise to Plaintiffs' claims *did not* occur in the Southern District. Plaintiffs cannot escape the substantiality component of section 1391(b)(2) by claiming that the temporary center will have environmental impacts in this District because "the dispute at the heart of this case" is whether the proper procedure was followed regarding the construction and operation of the temporary detention center. *See Rogers*, 129 F. Supp. 2d at 1339.

Plaintiffs contend that the supervising ICE field office is in the district as is the FWS Ecological Services office. Dkt. No. 171 ¶ 22. But no final agency action occurred at either of these locations. *See supra* Sec. III. And "the mere fact that an agency maintains a regional office in another judicial district does not render it a resident of that district for venue purposes." *Brahim v. Holder*, No. 13-23275-CIV-COHN, 2014 WL 2918598, at *2 (S.D. Fla. June 26, 2014). The Eleventh Circuit in its review of this case supports Federal Defendants' view that venue in the Southern District of Florida is improper. In denying Federal Defendants' and

---

with significant and time-sensitive matters immediately once litigation commenced—do not support waiver."). Plaintiffs have been on notice that Federal Defendants dispute venue for over a year, Dkt. No. 60 (supplemental response regarding venue), and venue is not waived where "[p]laintiffs [were] on notice that venue was disputed." *W. Watershed Project v. Burgum*, No. 1:18-cv-00187-REP, 2025 WL 3853055, at *7 (D. Idaho Dec. 29, 2025).

[18] *See, e.g.*, *Trujillo v. Garland*, No. 22-CV-23980-SCOLA/GOODMAN, 2023 WL 2374445, at *6 (S.D. Fla. Mar. 6, 2023) (collecting cases); *Rogers v. Civ. Air Patrol*, 129 F. Supp. 2d 1334, 1338 (M.D. Ala. 2001) ("[T]he official residence of the Secretary is either in the District of Columbia or the Eastern District of Virginia.").

FDEM's venue challenge in 2025, this Court found that a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida, *Friends of the Everglades,* 796 F. Supp. 3d at 1259-66, but the Eleventh Circuit's remand Order and the body of NEPA cases on this issue indicate otherwise. *See Friends of the Everglades,* 174 F.4th at 834.

The Court highlights that Federal officials made decisions about the temporary detention Facility at the ICE Miami field office and that this office is located in the Southern District. *Friends of the Everglades,* 796 F. Supp. 3d at 1263. But such a focus on the location of Federal Defendants' alleged "supervision" of the Facility runs counter to the Eleventh Circuit's ruling. The Eleventh Circuit found that "[t]he federal supervision of . . . immigration enforcement at the facility is not the subject of the claim under the Environmental Policy Act; the construction of the facility is. Ongoing control of operations . . . is irrelevant to whether the construction of the facility required an environmental review." *Friends of the Everglades,* 174 F.4th at 833. Further, "[b]ecause Florida retain[ed its] state law authority to make the decisions concerning the project, the facility was not subject to federal control and its construction did not trigger [NEPA]." *Id*. at 834 (citation omitted). The Eleventh Circuit has thus found the minimal federal supervision of the Facility irrelevant to Plaintiffs' claims. Instead, as explained above, the Eleventh Circuit focused on State decision making and authority, since the Facility was built and is run by the State. As FDEM has attested, State decisionmaking occurred in Tallahassee, Florida, or onsite at the Facility, neither of which is located in the Southern District. *See* Dkt. No. 50 at 3-4.

*3. Venue is improper under Section 1391(b)(3).*

Section 1391(b)(3) only confers venue in a district "[i]f there is no district in which an action may otherwise be brought as provided in this section." As this Court has already affirmed, this case could be brought in the Middle District, so § 1391(b)(3) does not apply. *See Friends of the Everglades,* 796 F. Supp. 3d at 1266 (finding that venue is appropriate in the Middle District under § 1391(e)(1)).

*4. Venue is improper under Section 1391(e)(1)*

Section 1391(e)(1)(A) states that venue is proper in a judicial district where "a defendant in the action resides." "[T]he term 'a defendant' in section 1391(e)(1) refers only to a federal officer or agency defendant in the case, and not to 'any' defendant, including a non-federal one." *Rogers*, 129 F. Supp. 2d at 1338. Federal Defendants do not reside in this judicial district. The same goes for § 1391(e)(1)(B) because, as explained above, "a substantial part of the events or

omissions giving rise to the claim" *did not* occur in the Southern District, and the Southern District *does not* contain "a substantial part of property that is the subject of the action." *Friends of the Everglades,* 796 F. Supp. 3d at 1259. Lastly, section 1391(e)(1)(C) does not confer venue. Plaintiffs' suit centers on the Facility, which is a collection of buildings and pavement on real property. Dkt. No. 50-1 ¶¶ 2-3 (declaring the same). Thus, real property is a central component of this action, so it is irrelevant under section 1391(e)(1)(C) whether any Plaintiff resides in the Southern District. 14D WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3815 (4th ed.).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' and Plaintiff-Intervenor's claims against the Federal Defendants in their entirety.

Respectfully submitted on October 2, 2026.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

*s/ Hayley A. Carpenter*
HAYLEY A. CARPENTER
Trial Attorney
CA Bar No. 312611
JORDAN COHEN
Trial Attorney
CO Bar No. 55298
Natural Resources Section
Energy & Natural Resources Division
United States Department of Justice
Ben Franklin Station
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0242
hayley.carpenter@usdoj.gov

*s/ Mark Arthur Brown*
MARK ARTHUR BROWN
Sr. Trial Attorney
Florida Bar No. 0999504
U.S. Department of Justice
Energy & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 532-3103
Email: mark.brown@usdoj.gov

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

CARLOS RAURELL
Assistant U.S. Attorney
Florida Bar No. 529893
United States Attorney's Office
Southern District of Florida
99 NE 4th Street, Florida 33132
Telephone: (305) 961-9243
E-mail: carlos.raurell@usdoj.gov

*Counsel for Markwayne Mullin, in his official capacity as Director of Homeland Security;*

*and Todd Lyons, in his official capacity as*
*Acting Director of the United States*
*Immigration and Customs Enforcement*