**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**No. 25-cv-22896-KMW**

FRIENDS OF THE EVERGLADES, INC., et al.,

Plaintiffs,

v.

MARKWAYNE MULLIN, et al.,

Defendants.

**FDEM'S MOTION TO DISMISS**

"Ensuring that our courts are used only for the express purpose created by the Constitution is the obligation of every judge and an obligation that this Court must discharge in light of the matter before it." *Trump v. Internal Revenue Serv.*, 836 F. Supp. 3d 1225, 1262 (S.D. Fla. 2026). That unwavering obligation—to hear only live cases properly before the Court—requires dismissal here. Plaintiffs[1] sued to stop construction and operation of a temporary immigration detention facility (the Facility) that Florida commissioned to relieve the critical shortage of bed space caused by the federal government's unlawful opening of the southern border from 2021 to early 2025. As the Eleventh Circuit twice confirmed in staying and then overturning the preliminary injunction, this lawsuit was on life support from the start. But it is surely dead now. The Facility completed its mission and has been deconstructed. And the land on which it sat, in Collier County, has been returned to the fee-simple owner, Miami-Dade County (Miami-Dade). In short, there is nothing left to enjoin and no live claims to adjudicate. The case should be dismissed for this and four additional reasons.

*First*, this suit is moot. Plaintiffs request an injunction barring construction, operation, or deconstruction of a detention facility. That relief is no longer possible: the Facility no longer exists, and FDEM has returned the land to Miami-Dade. There is nothing to enjoin.

*Second*, sovereign immunity bars Plaintiffs' claims. Normally, state officials are immune from official-capacity suits like this one. *Ex parte Young* provides a limited exception to that rule: Plaintiffs may sue state officials seeking injunctive relief to remedy *ongoing* violations of federal law. But here, there is no ongoing activity that can be alleged to violate federal law. To the extent there was ever a violation—and the Eleventh Circuit has twice explained there was not—it cannot plausibly be alleged to be ongoing. The Facility is gone, and the land has been returned to the fee simple owner. There is no forward-looking relief possible. And if Plaintiffs' complaint can be read to seek retrospective relief, it is barred by immunity.

*Third*, Plaintiffs fail to allege standing. The irreducible constitutional minimum of standing requires a plaintiff to allege an injury in fact. In an environmental case, like this one, that requires (at least) that one of Plaintiffs' members allege that he would personally experience some environmental harm. Yet Plaintiffs do not clear that hurdle. They allege generally that their

[1] "Plaintiffs" refers to all Plaintiffs. As needed, Friends of the Everglades and the Center for Biological Diversity are referred to as the "Organizational Plaintiffs" and the Miccosukee Tribe is referred to as the "Tribe."

members enjoy Big Cypress National Preserve and Everglades National Park. But visiting those vast areas says nothing about whether Plaintiffs would experience any environmental harm from Florida's geographically and time-limited former project. Plus, now that FDEM's work is complete, Plaintiffs cannot allege a certainly impending future injury.

*Fourth*, this Court lacks venue.[2] As to FDEM, venue is proper where a substantial part of the events or omissions giving rise to the claim occurred. But none of those alleged events or omissions occurred in the Southern District. FDEM is based in Tallahassee in the Northern District. And the Facility was located in the Middle District. Plaintiffs plead nothing to the contrary. Instead, they base their venue theory on alleged far-flung effects of FDEM's action. The Eleventh Circuit has rejected that approach: what matters is the defendant's acts or omissions. And here, the relevant acts and omissions occurred outside the Southern District.

*Fifth*, even if this Court had jurisdiction and venue (it does not), Plaintiffs' claims would fail on the merits. Their freestanding NEPA claim fails because NEPA provides no cause of action. Their APA claim fares no better: it was thoroughly debunked by two separate Eleventh Circuit panels, so there is nothing left to do but dismiss. And Plaintiffs' ultra vires claims are barred by decades of Supreme Court precedent. Federal ultra vires claims are available only when a statute specifically prohibits the defendant's conduct. Plaintiffs allege nothing of the sort. And the state-law ultra vires claims fare even worse. Federal courts have no authority to adjudicate state-law claims against state officials.

Finally, the sheer whiplash from Plaintiffs' latest iteration of the Complaint must be noted. A year ago, Plaintiffs celebrated an injunction that *required* the decommissioning of the Facility. *See* Doc. 131 at 81. Now that FDEM has done so, Plaintiffs apparently believe the very relief they previously sought as vindicating federal law now violates federal law. Plaintiffs seemingly want this Court to order the Defendants to *rebuild* the Facility so that they can then conduct a NEPA

---

[2] This Court can address jurisdictional issues in any order, *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), and thus by raising threshold jurisdictional issues FDEM does not concede venue or waive its objection to venue. If the Court proceeds beyond ruling it has no jurisdiction to proceed, then the case must be dismissed or transferred for lack of venue.

study before again deconstructing it. This lawsuit, meritless from the get-go, has become a farce. The Court should dismiss.[3]

## BACKGROUND

In 2021, the federal government stopped enforcing immigration law at the southern border. As has now been broadly recognized, by 2023, that fateful decision caused illegal immigration to spiral into an unprecedented national crisis, including in Florida. *See Friends of the Everglades, Inc. v. Noem (FOE I)*, 2025 WL 2598567, at *1 (11th Cir. Sep. 4, 2025); Christopher Flavelle, *How Biden Ignored Warnings and Lost Americans' Faith in Immigration*, N.Y. Times (Dec. 7, 2025). Because the crisis imposed "an unmanageable strain on local resources," Governor DeSantis declared a state of emergency and authorized the Florida Division of Emergency Management (FDEM) to coordinate the State's response. *Friends of the Everglades, Inc. v. Noem (FOE II)*, 174 F.4th 822, 827-28 (11th Cir. 2026).

One of the central challenges in combatting the illegal-immigration crisis was inadequate detention capacity. *FOE I*, 2025 WL 2598567, at *12. To help address that problem, Florida constructed a temporary detention facility at the Dade-Collier Training and Transition Airport (TNT) in Collier County. *FOE II*, 174 F.4th at 828. Before that temporary conversion, the TNT airport was a bustling and noisy aviation training facility hosting hundreds of flights per month by aircraft of all sizes. *FOE I*, 2025 WL 2598567, at *1.

The Facility materially expanded detention capacity at a time when federal facilities could not accommodate all individuals apprehended in Florida. *See* Doc. 116-2 at 5-6. The Facility thus helped keep an "already stressed and overcrowded system" from reaching "a breaking point." *FOE I*, 2025 WL 2598567, at *12.

Before the Facility began operations, Plaintiffs filed this action alleging violations of the National Environmental Policy Act (NEPA) and seeking to enjoin FDEM from "further pre-construction activities, construction, conversion, or use" of the Facility for "immigration detention." Doc. 1, Prayer for Relief ¶¶ B, D. Plaintiffs moved for a temporary restraining order and preliminary injunction. Doc. 5. Over Defendants' objections on venue and the merits, this

[3] FDEM files this motion separately, as has been the parties' practice throughout this litigation and as the scheduling proposals contemplate. *See, e.g.*, Doc. 179 at 3 (contemplating that Defendants would file separate "motions to dismiss"); Doc. 181 at 2 (same). Separate filings are appropriate because FDEM, the federal defendants, and Miami-Dade County each represent different constituent groups, face different legal claims, and have different litigation interests.

Court entered a preliminary injunction, barring Defendants from additional detention or construction at the Facility and requiring its closure within sixty days. Doc. 131 at 80-81.

FDEM appealed. Doc. 132. The Eleventh Circuit stayed both the injunction and the underlying proceedings, holding that Defendants were "substantially likely to succeed on the merits" because Plaintiffs had not identified a reviewable final agency action or shown the federal control necessary to trigger NEPA. *FOE I*, 2025 WL 2598567, at *5-9, *13. The Eleventh Circuit added that it was "skeptical" of this Court's "cursory analysis of the merits of the venue issue" because "the location of the Site itself" is not "somehow peripheral to the events giving rise to the claim." *Id.* at *10 & n.9. After briefing and argument, the Eleventh Circuit vacated the preliminary injunction on the same grounds. *FOE II*, 174 F.4th at 829-35 (Plaintiffs "must prove both that the facility was federally funded and that it was subject to federal control. But they failed to do so because the facility is not federally controlled."). The Eleventh Circuit also held that this Court had erred when it concluded that FDEM had waived its "venue objection." *Id.* at 834. It held that venue could be raised on remand. *Id.*

Since then, the Facility was closed and removed because, as Governor DeSantis explained on June 25, 2026, it had "fulfilled" its "mission" and "served its purpose." Reardon Decl. ¶ 6 (Oct. 2, 2026) (attached as **Exhibit A**). The Facility "increased … much-needed detention capacity, instantly relieving pressure on the federal government, which directly allowed for more boots on the ground for immigration enforcement."[4] Still, the Facility was "always meant to be temporary until more detention centers could be located." Reardon Decl. ¶ 6. The Facility has thus been "deconstructed" and its operations "fully demobilized." *Id.* ¶ 7. The Collier County land on which the Facility sat was returned to the fee-simple owner, Miami-Dade. *Id.* ¶ 8.

Plaintiffs have recognized that the Facility no longer exists. Friends of the Everglades has confirmed the Facility "no longer hous[es] detainees"[5] and was "dismantled."[6] The Center for Biological Diversity dismissed its own lawsuit challenging the Facility based on "[s]atellite and

---

[4] Press Release, Fla. Exec. Off. of the Governor, *Governor Ron DeSantis Highlights the Success of Alligator Alcatraz and Florida's Continued Efforts in Combatting Illegal Immigration* (June 25, 2026), https://perma.cc/HG7R-7D9W.

[5] Friends of the Everglades, *Our Pressure Worked—But Our Work Is Not Done at "Alligator Alcatraz"* (June 26, 2026), http://perma.cc/5HWU-TC3E.

[6] Friends of the Everglades, *A 5-point Plan for Remediation, Restoration, and Protection of the Everglades After "Alligator Alcatraz"* (July 2, 2026), https://perma.cc/PX4C-YV2L.

aerial imagery" that "show[ed] that Florida has largely dismantled and removed the detention center's air-polluting equipment."[7] And the Tribe recognized that the Facility was "clos[ed]," but called for an end to *all* immigration enforcement nationwide.[8]

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *id.*, and courts do not accept as true "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts," *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

That same standard applies to a facial challenge to Article III jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The defendant may also raise a factual challenge to the existence of Article III jurisdiction, where the court "may consider extrinsic evidence." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). The court is then "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 925. Under either challenge, the plaintiff bears the burden of demonstrating jurisdiction. *See Alliant Tax Credit Fund XVI, Ltd. v. Thomasville Cmty. Hous., LLC*, 713 F. App'x 821, 824 (11th Cir. 2017).

The plaintiff also bears the burden of establishing that venue is proper. *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). "[T]he court may examine facts outside of the complaint to determine whether venue is proper." *Id.*

## ARGUMENT

### I. THIS CASE IS MOOT

A claim becomes moot when it "no longer presents a live controversy with respect to which the court can give meaningful relief." *Graham v. Att'y Gen.*, 110 F.4th 1239, 1244 (11th Cir. 2024). Unlike standing, mootness "look[s] at the events at the present time, not at the time the complaint was filed." *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001). Thus, post-filing events that "deprive the court of the ability to afford the plaintiff … meaningful relief" moot the

[7] Center for Biological Diversity, *Clean Air Act Lawsuit Concluded After Air Pollution Sources Removed From 'Alligator Alcatraz'* (July 13, 2026), https://perma.cc/M8XF-YGTG.

[8] *Native Organization Responds to Alligator Alcatraz Closure*, Native News Online (June 26, 2026), https://perma.cc/J42X-VL66.

claim and require dismissal. *Graham*, 110 F.4th at 1244. Because mootness is jurisdictional, the Court may consider evidence outside the pleadings. *See Morrison*, 323 F.3d at 924 n.5.

**A.** Plaintiffs allege that FDEM is unlawfully constructing, operating, and decommissioning a "detention and deportation center" at the TNT Site without completing a NEPA review or possessing authority under Florida law. Doc. 171 ¶¶ 3-4. Since this action was filed, however, the challenged conduct has ceased: FDEM has deconstructed the Facility, fully demobilized its operations, and returned control of the land to the fee-simple owner. Reardon Decl. ¶¶ 5-9.

Those developments moot Plaintiffs' claims for injunctive relief. Now that the Facility has been closed and dismantled, there is nothing to enjoin. *See Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020) (claim moot when there was "nothing to enjoin"); *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1103 (5th Cir. 1981) (request to enjoin construction under NEPA moot because construction was complete); *Fla. Wildlife Fed'n v. Goldschmidt*, 611 F.2d 547, 548 (5th Cir. 1980) (same where construction was substantially complete);[9] *Springer v. U.S. Marshal*, 137 F. App'x 657, 658 (5th Cir. 2005) (same even when federal funding was still flowing to a detention facility); *see also Ctr. for a Sustainable Coast v. U.S. Army Corps of Engineers*, 100 F.4th 1349, 1358 (11th Cir. 2024) (completed construction generally moots a NEPA challenge); *Town of Portsmouth v. Lewis*, 813 F.3d 54, 58-59 (1st Cir. 2016) (NEPA claim moot when there was "no ongoing conduct to enjoin").

It does not matter that Plaintiffs may wish that FDEM had deconstructed the site differently: say by removing additional dirt or filling fence posts. Doc. 171 ¶ 113. In a challenge to construction (or deconstruction) of a project, once the activity is complete, the environmental challenge is moot. *E.g.*, *Nat'l Parks Conservation Ass'n, Inc. v. U.S. Army Corps of Engineers*, 574 F. Supp. 2d 1314, 1322 (S.D. Fla. 2008) ("Eleventh Circuit precedent establishes that injunctive relief claims in environmental cases are moot when the project at issue is completed."); *Donovan v. Vance*, 70 F.4th 1167, 1171 (9th Cir. 2023) (similar for ultra vires claim). There is no ongoing activity left to enjoin.

Nor does it matter that FDEM has agreed to consider reimbursing Miami-Dade for some remediation that Miami-Dade may, in its discretion, perform. Smith Decl. ¶¶ 8-9 (Oct. 2, 2026) (attached as **Exhibit B**). Mootness turns on the cessation of allegedly wrongful activity. *See, e.g.*,

---

[9] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207, 1209 (11th Cir. 1981) (adopting as binding precedent all decisions of the former Fifth Circuit before September 30, 1981).

*Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1190 (11th Cir. 2011) (tax dispute moot when claimant received a refund, even though claimant could still be subject to negative tax treatment in the future); *Martinez v. Wilson*, 32 F.3d 1415, 1420 (9th Cir. 1994) (challenge to funding formula moot when State revised funding conditions, even though State still engaged in funding). And here, the allegedly wrongful acts turn on federal immigration enforcement: Plaintiffs say that FDEM needed to conduct a NEPA analysis and comply with the APA because of the "federal" character of its immigration actions, and they add that FDEM lacks state-law authority to conduct immigration detention operations. All of that conduct is over. FDEM's potential after-the-fact reimbursement to Miami-Dade cannot change that fact.

Plaintiffs' claims for declaratory relief are also moot. A declaratory judgment requires a controversy "of sufficient immediacy and reality." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Ath. Ass'n*, 115 F.4th 1266, 1283 (11th Cir. 2024). When intervening events eliminate the challenged conduct, claims for declaratory relief are usually moot, too. *See, e.g.*, *id.* at 1283-86 (declaratory and injunctive claims moot where plaintiff was no longer subject to the challenged policy); *Warren v. DeSantis*, 125 F.4th 1361, 1364-65 (11th Cir. 2025) (similar where plaintiff sought reinstatement to elected office but his term expired); *Nat'l Parks Conservation Ass'n, Inc.*, 574 F. Supp. 2d at 1321 (similar where challenged permit expired); *Miccosukee Tribe of Indians of Fla. v. United States*, 259 F. Supp. 2d 1237, 1244-45 (S.D. Fla. 2003) (similar where challenged water-management plans were superseded). Here, Plaintiffs seek declarations that FDEM violated NEPA and exceeded its "authority under state and federal law." Doc. 171, Prayer for Relief ¶ C. Because the Facility has been permanently closed and dismantled, those declarations would have no present legal effect on the parties and the claims are moot.[10]

**B.** Mootness is also apparent because FDEM has returned control of the site to Miami-Dade. Since it is Miami-Dade that now has responsibility for the site, any ruling on Plaintiffs' requested relief against FDEM would be "wholly academic." *See Montgomery Env't Coal. v. Costle*, 646 F.2d 568, 579-80 (D.C. Cir. 1981) (holding challenge moot after responsibility for the facility was transferred from the defendant agency to another governmental entity); *Lodestar Co. v. Cnty. of Mono*, 639 F. Supp. 1439, 1445 (E.D. Cal. 1986) (explaining that prospective relief "must of necessity apply" to successor governmental entity that presently holds "power … over

[10] Plaintiffs also request "such other relief as the Court deems just and proper." That catch-all cannot state an independent request for relief. *See Warren*, 125 F.4th at 1364 n.1.

the development of plaintiffs' property."). Quite simply, an order against FDEM would accomplish nothing: FDEM has deconstructed the Facility and returned control of the site to the fee simple owner.

* * * *

For these reasons, other courts have dismissed challenges to the Facility as moot. *See H.C.R. v. Mullin*, 2026 WL 2357889, at *2 (M.D. Fla. Aug. 14, 2026).[11] As Judge Chappell explained, there is "no reasonable basis to believe the challenged conduct will recur" because the State has been clear that there is "no reason to believe that [the Facility] will reopen." *Id.*[12] Because FDEM "closed Alligator Alcatraz and removed all detainees from the facility," that rendered a challenge to the Facility moot. *Id.* at *4.

The same logic applies here: FDEM closed the Facility, took down all the structures, returned the land to Miami-Dade, and has no plans to bring it back. Reardon Decl. ¶¶ 5-12. This case is moot.

## II. SOVEREIGN IMMUNITY BARS SUIT AGAINST FDEM

The Eleventh Amendment bars citizens from suing the State in federal court. *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000). *Ex parte Young* provides a limited "exception to this rule for suits against state officers seeking prospective equitable relief to end continuing violations of federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (citing *Ex parte Young*, 209 U.S. 123 (1908)). But *Young* has important limits. It requires plaintiffs to sue an official with "some

[11] At least some of the Plaintiffs appear to recognize as much. When the facility closed, the Center for Biological Diversity dismissed its Clean Air Act claim against FDEM. *See Center for Biological Diversity v. Guthrie*, No. 26-cv-23710, Doc. 21 (July 13, 2026).

[12] To make the contrary argument, Plaintiffs cite a statement the Governor made in June and the emergency renewal in July. Doc. 171 ¶¶ 3, 15. But in context, the Governor said that the chance of reopening was "negligible" because the facility had already "served its purpose." *See* 6/25/26 Governor's Press Conference at 29:22-30:45, https://www.youtube.com/watch?v=Evtl-qWqLdg; *see also H.C.R.*, 2026 WL 2357889, at *2 ("A remote possibility that an event might recur is not enough to overcome mootness...."). Regardless, mootness looks at the facts that exist now, not months ago. And since then, FDEM took down the site, returned the land to Miami-Dade, and has twice represented that it has no plans to re-open the facility. Reardon Decl. ¶¶ 10-12; *see also H.C.R.*, 2026 WL 2357889, at *2. Given all that, there is no reasonable basis for a conclusion that the challenged conduct will recur. *See Troiano v. Supervisor of Elections in Palm Beach Cnty.*, 382 F.3d 1276, 1283 (11th Cir. 2004) ("when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur.").

connection" to the challenged act. *Id.* at 1341. And the official's alleged legal violation must remain "ongoing and continuous" throughout the lawsuit. *Id.* at 1337; *see Green v. Mansour*, 474 U.S. 64, 69-73 (1985) (Eleventh Amendment barred relief against state official where intervening statute eliminated the alleged violation mid-litigation, leaving no ongoing violation to enjoin). As a result, "a plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Summit*, 180 F.3d at 1337. Nor may a plaintiff seek to force state officials to remediate lingering "effects" of past legal violations. *Fla. Ass'n of Rehab. Facilities*, 225 F.3d at 1221; *see also Thomas v. Devries*, 834 F. Supp. 398, 401 (M.D. Ga. 1993) ("[T]he court is without jurisdiction to provide injunctive relief from harms associated with past constitutional violations."); *Davis v. Jackson*, 2010 WL 2836688, at *2-3 (M.D. Fla. 2010) (refusing to order state official to "restore" an environmental site because such relief is retrospective and barred by the Eleventh Amendment).

Those principles foreclose the claims against FDEM three times over.

**A.** First, FDEM's allegedly unlawful conduct is no longer ongoing. Plaintiffs contend that FDEM violated NEPA and the APA by "constructing an immigration detention center without assessing its environmental impact[.]" *FOE II*, 174 F.4th at 828. They add (paradoxically, given the original relief sought) that FDEM also needed NEPA review to deconstruct the Facility. And they allege that FDEM acted ultra vires by "construct[ing] and manag[ing] a correctional facility" at TNT. Doc. 171 ¶ 214.

None of those activities (construction, management, deconstruction of an immigration detention Facility) are currently occurring or are planned to occur.[13] As Plaintiffs concede, *see supra* nn. 4-8, FDEM has transferred all detainees to federal facilities and is no longer operating a detention facility at TNT, Reardon Decl. ¶¶ 5-9.[14] Nor is FDEM still constructing or

---

[13] Although Plaintiffs' claims should be dismissed under a conventional sovereign-immunity analysis, there is another reason to reject them. *Young* is hard to square with our Constitutional history and tradition. *E.g.*, Hon. Andrew S. Oldham et al., *The Ex Parte Young Cause of Action: A Riddle, Wrapped in a Mystery, Inside an Enigma*, 120 Nw. U.L. Rev. 1697, 1729 (2026). *Young*, of course, remains binding on this Court. But its dubious original origins are a reason not to extend it. *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 818 (5th Cir. 2021) (Ho, J., concurring). Defendants reserve the right to challenge *Young* in the appropriate court.

[14] Because sovereign immunity goes to this Court's subject-matter "jurisdiction," *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998), FDEM may "factual[ly] attack" the complaints' assertions with evidence, *Grappell v. Cardona*, 2024 WL 2273366, at *2 (S.D. Fla. May 20, 2024). In that event, "no presumptive truthfulness attaches," and this Court must "evaluat[e] for itself" whether a violation is ongoing. *Id.*

deconstructing the immigration-detention facility. Quite the opposite, FDEM has "returned control of TNT to Miami-Dade County." *Id.* ¶ 8. FDEM's challenged conduct has thus ceased, so *Ex parte Young* no longer permits suit. *See Green*, 474 U.S. at 69-73; *Watkins v. Blinzinger*, 789 F.2d 474, 484 (7th Cir. 1986) (sovereign immunity barred suit when state officials ceased allegedly unlawful conduct during litigation, even though the case was not formally moot); *Seagraves v. Wash. State Dep't of Child. Youth & Fams.*, 182 F.4th 1083, 1090 (9th Cir. 2026) (sovereign immunity barred employees' challenge to rescinded vaccine mandate).

**B.** Second, as discussed above, FDEM no longer controls the TNT site or any infrastructure that exists there. *Supra* Part I. It thus no longer has an ongoing "connection," *Summit*, 180 F.3d at 1341, to the alleged wrong of constructing, operating, or decommissioning the Facility; *cf. Idaho Bldg. & Const. Trades Council, AFL-CIO v. Wasden*, 32 F. Supp. 3d 1143, 1147-49 (D. Idaho 2014) (recognizing that an official may cease being a proper party under *Ex parte Young* if he no longer has authority to take a challenged act). That fact, too, precludes suit under *Young*. *See Summit*, 180 F.3d at 1341.

FDEM's decision to consider reimbursing Miami-Dade for minor repair work that Miami-Dade may choose to undertake at its discretion does not trigger the *Ex parte Young* exception. *Ex parte Young* requires an ongoing violation of federal law, not ongoing activity of any kind. *Summit*, 180 F.3d at 1337. The alleged federal violation here turned on federal immigration enforcement at the site. That is done. Plaintiffs make no claim that potential county-initiated repairs—even if paid for by the State from the State's own fisc, Smith Decl. ¶ 10—violate federal law.

**C.** Finally, *Young* does not apply here because any remedy at this point would implicate core sovereign interests. *Young* does not apply when a suit "implicates special sovereignty interests." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997) (plurality op.). Thus, even when a plaintiff nominally satisfies *Young* his suit can still be barred by sovereign immunity when it is the "functional equivalent of a quiet title action." *Id.* The State's special sovereign interest in its own land overcomes *Young*. *Id.* at 281-82.

This principle applies here. To obtain relief from FDEM at this stage, the Court would need to order FDEM to exercise land-acquisition authority and then exercise sovereign power over the land to take some (as yet unspecified) remedial action demanded by the Plaintiffs. That would be *Coeur d'Alene* in reverse. Where the claim in *Coeur d'Alene* would have required the State to cede sovereign authority when it wished to exercise it, the claim here would require the State to

exercise sovereign authority when it declines to do so. In short, this suit, in its most recent iteration, attacks "core issues of land, state regulatory authority, and sovereignty" and is thus barred by sovereign immunity. *W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 23 (2d Cir. 2004). Indeed, this suit adds a concern to *Coeur d'Alene*: beyond land, requiring FDEM to seize property would implicate how Florida chooses to organize its government between State and county authority. That, too, implicates special sovereign interests. *E.g.*, *Barton v. Summers*, 293 F.3d 944, 951 (6th Cir. 2002) (states have a special interest in "allocating state funds").

## III. Plaintiffs Fail to Allege Facts Sufficient to Demonstrate Standing

This case should be dismissed for still another reason: Plaintiffs fail to meet the "irreducible constitutional minimum of standing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must establish a concrete and particularized injury that is traceable to the defendant's conduct and likely to be redressed by the requested relief. *Id.* at 560-61. Here, Plaintiffs fail to plead a concrete and particularized injury traceable to the Defendants' conduct. Rather, Plaintiffs' standing theory rests on a geographic gap they never bridge. They allege that their members generally enjoy visiting the massive Everglades and Big Cypress National Preserve. Yet they do not plausibly allege any concrete member injury through use of the limited area allegedly affected by Defendants' conduct. Nor do they allege any risk of future injury.

### A. Plaintiffs lack standing to challenge funding

Plaintiffs appear to recognize that any funding at this stage would be a reimbursement for past work because construction and operations at the Facility have ceased. Doc. 171 ¶ 113. But reimbursement for past activity causes Plaintiffs no injury: with the project done, shifting money from the federal government to FDEM does not affect the environment. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007) (plurality op.). Enjoining detention funding after the fact would "avail the plaintiffs nothing." *Springer*, 137 F. App'x at 658.

For similar reasons, an injunction would not redress Plaintiffs' alleged injuries. Plaintiffs' alleged injuries trace to the facts on the ground: does construction harm the panther? Is the sky less bright than Plaintiffs might prefer? Enjoining after-the-fact funding would not redress those injuries: beefing up FEMA's bottom line does not help a single panther or light up the night sky. *E.g.*, *St. John's United Church of Christ v. F.A.A.*, 520 F.3d 460, 463 (D.C. Cir. 2008) (no standing to challenge FAA reimbursements because there was no evidence that preventing the reimbursements would change the facts on the ground). And that is especially true because

Plaintiffs bring procedural claims. With the project complete, there are no procedural steps left that could conceivably address Plaintiffs' alleged injuries: "belatedly placing the plaintiffs' views before [FEMA] will achieve no … noticeable benefit." *S.E. Lake View Neighbors v. Dep't of Hous. & Urb. Dev.*, 685 F.2d 1027, 1039 (7th Cir. 1982).

**B. Plaintiffs lack standing generally because they fail to allege an injury-in-fact**

**1**. Funding aside, the Organizational Plaintiffs lack standing for all relief sought because they allege only generalized use of the Preserve and Everglades, not a concrete injury to members who use the small, specific area allegedly affected by the Facility. *See* Doc. 171 ¶¶ 27, 29-30.

That is not enough. To have standing, a plaintiff must use the area affected by the challenged activity, not merely an area roughly in its vicinity. *See Miccosukee Tribe of Indians of Fla. v. United States*, 574 F. Supp. 2d 1360, 1365 (S.D. Fla. 2008). That is, standing requires "geographic proximity between the plaintiff's interests and the" defendant's conduct. *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 538 (5th Cir. 2019). Plaintiffs "cannot simply assert some interest somewhere within a large geographic area." *Id.* In *National Wildlife Federation*, for example, the Court held that a member's affidavit attesting to use of land "in the vicinity of … immense tract[s] of territory" was insufficient to show that Plaintiffs' interest was traceable to Defendants' conduct, because only "some portion[]" of that vast area was actually affected by the challenged government action. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886, 889 (1990).

So too here. The Everglades and the Preserve are vast ecosystems spanning more than two million acres. Plaintiffs, however, allege nothing more than a generalized desire to visit that vast expanse. They say, for example, that Tierra Curry "plans to visit Big Cypress National Preserve to hike, paddle, and observe wildlife." Doc. 171 ¶ 30. And they add that Amber Crooks "regularly visits Big Cypress National Preserve." Doc. 171 ¶ 30. But those generalized allegations that members use the Preserve do not establish a connection between any alleged injury and Defendants' conduct: the standing allegations fail because Plaintiffs do not allege that any member uses areas near Defendants' Facility, nor do they allege facts plausibly showing that the Facility's impacts extend to locations their members visit. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 495-96 (2009) (an intention to visit forests is inadequate to confer standing when the national forests occupied more than 190 million acres).

The lack of a baseline compounds that problem. As the Eleventh Circuit explained, "the Site was a working airport with close to 28,000 landings and takeoffs in the prior six months alone,

bright lights kept on '24/7,' and a lack of noise abatement requirements before the Site's conversion to a detention center." *FOE I*, 2025 WL 2598567, at *2 n.4. Those baseline conditions are "significant": in evaluating geographic proximity, it is implausible that a person who desires to "observe … wildlife" would choose to stand at the razor-wire fenceline of an active airport. *Id.* The failure to allege a baseline undercuts a claim to "geographic proximity."

But even if Plaintiffs alleged geographic proximity and a baseline, "a plaintiff's 'distress at or disagreement with' a defendant's actions" is insufficient to generate an injury in fact. *Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the U.S.*, 2026 WL 2564318, at *3 (U.S. Aug. 31, 2026). That too dooms this suit. Plaintiffs have made clear that this dispute is about their (strong) disagreement with Defendants' action—they say "'Alligator Alcatraz' will go down in history as an affront to humanity."[15] However passionately Plaintiffs believe that, their "disagreement with the activities of others is not a basis under Article III for a plaintiff to bring a federal lawsuit." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 390 n.3 (2024).

**2.** For its part, the Tribe does not make *any* specific allegations that, if true, would create standing. It simply adopts Plaintiffs' jurisdictional allegations. Doc. 178 ¶ 5. But the Tribe cannot create standing through *another* organization's members.

True, outside its jurisdictional allegations, the Tribe alleges that it "attaches historic, cultural and spiritual significance to the areas affected by the construction and operation of the TNT Site." Doc. 178 ¶ 66. But that only underscores that there is nothing left of this suit. Construction and operation are done, and they have been for months. If that is the source of the Tribe's injury, there is nothing left to redress.

**3.** Even if Plaintiffs had (at one time) pleaded standing, their current effort falls short. To seek prospective relief (which is all Plaintiffs can seek given FDEM's immunity), Plaintiffs must allege a future injury, not just past harm. *E.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). And that requires Plaintiffs to show future harm from FDEM, not some other Defendant, because "standing is not dispensed in gross." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiffs cannot make that showing: FDEM has deconstructed the Facility and returned the land to Miami-Dade. In short, because Plaintiffs can seek only prospective relief, they "essentially have to build [their] case from scratch, showing why [they] ha[ve] some newfound

[15] Friends of the Everglades, *Two Bombshells Just Dropped About "Alligator Alcatraz"* (Sept. 16, 2026), https://perma.cc/7XTU-Y743.

reason to fear that" FDEM will cause new harm. *Murthy v. Missouri*, 603 U.S. 43, 59 (2024). Plaintiffs cannot make that showing.

**4.** Plaintiffs also lack standing to challenge deconstruction. Plaintiffs filed their first supplemental complaint on August 12, 2026. Doc. 162. By that time, FDEM had completed its deconstruction activities; indeed, it returned the site to Miami-Dade on August 11, 2026. Reardon Decl. ¶ 8. Thus, on August 12, Plaintiffs could not have been suffering an impending future injury traceable to FDEM—FDEM's deconstruction was complete. *See Lyons*, 461 U.S. at 111. Nor can Plaintiffs relate their supplemental complaint back to their original filing: "allegations concerning events occurring subsequent to the filing of the original petition cannot possibly relate back to the earlier date of filing." *Abramson v. Boedeker*, 379 F.2d 741, 744 (5th Cir. 1967).

## IV. PLAINTIFFS AND THE TRIBE FAIL TO PLAUSIBLY ALLEGE VENUE

Plaintiffs and the Tribe "must plead sufficient facts … establish[ing] that venue is appropriate in this district." *ASI Diamonds, Inc. v. Schwardt*, 2019 WL 1960211, at *3 (S.D. Fla. Mar. 1, 2019). They fall short. They allege barely any facts regarding venue, let alone enough facts to plausibly allege that this District is a proper venue for claims against FDEM.[16]

Both Plaintiffs and the Tribe assert venue under 28 U.S.C. § 1391(b)(2). Venue lies under that provision only if "a substantial part of the events or omissions giving rise to the claim occurred" in this District, or "a substantial part of property that is the subject of the action is situated" here. 28 U.S.C. § 1391(b)(2). The "relevant … acts and omissions" are those with "a close nexus to the wrong" alleged. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003). Acts have a "close nexus" if they "directly give rise" to the alleged wrong. *Id.* at 1371. And of the places where the relevant events took place, "only those locations hosting a 'substantial part' of the events are to be considered." *Id.* at 1371. Applying those standards, Plaintiffs and the Tribe fail to allege facts showing that a substantial part of the events "directly giv[ing] rise" to their claims occurred in the Southern District. *FOE I*, 2025 WL 2598567, at *9-10 & n.9.

### A. NEPA and APA

**1.** Plaintiffs allege that FDEM violated NEPA and the APA by "constructing an immigration detention center without assessing its environmental impact[.]" *FOE II*, 174 F.4th at

[16] The Court previously held that FDEM waived its venue objection, but the Eleventh Circuit reversed that holding. *FOE II*, 174 F.4th at 834. The Court now must decide, based on the pleadings, whether Plaintiffs have properly alleged venue.

828. Yet they alleged no facts showing that a substantial part of the events "directly giv[ing] rise" to FDEM's construction occurred in the Southern District. *FOE I*, 2025 WL 2598567, at *10 n.9. Indeed, their complaints do not claim that FDEM constructed the Facility in this District. Nor is that surprising. As every other court to address this issue has held, the Facility was "located in Collier County, in the Middle District of Florida," not in the Southern District. *C.M. v. Noem*, 796 F. Supp. 3d 1198, 1208, 1225-32 (S.D. Fla. 2025); *Garcia v. Guthrie*, No. 25-cv-23136 (S.D. Fla. July 16, 2025).

**2.** Rather than focus on the "location" of the Facility's construction, the complaints instead discussed matters "peripheral to the events giving rise" to FDEM's construction effort. *FOE I*, 2025 WL 2598567, at *10 n.9. Those allegations do not support venue here.

**a.** For example, the complaints suggest that construction will "impact[]" the Everglades and local wildlife. *E.g.*, Doc. 171 ¶¶ 100-03. Of course, the complaints do not allege those impacts will even be felt in the Southern District. But regardless, venue "focus[es] on relevant activities of the defendant," *Jenkins Brick*, 321 F.3d at 1371-72, not on where others may "feel[] the effects of a defendant's conduct." *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000). After all, the "relevant" acts under the venue statute are those that "directly give rise" to the plaintiff's claim. *Jenkins Brick*, 321 F.3d at 1371. Yet harms flowing *from* a NEPA violation cannot "give rise" to that NEPA violation; they are the result of it.

*Jenkins Brick* held, in assessing venue, that "Congress … 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" 321 F.3d at 1371-72. *Jenkins Brick* also expressly "approve[d] of," *id.*, the Eighth Circuit's holding in *Woodke v. Dahm*, 70 F.3d 983 (8th Cir. 1995). There, the court rejected the notion that the owner of an infringed trademark could establish venue "in the district of his residency because that [wa]s" where he would feel the infringement's "ultimate effect." 70 F.3d at 985. The court thus held that a wrong's "effect" is not a relevant action or omission when assessing venue. *Id.*

This well-established principle has stunted the complaints' "impact" theory in cases like this one. In *Friends of Earth v. Haaland*, for instance, Louisiana argued that venue was proper in the Western District of Louisiana because "the impacts of the challenged administrative action [would] be felt" there. 2022 WL 185196, at *5 (D.D.C. Jan. 20, 2022). The court agreed that the district would "certainly feel some of the impacts" of the agency's decision, yet it still rejected the claim because "impacts alone cannot create proper venue." *Id.* Nor does *Friends of Earth* stand

alone. The Eastern District of California reached a similar result in a case challenging a land regulation on "critical habitat[s]." *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, 2005 WL 8176727, at *1-3 (E.D. Cal. July 7, 2005). The relevant "actions or omissions" for venue purposes, held the court, were the "Defendants' rule-making activities," not the "the critical habitat determinations that [were] the product of the rule[.]" *Id.* at *3. These holdings all foreclose pleading proper venue based on the Facility's impacts.

**b.** The complaints also suggest venue is proper "because the TNT Site is owned by defendant Miami-Dade County, which is located in this district." Doc. 171 ¶ 22. But venue depends on where the "events or omissions … occurred," not on where the landowner lives. 28 U.S.C. § 1391(b)(2). Were it otherwise, a defendant to a battery charge occurring at a Target store in Aventura could be "haled into" the District of Minnesota—"a remote district having no real relationship to the dispute"—merely because the Target corporation resides in Minneapolis. *Rodriguez-Diaz v. Donald*, 2015 WL 11217234, at *2 (S.D. Fla. Apr. 1, 2015) (Williams, J.). That is not the law. *Cf. Pittsburgh Logistics Sys., Inc. v. Glen Rose Transp. Mgmt.*, 2020 WL 7406848, at *3 (W.D. Pa. Dec. 17, 2020) (venue existed at trademark owner's residence not because owner lived there, but because it was "the location of the property" driving the dispute).

### B. Ultra Vires

Plaintiffs contend that FDEM constructed and managed the Facility without authority. But as discussed, Plaintiffs fail to allege any facts suggesting that a "substantial part" of the events "directly giving rise" to the construction and management of the TNT Facility occurred in the Southern District. *Supra* Part IV.A. That shortcoming forecloses venue.

## V. Plaintiffs Fail to State a Claim

### A. NEPA

Plaintiffs bring claims under NEPA. Doc. 171 ¶¶ 133-67; Doc. 178 ¶¶ 6-49. Those claims fail because NEPA does not provide a cause of action. *E.g.*, *FOE II*, 174 F.4th at 829; *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173 (11th Cir. 2006).

### B. APA

When this case was remanded to this Court, Plaintiffs dropped their NEPA-based APA claim against FDEM. *See* Doc. 162 at 44. Inexplicably, Plaintiffs resuscitated the claim two weeks later. *See* Doc. 171 at 45. They were right the first time: Plaintiffs' APA claims fail several times

over, as multiple panels of the Eleventh Circuit have held. *See FOE I*, 2025 WL 2598567, at *9 n.7; *FOE II*, 174 F.4th at 829-834.

**1.** "The Administrative Procedure Act permits federal courts to review only a 'final agency action.'" *FOE II*, 174 F.4th at 830 (quoting 5 U.S.C. § 704). Final agency action requires "circumscribed, discrete agency actions," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004), not "an agency's entire program of decisionmaking." *FOE II*, 174 F.4th at 830 (alterations and internal quotations omitted). That defeats Plaintiffs' claim here. Plaintiffs say that "State and Federal Defendants' actions federalized the project for purposes of NEPA." Doc. 171 ¶ 137. And then they point to a host of so-called decisions that federalized the project. *Id.*¶¶ 138-54. But that is the precise reasoning the Eleventh Circuit rejected. A plaintiff cannot "assemble a constellation of agency choices and transform them into final agency action." *FOE II*, 174 F.4th at 831.

Instead, Plaintiffs must point to something granular. But they point to no single, federal decision that makes the construction, operation, or decommissioning of the site a federal agency action. As the Eleventh Circuit explained, "Florida, not federal, officials constructed the facility. They control the land and 'entirely' built the facility at state expense." *FOE II*, 174 F.4th at 830. That is state action, not federal.

Plaintiffs allege a host of disconnected federal decisions. Even if those are individually final agency actions,[17] they cannot sweep FDEM's independent actions into a broader NEPA claim. As the Eleventh Circuit explained, NEPA does not permit "the aggregation of federal and non-federal actions." *FOE II*, 174 F.4th at 833. Said otherwise, Plaintiffs cannot seize on a discrete federal action and use it to target FDEM's broader conduct. Each act must be considered on its own: "construction," for example, cannot be "subsumed" into "later operation." *Id.* Nor do Plaintiffs allege any broad joint venture that could support a programmatic NEPA challenge against a state agency. To state an APA claim against FDEM, Plaintiffs must (at a minimum) allege a final agency action that required FDEM to work in "tandem with federal agencies." *Citizens for Smart Growth v. Sec'y of Dept. of Transp.*, 669 F.3d 1203, 1210 (11th Cir. 2012). Plaintiffs point to no such decision. Instead, they ask the Court to infer a decision from a shared purpose between the State and the Federal Government. Courts, however, "may not infer 'an abstract decision apart from specific agency action.'" *FOE II*, 174 F.4th at 830. With no formal arrangement to point to,

[17] Plaintiffs admit that the federal government conducted environmental reviews before it made its funding decision, *e.g.*, Doc. 171 ¶¶ 117-18.

Plaintiffs are left with a series of discrete federal decisions. Those might suffice to bring a claim against a federal decisionmaker. But they do not state an APA claim against FDEM.

**2.** Nor would Plaintiffs state a claim even if they pointed to final agency action because NEPA does not apply to this project. NEPA "applies only to 'major [f]ederal actions significantly affecting the quality of the human environment.'" *FOE II*, 174 F.4th at 832. For a non-federal action, "like a state construction of a facility," to be "major federal action, it must receive more than minimal federal funding and be subject to more than minimal federal control." *Id.*

Plaintiffs fail to allege control. And so, "neither the 'construction' nor the 'use' of the Facility constitutes a 'major federal action' under NEPA." *FOE I*, 2025 WL 2598567, at *6. True, Plaintiffs say "the Division is acting as [the] agent" of federal immigration enforcement agencies. Doc. 171 ¶ 158. But they do not contest that FDEM seized the TNT Facility from the fee-simple owner, *id.* ¶ 61, that the State "implement[ed]" the program, *id.* ¶ 64, and that FDEM is the one who "use[d] the Site," *id.* ¶ 65. That "adds up to *state* control over the project's outcome, not federal control." *FOE I*, 2025 WL 2598567, at *9 n.7. Said differently, "if Florida officials decided to stop building or to dedicate the land to addressing a new emergency, such as hurricane relief, federal officials could not overrule them." *FOE II*, 174 F.4th at 833. And for that reason, "Federal officials made no construction decision capable of triggering" NEPA. *Id.* The same is true for every other decision Plaintiffs attack: at every stage, it was Florida, not the federal government, who could decide to "stop" or to "dedicate the land to addressing a new emergency." *FOE II*, 174 F.4th at 833. The Eleventh Circuit's logic thus defeats every iteration of the claim. No matter how framed, it was always Florida in the driver's seat, and so there was never federal control. *Id.*

Plaintiffs' new theory that demobilizing the site (the same demobilization they previously demanded, *see* Doc. 5) was major federal action is no different. Doc. 171 ¶¶ 113, 120. As before, demobilization was controlled by Florida. Just as Florida could decide to build, it could decide to deconstruct. Indeed, the Eleventh Circuit anticipated and rejected Plaintiffs' precise theory. The Court explained that there was no federal control because "if Florida officials decided to stop building or to dedicate the land to addressing a new emergency, such as hurricane relief, federal officials could not overrule them." *FOE II*, 174 F.4th at 833. That Florida officials have now done as much, and "stop[ped] building" cannot be a source of federal control.

**3.** Without a NEPA-based claim, Plaintiffs have no viable APA claim against FDEM. The APA governs federal—not State—decisionmaking. So "the federal APA clearly does not apply to

state agencies." *Doe, 1-13 ex rel. Doe Sr. 1-13 v. Bush*, 261 F.3d 1037, 1055 (11th Cir. 2001). That defeats any notion that FDEM had to go through notice-and-comment procedures, or otherwise comply with federal APA procedures, in its project.

**C. Ultra Vires**

The Organizational Plaintiffs, but not the Tribe, also bring ultra vires claims against FDEM. On their telling, FDEM lacks either federal or state authority to construct, run, or decommission a detention facility. That fails to state a claim many times over.

**1.** A federal ultra vires claim "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *NRC v. Texas*, 605 U.S. 665, 681-82 (2025). To win, a plaintiff must show that "an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition* in a statute.'" *Id.* at 681. Even then, an ultra vires claim is unavailable "if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review,' or if a statutory review scheme forecloses all other forms of judicial review." *Id.* (quotation omitted).

Here, Plaintiffs fail every part of that test. Far from precluding the Department of Homeland Security (DHS) from cooperating with states, the statute encourages it. Under section 287(g), DHS can enter into agreements with state agencies to perform immigration functions. 8 U.S.C. § 1357(g)(1). Those functions undisputedly include immigration detention. *E.g.*, 8 U.S.C. § 1231. And even without an agreement, states can "cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." 8 U.S.C. § 1357(g)(10)(B). The statute, in short, leaves no doubt that the federal government can work with states on immigration detention.

But even if there were statutory doubt, it would not support an ultra vires claim. For one, there is no judicial power to review cooperation between DHS and the States. Under 8 U.S.C. § 1252(a)(2)(B)(ii), "no court shall have jurisdiction to review ... any other decision or action of ... the Secretary ... the authority for which is specified under this subchapter to be in the discretion of ... the Secretary." The Eleventh Circuit has explained that "section 287"—the section that permits cooperation—falls under "this subchapter," so "the decision to enter into an agreement" or not "appears to fall within this jurisdictional bar." *FOE II*, 174 F.4th at 831. And if judicial review is not blocked, then Plaintiffs could proceed by bringing a suit under the APA. 5 U.S.C. § 702. That alternative remedy precludes a non-statutory ultra vires claim. *NRC*, 605 U.S. at 681.

**2.** A state-law ultra vires claim is blocked by a wall of Supreme Court precedent. Federal courts cannot sit in judgment of State officials under State law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984). "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id.* at 121. So "the Eleventh Amendment bars state law claims against a state in federal court." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003).

To be sure, when a state official acts "without any authority whatever," his conduct is not protected by the Eleventh Amendment and therefore does not implicate *Pennhurst*. 465 U.S. at 101 n.11. But the exception is narrow. The "*ultra vires* exception to Eleventh Amendment immunity applies only when a state official acts 'without any authority whatsoever,' not when the official's act is an erroneous use of authority that exists." *Warren v. DeSantis*, 631 F. Supp. 3d 1188, 1194 (N.D. Fla. 2022). Here, there is no doubt that FDEM has substantial emergency response authority. *E.g.*, Fla. Stat. §§ 252.35, 252.36. Indeed, in an emergency, FDEM borrows every other department's powers because it "is responsible for coordination with efforts of the Federal Government with other departments and agencies of state government." § 252.35. FDEM, in other words, has substantial powers here, including the power to work with the Department of Corrections. *See* Doc. 171 ¶ 213 (citing to the Department of Corrections' powers). So its conduct, "even if erroneous, would not qualify for any *Pennhurst* exception for *ultra vires* acts." *Warren*, 631 F. Supp. 3d at 1194; *see also Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 736 (6th Cir. 2022) (ultra vires exception inapplicable even when a state court concluded the governor had acted outside her authority).

## CONCLUSION

The Court should dismiss all claims against FDEM for lack of subject matter jurisdiction. If it does not, the Court should transfer to the Middle District because this Court lacks venue. If the Court concludes that it has subject matter jurisdiction and that venue is proper, it should dismiss with prejudice because Plaintiffs cannot state a claim.

Dated: October 2, 2026

Respectfully submitted,

s/ *Jesse Panuccio*
Jesse Panuccio (FBN 31401)
Evan Ezray (FBN 1008228)
David Costello (FBN 1004952)

**BOIES SCHILLER FLEXNER LLP**
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
jpanuccio@bsfllp.com

*Counsel for Jared Perdue, in his official capacity as Executive Director of the Florida Division of Emergency Management*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2026, the foregoing was filed with the Clerk of Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

s/ *Jesse Panuccio*
Jesse Panuccio