**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**No. 25-cv-22896-JEM**

FRIENDS OF THE EVERGLADES, INC., *et al*.

Plaintiffs,

and

MICCOSUKEE TRIBE OF INDIANS OF FLORIDA

Plaintiff-Intervenor,

v.

MARKWAYNE MULLIN, *et al.*,

Defendants.

---

# FEDERAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**EXHIBIT LIST**

9. November 16, 2026 FDEM Payment Request Overall Summary

10. November 17, 2026 Record of Environmental Consideration – Training

11. November 17, 2026 Record of Environmental Consideration – Ambulances

12. November 17, 2026 Record of Environmental Consideration – Air Trailer

13. November 13, 2026 Record of Environmental Consideration – Administrative Actions

14. November 17 2026 Record of Environmental Consideration – Mobile Security

15. November 17, 2026 Record of Environmental Consideration – Lawn Care

16. November 18, 2026 FEMA email

17. July 14, 2026 FEMA award letter

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. Plaintiffs and Plaintiff-Intervenor fail to demonstrate standing. ..... 2

A. Plaintiffs and Plaintiff-Intervenor fail to allege an injury-in-fact. ..... 4

B. Plaintiffs and Plaintiff-Intervenor fail to allege causation. ..... 5

C. Plaintiffs and Plaintiff-Intervenor cannot establish redressability. ..... 6

D. Plaintiffs' and Plaintiff-Intervenor's asserted procedural injuries do not establish standing. ..... 6

II. Plaintiffs' and Plaintiff-Intervenor's claims are moot following closure of the Facility. ..... 9

III. The only possible final agency action subject to APA review is disbursement of Federal funding to the State of Florida. ..... 13

IV. Plaintiffs' NEPA Claim Fails. ..... 14

V. Plaintiffs Fail To State An ESA Claim. ..... 16

VI. The Court Must Dismiss Plaintiffs' Organic Act Claims. ..... 17

VII. Plaintiff-Intervenor's NHPA Claim Fails. ..... 18

VIII. The Court should dismiss this action because venue is improper. ..... 19

CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Cases**

*Am. Canoe Ass'n v. City of Attalla*,
363 F.3d 1085 (11th Cir. 2007) ... 16

*Am. Rivers, Inc. v. U.S. Army Corps of Eng'rs*,
No. Civ. 04-3188, 2004 WL 2905281 (D. Minn. Dec. 10, 2004) ... 16

*Bennett v. Spear,*
520 U.S. 154 (1997) ... 16

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,*
354 F. Supp. 3d 1253 (N.D. Ala. 2018) ... 8

*Brooks v. Ga. State Bd. of Elections*,
59 F.3d 1114 (11th Cir. 1995) ... 12

*Caddo Nation of Okla. v. Wichita and Affiliated Tribes*,
786 F. App'x 837 (10th Cir. 2019) ... 9

*Christian Coal. of Ala. v. Cole*,
353 F.3d 1288 (11th Cir. 2004) ... 12

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992) ... 10

*City of S. Miami v. Governor,*
65 F.4th 631 (11th Cir. 2023) ... 4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ... 4

*Coastal Env't Rights Found. v. Naples Rest. Grp., LLC*,
158 F.4th 1052 (9th Cir. 2025) ... 3

*Ctr. For Biological Diversity v. Marina Point Dev. Co.*,
566 F.3d 794 (9th Cir. 2009) ... 9

*Decker v. Nw. Env't Def. Ctr.*,
568 U.S. 597 (2013) ... 3

*Doe v. Wooten*,
747 F.3d 1317 (11th Cir. 2014) ... 11

*Fla. Power & Light Co. v. Lorion*,
470 U.S. 729 (1985) ... 6, 14

*Fla. State Conf. of NAACP v. Browning*,
522 F.3d 1153 (11th Cir. 2008) ... 3

*Fla. Wildlife Fed'n v. Goldschmidt*,
611 F.2d 547 (5th Cir. 1980) .......... 9, 10

*Focus on the Fam. v. Pinellas Suncoast Trans. Auth.*,
344 F.3d 1263 (11th Cir. 2003) .......... 3

*Food and Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......... 5, 6

*Friends of the Everglades, Inc. v. Sec'y of the U.S. Dep't. of Homeland Sec.*,
174 F.4th 822 (11th Cir. 2026) .......... passim

*Friends of the Everglades, Inc. v. Sec'y of U.S. Dep't of Homeland Sec.*,
No. 25-12873, 2025 WL 2598567(11th Cir. Sep. 4, 2025) .......... 20

*HCR, et al. v. Mullin,*
No. 2:25-cv-00747-SPC-DNF, 2026 WL 2357889 (M.D. Fla. Aug. 14, 2026) .......... 10, 11, 12

*Lewis v. Governor of Alaska*,
944 F.3d 1287 (11th Cir. 2019) .......... 3

*Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*,
148 F.3d 1231 (11th Cir. 1998) .......... 4

*Lone Rock Timber Co., v. U.S. Dep't of Interior*,
842 F. Supp. 433 (D. Or. 1994) .......... 16

*Lowman v. Fed. Aviation Admin.,*
83 F.4th 1345 (11th Cir. 2023) .......... 9

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 3, 4, 5, 7

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .......... 13

*Moden v. U.S. Fish and Wildlife Serv.*,
281 F. Supp. 2d 1193 (D. Or. 2003) .......... 16

*Muckleshoot Indian Tribe v. U.S. Forest Serv.*,
177 F.3d 800 (9th Cir. 1999) .......... 7

*Nat'l Env't Found. v. ABC Rail Corp.*,
926 F.2d 1096 (11th Cir. 1991) .......... 16

*Nat'l Parks Conservation Ass'n, Inc. v. U.S. Army Corps of Eng'rs*,
446 F. Supp. 2d 1322 (S.D. Fla. 2006) .......... 17

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .......... 13, 19

*Payne v. Ryder Sys., Inc. Long Term Disability Plan,*
173 F.R.D. 537 (M.D. Fla. 1997) .......... 18

*Rattlesnake Coal. v. EPA*,
509 F.3d 1095 (9th Cir. 2007) ... 1

*Robey v. JPMorgan Chase Bank, N.A.*,
343 F. Supp. 3d 1304 (S.D. Fla. 2018) ... 20

*Rockwell Int'l Corp. v. United States*,
549 U.S. 457 (2007) ... 3

*Salmon Spawning & Recovery All. v. Gutierrez*,
545 F.3d 1220 (9th Cir. 2008) ... 8

*Save the Bay, Inc. v. U.S. Army*,
639 F.2d 1100 (5th Cir. 1981) ... 9

*Seven County Infrastructure Coal. v. Eagle County, Colo.*,
605 U.S. 168 (2025) ... 7, 14

*Sierra Club v. Johnson*,
436 F.3d 1269 (11th Cir. 2006) ... 7

*Sierra Club v. Martin*,
110 F.3d 1551 (11th Cir. 1997) ... 17

*Sierra Club v. Morton*,
405 U.S. 727 (1972) ... 5

*Sierra Club v. U.S.Fish & Wildlife Service*,
No. 2:20-cv-13-SPC-NPM,2023 WL 2570044 (M.D. Fla. Mar. 20, 2023) ... 10

*Sierra Forest Legacy v. U.S. Forest Serv.*,
598 F. Supp. 2d 1058 (N.D. Cal. 2009) ... 16

*Soliman v. United States ex. rel. INS*,
296 F.3d 1237 (11th Cir. 2002) ... 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ... 3

*Standing Rock Sioux Tribe v. U.S Army Corps. of Engr's*,
205 F. Supp. 3d 4 (D.D.C. 2016) ... 18, 19

*Sterling Wholesale, LLC v. Travelers Indem. Co. of Conn.*,
No. 12–60500–CIV., 2012 WL 1991456 (S.D. Fla. May 29, 2012) ... 20

*Strahan v. Sec'y, Mass. Exec. Off. of Energy & Env't Affs.*,
No. 19-cv-10639-IT, 2021 WL 9038570 (D. Mass. Nov. 30, 2021) ... 5

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ... 8

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
578 U.S. 590 (2016) ... 13

*United States v. Futrell*,
209 F.3d 1286 (11th Cir. 2000) ........ 14

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
435 U.S. 519 (1978) ........ 9

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 3

*Water Keeper All. v. U.S. Dep't of Def.*,
152 F. Supp. 2d 163 (D.P.R. 2001) ........ 16

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ........ 4

*Wild Equity Inst. v. EPA*,
147 F. Supp. 3d 853 (N.D. Cal. 2015) ........ 7

*Williams v. Sirmons*,
No. 3:06-CV-686-J-34MCR, 2010 WL 11639651 (M.D. Fla. Apr. 30, 2010) ........ 14

**Statutes**

16 U.S.C. § 1540(g)(1)(A) ........ 16

16 U.S.C. § 1540(g)(1)(A)(i) ........ 16

28 U.S.C. § 1391(b)(2) ........ 19

28 U.S.C. § 1391(e)(1)(B) ........ 19

28 U.S.C. § 1391(e)(1)(C) ........ 19

42 U.S.C. § 4336(a)(1) ........ 14

42 U.S.C. § 4336e(1)(B)(iii) ........ 15

42 U.S.C. § 4336e(10)(B)(iii) ........ 15

42 U.S.C. § 4336e(10)(B)(i) ........ 15

42 U.S.C. § 4336e(10) ........ 16

5 U.S.C. § 704 ........ 13

5 U.S.C. § 706(2)(A) ........ 17

54 U.S.C. § 100101 ........ 18

**Regulations**

36 C.F.R. § 1.2(a) ........ 18

36 C.F.R. § 800.3(a)(1) ........ 18, 19

36 C.F.R. pt. I ........ 18

50 C.F.R. § 402.14(a) .......... 17
50 C.F.R. § 402.16 .......... 7

## INTRODUCTION

The conduct at the heart of Plaintiffs' and Plaintiff-Intervenors' amended Complaints has ceased. The detention center ("the Facility") Florida previously operated at the Dade-Collier Training and Transition Airport ("TNT" or "the Site") has been demobilized and control of the Site has reverted from Florida to Miami-Dade County. Plaintiffs' and Plaintiff-Intervenors' claims are moot because the facility is closed.

The U.S. Court of Appeals for the Eleventh Circuit already made several findings of crucial relevance to Plaintiffs' claims in this case. In its Order dated April 21, 2026, the Eleventh Circuit recognized that "Florida, not federal, officials constructed the facility." *Friends of the Everglades, Inc. v. Sec'y of the U.S. Dep't. of Homeland Sec.*, 174 F.4th 822, 830 (11th Cir. 2026). Furthermore, Florida officials "[controlled] the land and 'entirely' built the facility at state expense." *Id.* The Eleventh Circuit was aware that Florida had requested Facility funding from the Federal Defendants, *see id.,* but still concluded that this Court erred when it issued the preliminary injunction in this case. *Id.* at 831. The Eleventh Circuit reasoned that

> [t]he agency has taken no action to fund the project. Even congressional appropriation of funds for a project will not allow challengers to an agency's use of those funds to obtain relief "until the [agency] has reviewed a grant application and decided to disburse the funds." *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1103 (9th Cir. 2007). Until Homeland Security officials decide to fund the facility, no final agency action occurs.

*Id.* Hence, even when the Facility was operating as a detention center, there was no ongoing Federal agency action, much less any action by Federal Defendants that harmed Plaintiffs' or Plaintiff-Intervenor's asserted environmental interests.[1]

[1] As explained in Defendants' Motion to Dismiss, Dkt. No. 184, since the Eleventh Circuit's Order, FEMA has disbursed funding to reimburse the State of Florida for certain costs associated with detaining individuals at the Facility before the Facility was closed. Undersigned counsel were advised on November 19, 2026, that Florida requested and FEMA recently authorized reimbursement for extraordinary costs including: activities that were approved under the previously-approved burdened rate set forth in the Detention Support Grant Program ("DSGP") Guidance; training; trucks for mobile security; Advanced Life Support ambulance; lawn care equipment; and Cascade Air Trailers (to allow for the refill of Self-Contained Breathing Apparatus). *See* Exs. 9-15 (filed herewith). Two additional expenses were inadvertently reimbursed due to an administrative oversight. FEMA has communicated that those payments were not approved and will be offset or recouped. *See* Ex. 16. (filed herewith). In addition to approving reimbursement of the referenced extraordinary costs, FEMA has approved a revised scope of work to clarify that "[Florida] does not need to restrict payment requests to the current site location. The burdened rate can be claimed for any eligible site with detainees in Florida." Ex. 17 (filed herewith). Disbursement of funds under the FEMA grant is ongoing. FEMA continues to review all reimbursement requests from Florida to confirm that they are consistent with the DSGP Guidance. These reimbursements do not affect Federal Defendants' arguments for dismissal, as explained further below.

After the Eleventh Circuit issued its order vacating the preliminary injunction and remanding for further proceedings, on May 15, 2026, FEMA made its final decision to begin disbursing funds to Florida for reimbursement of non-construction costs previously incurred by Florida. As stipulated in FEMA's Fiscal Year 2025 DSGP Guidance, Dkt. No. 184-1 at 6-7, FEMA's reimbursement grant to Florida does not cover past or future construction of the Facility. These facts are relevant to standing and mootness considerations that now compel dismissal of all of Plaintiffs' and Plaintiff-Intervenor's claims.

Plaintiffs' and Plaintiff-Intervenor's claims fail out of the gate because the Court lacks jurisdiction to hear this case on standing and mootness grounds. This case was originally initiated when "FEMA's award remained open, reimbursements were continuing, and the site was operation [sic] and, of course, had not been remediated." Dkt. No. 194 at 5; *see* Dkt. Nos. 1, 84. But now the Facility is closed, the detention activity and infrastructure at the Site is demobilized, and neither Federal Defendants nor Florida have plans to reauthorize detainment at the Site. *See* Dkt. No. 188-1. Fundamentally, the Court lacks jurisdiction to hear Plaintiffs' claims because the Facility, the focus for any of the alleged environmental impacts, is closed. To the extent there is any Federal action for this Court to review, it is the disbursement of reimbursement funds from FEMA to the State of Florida. But disbursement of Federal funds for past activity that is not ongoing has no environmental impact and the requested relief will do nothing to redress the alleged environmental injuries.

Even if jurisdiction existed, Plaintiffs and Plaintiff-Intervenor also fail to state a claim against Federal Defendants with respect to their National Environmental Policy Act ("NEPA"), Endangered Species Act ("ESA"), and National Historic Preservation Act("NHPA") claims. For all these reasons, the Court should dismiss all of Plaintiffs' claims against Federal Defendants in their Second Amended Complaint (*i.e.*, Counts I, II, V, and VI)—and all of Plaintiff-Intervenor's claims against Federal Defendants in their Amended Complaint (*i.e.* Counts I, II, and III).

## ARGUMENT

### I. Plaintiffs and Plaintiff-Intervenor fail to demonstrate standing.

The Court should dismiss Plaintiffs' and Plaintiff-Intervenor's claims because they have not alleged facts sufficient to establish the three elements of standing: injury in fact, causation,

and redressability.[2] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1159 (11th Cir. 2008); *see Lewis v. Governor of Alaska*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) (same principle).

Plaintiffs argue that because standing is assessed at the outset of the litigation, the Court need not assess it in connection with the operative Second Amended and Supplemental Complaint ("SASC"), Dkt. No. 167-1. Dkt. No. 195 at 10. But Plaintiffs ignore the independent requirement that "a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed." *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) (internal quotation marks and citation omitted); *see Coastal Env't Rights Found. v. Naples Rest. Grp., LLC*, 158 F.4th 1052, 1057 (9th Cir. 2025) ("(1) an injury-in-fact, (2) caused by the defendant's acts, (3) that likely would be redressed by the requested judicial relief . . . must remain extant at all stages of review, not merely at the time the complaint is filed.") (citation modified). Even if Plaintiffs had standing at the time of filing their original complaint (they did not), that original complaint is now superseded by the SASC – the operative complaint in this suit. And the Court must look to the SASC to determine whether Plaintiffs have standing now. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction.").

Plaintiffs' argument that this Court should rely on its footnote in a vacated preliminary injunction order to find standing, Dkt. No. 195 at 4, fares no better. Setting aside that the Eleventh Circuit vacated that order, the Court's reasoning analyzed a materially different complaint and materially different facts on the ground. Dkt. No. 131 at 16 n. 10. Nor are Plaintiffs correct that the SASC "relates back" to the filing of their original complaint, Dkt. No. 195 at 4.[3] Plaintiffs filed the original complaint when construction at the Facility was "ongoing."

[2] "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (*quoting Warth v. Seldin*, 422 U.S. 490, 518 (1975) (internal quotation marks omitted).

[3] Plaintiffs rely on distinguishable case law for the proposition that where an amended pleading "featured . . . identical allegations . . . these allegations plainly relate back to . . . the date on which appellant's original complaint was filed." *Focus on the Fam. v. Pinellas Suncoast Trans. Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003). Here, in contrast to the cited case, between the filing of the original complaint and the SASC, Plaintiffs pleaded new claims against new parties. And facts on the ground have materially changed. The claims in the SASC do not relate back, and the Court's opinion in the footnote of a vacated preliminary injunction order is irrelevant to the analysis this Court must now undertake.

Dkt. No. 1 ¶ 39. And the original complaint did not assert claims against the U.S. Fish and Wildlife Service or FEMA. *Compare* Dkt. No. 1 *with* Dkt. No. 171.

The Court must dismiss this suit because Plaintiffs and Plaintiff-Intervenor cannot demonstrate a concrete injury that is fairly traceable to a current or imminent Federal government action that is likely to be redressed by the relief they seek.

**A. <u>Plaintiffs and Plaintiff-Intervenor fail to allege an injury-in-fact</u>.**

The operative complaints fail to allege facts supporting either of Plaintiffs' two theories of injury.[4] Plaintiffs' alleged past and current injuries do not meet Article III's causation and redressability requirements and are addressed *infra* Sec. I.B-C. Plaintiffs' claimed future injuries fail for a separate reason: they are pure speculation based on the possibility that in the future the Site will be used for a new temporary detainment facility. Dkt. No. 195 at 8. But Plaintiffs can point to no evidence that reopening the facility is imminent. *Id.*

"An organization cannot sue without proof of an actual injury." *City of S. Miami v. Governor,* 65 F.4th 631, 636 (11th Cir. 2023). The alleged injury must be concrete and particularized, and actual or imminent not conjectural or hypothetical. *Lujan*, 504 U.S. at 560-61; *Loggerhead Turtle v. Cnty. Council of Volusia Cnty.*, 148 F.3d 1231, 1247 (11th Cir. 1998). And a threatened injury must be "certainly impending to constitute an injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (internal quotation marks and citation omitted); *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting an alleged injury in fact where plaintiffs could merely show an "objectively reasonable likelihood" of injury). And Plaintiffs, rather than Federal Defendants, bear the burden of establishing imminent harm. *Lujan*, 504 U.S. at 561. Allegations of injury that "rest[] on . . . highly speculative fear" are insufficient for establishing standing. *City of S. Miami*, 65 F.4th at 637 (quoting *Clapper*, 568 U.S. at 410).

The SASC falls short of providing sufficient credible allegations that reopening a temporary detainment facility at the Site is imminent. There is no proposed action that would reopen the Facility. And while Plaintiffs take "cold comfort" in the evidence evinced at this early stage that the Facility will not reopen, Plaintiffs offer no grounds why the Court should disregard

[4] First, they allege past and current environmental injuries stemming from the construction, operation, and demobilization of the Facility. Dkt. No. 195 at 4-7. Second, they allege potential future injuries if the Facility is reopened. *Id.* at 8. Plaintiffs also allege injury arising from the demobilization of the Facility. The United States did not perform demobilization at the facility and therefore these claims of injury cannot be traced to Federal government conduct and are not further analyzed here. *See* Dkt. No. 188-1 ¶¶ 7, 9.

that evidence. Dkt. No. 195 at 8. Rather, Plaintiffs confuse the parties' burdens on this point; it is not the Federal Defendants' burden to disprove Plaintiffs' speculation. *See Lujan*, 504 U.S. at 561. And in any event, the State Defendants have stated multiple times in briefing that they do not intend to reopen the Facility, and Plaintiffs submit no evidence that the Department of Homeland Security or the State of Florida intend to construct detainment facilities at the site for future needs. *See e.g.,* Dkt. No. 188-1 ¶¶ 11-12. Plaintiffs' alleged injury rests only on "highly speculative fear" and fails to adequately plead an injury in fact.

Plaintiffs' proffered declarations do not establish injury-in-fact.[5] Again, there is no ongoing or imminent injury now that the Facility has closed. To the extent the alleged injuries depend on the Facility reopening, none of the declarations allege facts that suggest reopening the facility is imminent or even likely. And the Federal Defendants have refuted allegations that the facility may reopen, *see id.* ¶ 29, as discussed above.[6] In sum, none of Plaintiffs' declarants alleges ongoing or imminent injury redressable by the requested relief.[7]

**B. <u>Plaintiffs and Plaintiff-Intervenor fail to allege causation</u>.**

Article III requires Plaintiffs to establish that their injuries are "fairly traceable" i.e., caused by, the federal actions they challenge. *Lujan*, 504 U.S. at 560-61. "[T]he plaintiff must show a predictable chain of events leading from the government action to the asserted injury." *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024). Plaintiffs' causation argument fails because the environmental injuries they allege were caused (if at all) by the State of Florida or Miami-Dade County, not by Federal Defendants. The Eleventh Circuit has already found that "Florida, not federal, officials constructed the facility. They control the land

[5] Conny Randolph asserts aesthetic and recreational interests in viewing and photographing wildlife in the vicinity of the TNT Site but does not allege any ongoing harm to such interests now that the detention Facility is closed. Dkt. No. 195-1. Jacob Askin similarly asserts interests in viewing and photographing wildlife but cannot credibly assert any ongoing or imminent injury resulting from water pollution, use of pesticides, or use of lighting, *see* Dkt. No. 195-2 ¶¶ 20-22, now that the Facility has closed. Amber Crooks suggests that her aesthetic and recreational interests in visiting Big Cypress National Preserve were affected by "disruptive activities" that occurred through the construction, operation, and demobilization of the facility, *see* Dkt. No. 195-3 ¶ 26.

[6] As discussed in *supra* Sec. I.B-C, even if the allegations in the declarations were sufficient to allege injury in fact, none of the allegations would be redressed by additional *post-hoc* consultation or analysis under the environmental and historic preservation laws that form the basis for the requested relief in the SASC.

[7] Plaintiffs' alleged injuries to their spiritual interests, *see* Dkt. No. 195-1 ¶ 19, are insufficient to establish standing. *Strahan v. Sec'y, Mass. Exec. Off. of Energy & Env't Affs.*, No. 19-cv-10639-IT, 2021 WL 9038570, at *8 (D. Mass. Nov. 30, 2021) ("Where [plaintiff's] spiritual interest lacks concrete elements that the challenged actions directly impact, the court finds the spiritual interest is not the equivalent of 'activities or pastimes' that are required to confer standing.") (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735, 739 (1972)).

and 'entirely' built the facility[.]" *Friends of the Everglades*, 174 F.4th at 830. 2026). Plaintiffs claim that the source of their injury comes from Federal Defendants "set[ting] standards" for and "funding" the Facility. Dkt. No. 195 at 8. But Plaintiffs do not adequately allege a "predictable chain of events" leading from "set[ting] standards" and "funding" to the recreational, aesthetic, and spiritual injuries claimed. *See Food and Drug Admin.*, 602 U.S. at 385.

Plaintiffs seek to attribute every environmental impact associated with the Facility to FEMA's funding decision. But FEMA's funding was limited to reimbursement of limited allowable activities. *See* Dkt. No. 184-1 at 6; *see infra* fn. 1. And Plaintiffs fail to establish the "predictable chain of events" leading from a FEMA agreement to reimburse the State of Florida for certain costs, and the injuries derived from the construction, operation, and demobilization of the facility.

**C. <u>Plaintiffs and Plaintiff-Intervenor cannot establish redressability</u>.**

Plaintiffs and Plaintiff-Intervenor fail to satisfy the third requirement of standing because the relief they seek would not redress their alleged injuries. As to the Federal Defendants, Plaintiffs seek a variety of declaratory and injunctive remedies. Dkt. No. 171 at 70-71.[8] Now that the Facility is closed and demobilized, the sole Federal action at issue is FEMA's reimbursement funding to the State of Florida. However, as discussed below, none of Plaintiffs' or Plaintiff-Intervenor's requests for relief regarding that sole Federal action would redress the underlying environmental injuries that Plaintiffs allege.

**D. <u>Plaintiffs' and Plaintiff-Intervenor's asserted procedural injuries do not establish standing</u>.**

In an attempt to shore up their standing problems, Plaintiffs and Plaintiff-Intervenor allege procedural injury resulting from the Federal Defendants' alleged failure to conduct adequate reviews and consultations under the environmental and historic preservation statutes identified in the SASC for past operation of the Facility. Dkt. No. 195 at 4. Plaintiffs and

[8] Plaintiff-Intervenor seeks the same specific items of relief and also asks that the Court "Require the remediation of any damage caused by the construction, conversion, demobilization, and other activity on the TNT Site, and setting benchmarks to restore the site to its status quo ante[.]" Dkt. No. 178 at 21. But such relief is not available in this Administrative Procedure Act ("APA") suit. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.").

Plaintiff-Intervenor claim that because they allege a procedural injury, they need not satisfy the usual redressability and causation prongs of the standing inquiry. *Id.* But that does not resolve their standing issues.

Plaintiffs wrongly conflate additional environmental review under NEPA, the ESA, and NHPA, with the substantive environmental relief they seek. NEPA is "a purely procedural statute" that "does not mandate particular results." *Seven County Infrastructure Coal. v. Eagle County, Colo.*, 605 U.S. 168, 173 (2025). At best, if Plaintiffs win their NEPA claim, they would be entitled to additional agency process, not remediation or clean-up with regard to the Facility site. And it's entirely possible that after additional agency process, the Federal Defendants would reach the same decision. *See id.* NHPA too is a procedural statute that requires agencies to consider effects before acting in certain circumstances but does not mandate a particular substantive outcome. *Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 805 (9th Cir. 1999) ("We have held that Section 106 of NHPA is a 'stop, look, and listen' provision that requires each federal agency to consider the effects of its programs.") (citation modified). An Order requiring FEMA to undertake additional ESA consultation procedures would not afford substantive environmental relief to redress Plaintiffs' alleged injuries, either. Additional ESA consultation regarding reimbursement funding for the Facility would not redress alleged injuries resulting from construction, operation, or demobilization of the Facility. Those activities were never a matter of "discretionary Federal involvement or control" in the first place, but even if they were, FEMA did not retain any discretion after the facility was closed. *See* 50 C.F.R. § 402.16 (reinitiation of ESA consultation required "where discretionary Federal involvement or control over the action has been retained or is authorized by law."); *Wild Equity Inst. v. EPA*, 147 F. Supp. 3d 853, 865 (N.D. Cal. 2015), *aff'd,* 696 F. App'x 843 (9th Cir. 2017) (holding there was no federal agency action on which the Environmental Protection Agency ("EPA") could consult where construction was complete and EPA permit had no operative effect).

The Supreme Court has held that a party asserting procedural rights need not meet the normal standards for redressability and immediacy. *Lujan*, 504 U.S. at 572 n. 7. To show procedural injury, "a plaintiff must demonstrate that the procedures in question are designed to protect some threatened concrete interest of his." *Sierra Club v. Johnson*, 436 F.3d 1269, 1276 (11th Cir. 2006) (quoting *Lujan*, 504 U.S. at 573 n. 8) (internal quotations omitted). "But deprivation of a procedural right without some concrete interest that is affected by the

deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Plaintiff-Intervenor's (and Plaintiffs') asserted procedural injuries do not establish standing because there is no ongoing or imminent threat of harm to any concrete interests following closure of the Facility.[9] That Plaintiff-Intervenor owns "adjacent and proximate landholdings," *see* Dkt. No. 178 ¶ 47, does not relieve them from alleging a cognizable injury in the first instance.

Even under a less stringent standard for procedural injury, "the redressability requirement is not toothless in procedural injury cases." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008). In *Salmon Spawning & Recovery Alliance*, for example, conservation groups brought suit challenging the decision to enter the Pacific Salmon Treaty with Canada under the ESA. *Id.* at 1222. The court found that plaintiff groups lacked standing because they could not show that the relief requested: "that the agency follow the correct procedures" would redress the claimed procedural injuries. *Id.* at 1226-27. The court reasoned that if the court granted the groups the remedy it requested the ultimate agency decision – the treaty with Canada made nine years in the past – "could never be influenced." *Id.* at 1227. The court reasoned: "In effect, if we rule against the groups' claim of procedural injury, they will continue to suffer injury; and, if we rule in their favor, they will still suffer injury because we cannot undo the Treaty." *Id.*

Plaintiffs are in the same quandary here as plaintiffs in *Gutierrez*. If the Court rules in their favor, they will continue to suffer a procedural injury because the Court cannot undo the past operation of the Facility. And the consultation and analysis sought by the Complaint would not meaningfully vindicate Plaintiffs' claimed procedural interests because it would not meaningfully influence agency decision-making. *See Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,* 354 F. Supp. 3d 1253, 1259 (N.D. Ala. 2018) ("First, NEPA forces government agencies to consider every significant aspect of the environmental impact of a proposed action . . . Second, NEPA mandates that government agencies inform the public of the potential environmental impacts of proposed actions and explain how their decisions address

[9] Moreover, the alleged procedural injuries fail because they are wholly in the past. As noted throughout, the Facility is closed. The construction and demobilization of the Facility is the basis for Plaintiff-Intervenor's alleged injury-in-fact. Dkt. No. 194 at 7. But those allegations do not constitute even a procedural injury-in-fact because they relate "to past injury rather than imminent future injury that is sought to be enjoined." *Summers*, 555 U.S. at 495. To the extent Plaintiff-Intervenor relies on allegations that the Facility will reopen, such allegations are too speculative to constitute an adequately pled injury-in-fact. *See supra* Sec. I.A.

those impacts." (citation modified)). A post-hoc NEPA analysis, NHPA consultation, or ESA consultation would do nothing to impact on-the-ground activities *i.e.*, the construction, operation, and demobilization of the Facility, that are already complete. In short, none of Plaintiffs' asserted procedural injuries are redressable now that the Facility has been closed and demobilized.

## II. Plaintiffs' and Plaintiff-Intervenor's claims are moot following closure of the Facility.

To the extent the Court finds that Plaintiffs had standing when they filed the SASC, their claims became moot when Florida closed the Facility. Circuit precedent confirms that claims for declaratory and injunctive relief in environmental cases are moot when, as here, the project at issue is completed. *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1103 (5th Cir. 1981) (per curiam); *Fla. Wildlife Fed'n v. Goldschmidt*, 611 F.2d 547, 549 (5th Cir. 1980). Plaintiffs' attempt to distinguish their claims from the dismissed claims in those cases fails. In short, Plaintiffs suggest that their claims concerning alleged environmental effects of Facility operations are not moot because their requests for relief here are broader than the relief requested in *Save the Bay* and *Florida Wildlife Federation.*[10] *See* Dkt. No. 195 at 11.

Plaintiffs' allegedly "broader requests for relief," *id.*, do not save their already-moot claims. NEPA is a forward-looking statute that requires the federal agency to "consider every significant aspect of the environmental impact of a proposed action." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 553 (1978). *See also Lowman v. Fed. Aviation Admin.,* 83 F.4th 1345, 1359 (11th Cir. 2023) (An agency's NEPA documents are "forward-looking instrument[s]."). NEPA and NHPA claims related to construction are moot once construction is complete. *Caddo Nation of Okla. v. Wichita and Affiliated Tribes*, 786 F. App'x 837, 842 (10th Cir. 2019). Ordering Federal Defendants to undertake further NEPA or NHPA analysis regarding construction and operation of an already-demobilized facility will not further the purposes of those statutes. Similarly, "[t]he ESA allows a citizen suit for the purpose of obtaining injunctive relief only.... Of course, that is forward looking." *Ctr. For Biological*

---

[10] In addition to seeking declaratory relief on their NEPA, ESA, and APA claims, the Friends of the Everglades Plaintiffs seek to "[e]njoin any construction, conversion, demobilization, and any other environmentally harmful activity or use of the TNT Site for purposes other than its longstanding prior use as a limited pilot training facility[.]" Dkt. No. 171 at 70-71. Plaintiffs also seek to "[e]njoin Defendants from authorizing, permitting, contracting, funding, or undertaking the continued, further, or renewed development or use of the TNT Site for purposes related to a mass detention center or any other unauthorized use[.]" *Id.* Plaintiff-Intervenor seeks similar declaratory and injunctive relief. Dkt. No. 178 at 21.

*Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 804 (9th Cir. 2009). Because there is no ongoing federal agency action here for the Court to enjoin or remand for further NEPA, NHPA, or ESA analysis, it is not possible for the Court to grant any effective relief with respect to Plaintiffs' claims. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (dismissing case "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party") (internal citations omitted).[11]

Plaintiffs are also incorrect in asserting that Defendants here "neglected to put forth any evidence of the environmental considerations, if any, undertaken prior to committing to the TNT Site." Dkt. No. 195 at 11. FEMA's determinations pursuant to NEPA, NHPA, and the ESA regarding its decision to disburse funding to Florida were incorporated in its REC dated March 5, 2026. Dkt. No. 184-4. As Defendants disbursed further funding, they memorialized compliance with relevant environmental and historic preservation statutes in subsequent REC documents. *See infra* n. 1; Exs. 10-15. The record here confirms that the "environmental consequences were not neglected by the [Federal Defendants] in [their] decisionmaking." *Fla. Wildlife Fed'n*, 611 F.2d at 549.

According to Plaintiffs' interpretation of *Save the Bay* and *Florida Wildlife Federation,* no environmental case may be deemed moot upon completion of project construction except under the exact fact patterns presented in those cases. Plaintiffs' overly narrow interpretation of Circuit precedent does not make sense as a general matter and also fails when held against the facts here.

Again, the conduct at the heart of Plaintiffs' amended complaints has ceased. In *HCR, et al. v. Mullin*, Florida filed a declaration attesting that the demobilization effort was complete as of July 18, 2026. Case No. 2:25-cv-00747-SPC-DNF, Dkt. No. 286-1 at 2. Aerial photos confirm that all facilities have been dismantled and removed from the site. *Id.* Dkt. No. 286-2. On August 14, 2026, Judge Chappell issued a memorandum opinion dismissing that case as moot despite the objection of plaintiffs in that case. *HCR, et al. v. Mullin,* 2:25-cv-00747-SPC-DNF, 2026 WL

[11] *Sierra Club v. U.S. Fish & Wildlife Service,* Case No.: 2:20-cv-13-SPC-NPM, 2023 WL 2570044 (M.D. Fla. Mar. 20, 2023), cited by Plaintiffs at Dkt. No. 195 at 15, is distinguishable. In *Sierra Club,* the court reasoned that Plaintiffs' NEPA and ESA claims remained live because the alleged harm to panthers resulted from a newly-enlarged road that would continue to be used post-construction. *Sierra Club*, 2023 WL 2570044, at *4. Here, by contrast, the Facility has been demobilized and there are no ongoing effects on panthers or other wildlife.

2357889 (M.D. Fla. Aug. 14, 2026).

Like Plaintiffs in the instant case, the *HCR* plaintiffs argued that Florida failed to provide evidence that the facility is permanently closed. *Id.* at *1. However, Judge Chappell credited Governor DeSantis's statement that the possibility that the facility would reopen in the future is "negligible." *Id.* at *1 (citing No. 2:25-cv-00747-SPC-DNF Dkt. No. 280 at 1-2). Judge Chappell determined that the Defendants were entitled to a "rebuttable presumption" or a "lesser burden" of showing that the challenged conduct will not recur based on the following factors:

> (1) whether the termination of the offending conduct was unambiguous; (2) whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction; and (3) whether the government has consistently applied a new policy or adhered to a new course of conduct.

*HCR*, 2026 WL 2357889 at *2 (citing n *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014). Judge Chappel concluded that the plaintiffs in that case did not meet their burden to rebut the presumption, *id.*, and dismissed the case as moot. *Id.* at *4.

If the Court does not dismiss for lack of standing, Judge Chappell's well-reasoned opinion should guide the Court in considering Plaintiffs' claims here. As in *HCR,* Defendants here are entitled to a presumption that the challenged conduct will not recur because Florida has already demonstrated "unambiguous termination of the challenged conduct." *Id.* at *2. Applying the first *Wooten* factor, the facts presented in *HCR* support the presumption that the challenged conduct will not recur here. It remains undisputed that the Facility is demobilized. Plaintiffs' assertions that the Facility may reopen—contrary to Governor DeSantis's statement that the possibility that the facility would reopen in the future is "negligible"—are entirely unsupported.

As to the second *Wooten* factor, "nothing in the record supports the idea that State Defendants closed the facility . . . to manipulate jurisdiction." *Id.* Judge Chappell credited Florida's representation that the Facility "was closed because there was no longer a need for it." *Id.* at *3. The same facts support the conclusion that the Facility closure resulted from substantial deliberation, including Florida's assessment of the need for the Facility, rather than any attempt to manipulate jurisdiction.

As in *HCR*, given that the Facility is closed, the third *Wooten* factor is largely inapplicable. *Id.* With no facility remaining, Federal Defendants cannot fail to undertake any further analysis under NEPA, the ESA, or the NHPA.

Thus, considering the *Wooten* factors as applied to the facts presented in the *HCR* case and here, there is no reasonable basis for the Court to conclude that the challenged conduct will recur. The theoretical possibility that the Facility might reopen in the future does not save Plaintiffs' case from mootness resulting from closure of the Facility. "A remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." *HCR,* 2026 WL 2357889, *2 (citing *Soliman v. United States ex. rel. INS*, 296 F.3d 1237, 1243 (11th Cir. 2002)). As stipulated in FEMA's DSGP Guidance, allowable costs under the FEMA grant include enumerated detention expenses or "extraordinary costs" that require separate approval and environmental and historic preservation review. Dkt. No. 184-1 at 6 ("The recipient, in extraordinary circumstances, may submit a written request for approval of additional categories of allowable costs to FEMA in addition to the burdened rate above that details the nature and amount of the costs and the justification for paying such costs in addition to the burdened rate."); *see supra* n. 1. Reimbursement of costs for past construction that allegedly harmed Plaintiffs would require additional approvals and further environmental analysis. *See id.* Thus, in the unlikely event that the Facility reopened, there would be ample opportunity for review at that time.

Plaintiffs' specific claims for injunctive relief are moot because, as in *HCR*, "[w]hat relief could a permanent injunction provide at [an] empty airstrip . . . ?" 2026 WL 2357889, *3. There is no ongoing Facility operation for the Court to influence through an injunctive remedy. Even if the Court enjoined FEMA from disbursing reimbursement funds for Florida's past expenses, that would not constitute effective relief with respect to any past injuries, for the reasons discussed above. Plaintiffs' request for declaratory relief is also moot. Any further NEPA, ESA, or NHPA analysis would be a needless paper exercise that would not inform any ongoing Federal agency action at the Facility and therefore, would not constitute effective relief with respect to Plaintiffs' alleged environmental injuries. To the extent Plaintiffs request a declaratory judgment that could be applied to other, future detention facilities, such a judgment would constitute an impermissible advisory opinion. *See id.* at *4 (citing *Christian Coal. of Ala. v. Cole*, 353 F.3d 1288, 1291 (11th Cir. 2004).

In sum, there is no live "case or controversy" with respect to Plaintiffs' claims against Federal Defendants. *Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1119 (11th Cir. 1995).

Following the reasoning in Judge Chappell's mootness decision in *HCR*, the Court should dismiss as moot all of Plaintiffs' claims against Federal Defendants.

## III. **The only possible final agency action subject to APA review is disbursement of Federal funding to the State of Florida.**

If the Court finds Plaintiffs' claims may proceed despite their standing and mootness deficiencies, it still must dismiss Plaintiffs' claims that challenge non-final agency actions by Federal Defendants such as the Department of Homeland Security's decision to enter 287(g) agreements under Section 287(g) of the Immigration and Nationality Act and the Department of the Interior's concurrence on FEMA's "no effect" determination. *See* Dkt. No. 184 at 21. The only final agency action even arguably reviewable by this Court is funding disbursement from FEMA to the State of Florida. *See* Dkt. No. 194 at 17-18.

Only "final agency action" is reviewable under the APA. 5 U.S.C. § 704; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004). To be a final agency action, the action must "mark the consummation of the agency's decisionmaking process" and "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 597 (2016). Agency actions must be "circumscribed" and "discrete." *Norton*, 542 U.S. at 62. Plaintiffs identify six government actions it calls final agency actions. Dkt. No. 195 at 16. Plaintiffs argue at length that their allegations meet the discreteness requirements for final agency action and are not merely a "constellation of agency choices." *Id.* at 17; *See Friends of the Everglades,* 174 F.4th at 830.

But Plaintiffs' analysis misses two important points. First, discreteness is not the whole test. Even if Plaintiffs are right that all six events are separate and discrete actions (they are not, *see Friends of the Everglades,* 174 F.4th at 830) Plaintiffs identify no rights or obligations that flow from each of the alleged agency actions. *See* Dkt. No. 195 at 18. And Plaintiffs' failure to identify the legal rights or obligations derived from each of the alleged final agency actions is fatal. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("[T]he person claiming a right to sue must identify some 'agency action' that affects him in the specified fashion; it is judicial review 'thereof' to which he is entitled.").

Second, the Eleventh Circuit has resolved this issue. This Court need not resolve whether the Eleventh Circuit interlocutory appeal on the preliminary injunction is formally the law of the case. *See* Dkt. No. 195 at 19-21. A common-sense analysis will do. The Circuit Court assessed

substantively similar allegations on the same set of facts on a preliminary injunction record. The Circuit Court found in Federal Defendants' favor as to all issues but funding disbursement. Even if this court does not treat the Eleventh Circuit's ruling as binding law, it should be highly persuasive. *See United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000) ("Although an unpublished opinion is not binding . . . it is persuasive authority."); *see e.g., Williams v. Sirmons*, No. 3:06-CV-686-J-34MCR, 2010 WL 11639651, at *3 n.5 (M.D. Fla. Apr. 30, 2010) (the court passing on deciding whether an Eleventh Circuit decision was binding as the law of the case and instead "find[ing] it persuasive in this context.").

## IV. Plaintiffs' NEPA Claim Fails.

Both Plaintiffs and Plaintiff-Intervenor misapprehend NEPA for different reasons. As to Plaintiffs, they assert that NEPA analysis is required across a broad range of non-final agency action. Dkt. No. 195 at 21-22. But non-final agency actions that preceded FEMA's March 12, 2026, decision to disburse funding to Florida are not subject to NEPA. 42 U.S.C. § 4336(a)(1). And the Eleventh Circuit has already ruled that Plaintiffs failed to prove that the Facility was federally controlled. *Friends of the Everglades*, 174 F.4th at 832. Whether this Court treats the Eleventh Circuit ruling as the law of the case or not, it is again, at least persuasive authority supporting Federal Defendants' position.

As discussed above, the only final agency action to which NEPA obligations could attach is FEMA's disbursement of funds to the State of Florida. Plaintiffs attempt to create factual complexity where none exists in an effort to survive a motion to dismiss. *See* Dkt. No. 195 at 22-23. But this analysis puts the cart before the horse. The operative question is: what relief can this Court grant on Plaintiffs' NEPA claim? *See supra* Secs. I-II. The answer is ordering the Federal Defendants to prepare a NEPA document. *See* Dkt. No. 171 at 70; *see Fla. Power & Light*, 470 U.S. at 744 ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). But preparation of NEPA documents for funding reimbursements for past activities would do nothing for Plaintiffs' alleged substantive or procedural interests. That is because the purpose of NEPA is to "inform agency decisionmaking." *Seven County Infrastructure Coal.,* 605 U.S. at 173. Funding reimbursement for activities wholly in the past has no environmental impact, and thus a

revived NEPA process would do nothing to inform agency decision making. In any event, FEMA did complete a NEPA analysis of FEMA's disbursement of funds to the State of Florida applying Categorical Exclusions as documented in the RECs, so Plaintiffs arguments also fail for this reason.

Plaintiff-Intervenor argues that because the final action they challenge is funding not construction of the Facility, 42 U.S.C. § 4336e(10)(B)(iii) applies rather than 42 U.S.C. § 4336e(10)(B)(i). Not so. FEMA's original funding allocation to Florida was agnostic as to what facilities were eligible for the funding. *See* Dkt. No. 184-2 at 2 ("The Fiscal year 2025 Detention Support Program Grant Program will provide financial assistance to the non-federal entity to relieve overcrowding in United States Customs and Border Protection's short-term holding facilities[.]"). The original grant language does not show Federal control over the funding, because it did not even specify the facilities to which the funding could be applied. *Id.* Even where the grant specified the burdened rate for detainees at the Facility, that specification does not show "sufficient control and responsibility over the subsequent use of such financial assistance of the effect of the action." Plaintiff-Intervenor balks at the distinction between reimbursement and prospective payment, but it is critical here. If Federal Defendants made prospective payments to the State of Florida, there would be a stronger argument that Federal Defendants could "control" the "*subsequent* use" of such funding. *See* 42 U.S.C. § 4336e(1)(B)(iii) (emphasis added). But the purpose of the grant is reimbursement for completed activities.

And at bottom, Plaintiff and Plaintiff-Intervenors want it both ways: they claim injuries stemming from the construction and operation of the Facility while claiming that the funding is where Federal Defendants' NEPA obligations attach. But the two theories are incongruous. The environmental, recreational, aesthetic, and spiritual injuries alleged were not caused by a funding disbursement from Federal government to state government. Without assuming the sufficiency of Plaintiffs' allegations, they are all based on the construction and operation of a facility, *not* the disbursement of funds. And the Eleventh Circuit has already ruled that Federal Defendants' involvement in the construction of the Facility – the activity that allegedly caused Plaintiffs' claimed injuries – was insufficient to attach NEPA obligations. *Friends of the Everglades*, 174 F.4th at 832. The Court must dismiss Plaintiffs' NEPA claims because ultimately, preparation of additional NEPA documentation would be futile and because the only final agency action at issue

in this case – funding – is excluded from NEPA's definition of major federal action. 42 U.S.C. § 4336e(10).

**V. <u>Plaintiffs Fail To State An ESA Claim</u>.**

ESA citizen suits under 16 U.S.C. § 1540(g)(1)(A) may not be commenced "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation." *Id.* § 1540(g)(2)(A)(i). Plaintiffs' notice letter dated July 11, 2025, preceded FEMA's REC dated March 5, 2026. Dkt. No. 184-4. Plaintiffs' notice letter also preceded FEMA's May 15, 2026, final decision to begin disbursing funds to Florida for reimbursement of costs. Dkt. No. 184-8. That the notice letter preceded any alleged ESA violation by FEMA is clear from the letter's statement that "FEMA is funding, *has agreed to fund, or will imminently fund activities* []." Dkt. No. 38-1 at 44. Indeed, as discussed above, FEMA's decision to begin reimbursing Florida for certain expenses did not occur until some ten months after Plaintiffs filed their notice.

Plaintiffs' year-old notice is equivalent to a "pre-violation" notice letter that is insufficient to afford the Federal Defendants the opportunity to rectify subsequent alleged violations. *E.g., Moden v. U.S. Fish and Wildlife Serv.*, 281 F. Supp. 2d 1193, 1206 (D. Or. 2003). Numerous courts have held that such pre-violation notices of intent to sue are insufficient. *Lone Rock Timber Co., v. U.S. Dep't of Interior*, 842 F. Supp. 433 (D. Or. 1994); *Water Keeper All. v. U.S. Dep't of Def.*, 152 F. Supp. 2d 163 (D.P.R. 2001), and *Am. Rivers, Inc. v. U.S. Army Corps of Eng'rs*, No. Civ. 04-3188, 2004 WL 2905281 (D. Minn. Dec. 10, 2004). Plaintiffs' failure to provide an adequate pre-suit notice is the same as providing no notice and requires dismissal of Plaintiffs' subsequently-filed Count V ESA claims against FEMA. *Am. Canoe Ass'n v. City of Attalla*, 363 F.3d 1085, 1087 (11th Cir. 2007) (per curiam); *Nat'l Env't Found. v. ABC Rail Corp.*, 926 F.2d 1096, 1097-98 (11th Cir. 1991).[12]

Plaintiffs' Count VI ESA Claim also fails to state a claim. Just as funding reimbursement

[12] Unlike Plaintiffs' Count V ESA claims against FEMA, Plaintiffs' Count VI claims against the U.S. Fish and Wildlife Service are not subject to the notice requirements of the ESA citizen-suit provision. Claims concerning the U.S. Fish and Wildlife Service's administration of the ESA are reviewed (if at all) under the APA. *Bennett v. Spear,* 520 U.S. 154, 175 (1997). Federal Defendants have shown that Plaintiffs' claims against the U.S. Fish and Wildlife Service do not challenge a biological opinion or any other final agency action regarding the Facility. Although the U.S. Fish and Wildlife Service concurred in FEMA's "no effect" determination, that determination is not a final, reviewable agency action under the reasoning in *Bennett. Id.* at 177-78; *Sierra Forest Legacy v. U.S. Forest Serv.*, 598 F. Supp. 2d 1058, 1069 (N.D. Cal. 2009). Plaintiffs' claims concerning such non-final agency actions must be dismissed for the discussed above.

for activities wholly in the past has no environmental impact for the purposes of NEPA, nor does funding reimbursement for certain activities wholly in the past affect ESA listed species or their critical habitat. Consultation under the ESA is required when a Federal action "may affect" listed species or their critical habitat. *See* 50 C.F.R. § 402.14(a). FEMA's REC dated March 5, 2026, incorporated its determination that FEMA's reimbursement of certain expenses incurred by Florida would have "no effect" on ESA-listed species. Dkt. No. 184-4 at 4. Further, the detention center has since closed. Whether or not Plaintiffs agree, the fact that FEMA's reimbursement will have "no effect" on ESA-listed species—and is instead related to reimbursement of costs for a facility that has since closed—underscores that the Court cannot grant effective relief regarding Plaintiffs' ESA citizen suit claim. *See Nat'l Parks Conservation Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 446 F. Supp. 2d 1322 (S.D. Fla. 2006) (U.S. Army Corps of Engineers was not required to initiate ESA consultation with U.S. Fish and Wildlife Service for reinstatement of permit for agricultural fill activities based on agency's "no effect" determination regarding effects on Florida panther, wood stork and other endangered species).

## VI. **<u>The Court Must Dismiss Plaintiffs' Organic Act Claims</u>.**

Plaintiffs confuse the APA's limited waiver of sovereign immunity with providing a substantive cause of action against the Federal Defendants. Plaintiffs now characterize their SASC as pleading that Federal Defendants violated the APA by not following National Park Service regulations. Dkt. No. 195 at 23-24. Plaintiffs spill extensive ink distinguishing *Sierra Club v. Martin*, 110 F.3d 1551 (11th Cir. 1997) on the basis that the National Park Service Organic Act ("Organic Act"), as opposed to the Migratory Bird Treaty Act ("MBTA") in *Martin*, applies to the Federal Defendants. That distinction is ultimately ineffective.

The APA grants a right of review for agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The right to judicial review under the APA applies only to those "suffering legal wrong . . . or adversely affected or aggrieved by agency action within the meaning of a relevant statute." *Id.* at § 702. Accordingly, "[t]here is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint.' " *Martin*, 110 F.3d at 1555.

Here, Plaintiffs' SASC alleges violations of the Organic Act. Dkt. No. 171 ¶¶ 120-123. In their brief, Plaintiffs recharacterize their argument that the Federal Defendants violated National Park Service regulations in funding aspects of the Facility without consulting with the National

Park Service or considering the Facility's location in a National Park System unit and in so doing violated the APA. But that new characterization does not help Plaintiffs' claim. First, this claim is not in Plaintiffs' complaint. And "[c]ourts have held that a plaintiff cannot amend a complaint through statements in a brief." *Payne v. Ryder Sys., Inc. Long Term Disability Plan,* 173 F.R.D. 537, 540 (M.D. Fla. 1997). Second, neither the regulations nor the statute direct any government agency to specially consider impacts of its actions on National Park System units. *See* 36 C.F.R. Part I; 54 U.S.C. § 100101. Plaintiffs are correct that unlike the MBTA, the Organic Act applies to governmental entities in some circumstances. *See* 36 C.F.R. § 1.2(a). But not in any of the ways Plaintiffs allege form the basis of their APA claims against Federal Defendants. Like the MBTA at issue in *Martin*, the prohibitions of the Organic Act "must be addressed to the [Agencies'] formal actions in order for the [Agencies] to be capable of violating" them. 110 F.3d at 1555. Plaintiff argues that the Federal Defendants lack of consultation with the National Park Service, proves that the Federal Defendants failed to consider "relevant factors" before issuing funding to the State of Florida. Dkt. No. 195 at 25. But all factors relevant to the Federal Defendants' decision were considered in the REC. Dkt. No. 184-4 at 2; Exs. 3-4, 10-15. Plaintiffs have failed to adequately allege Federal Defendants violated the APA by failing to comply with the National Park Service Organic Act, and this claim must be dismissed.

## VII. Plaintiff-Intervenor's NHPA Claim Fails.

The Federal Defendants were not required to undertake the Section 106 process. The operative regulatory text says:

> If the undertaking is a type of activity that does not have the potential to cause effects on historic properties, assuming such historic properties were present, the agency official has no further obligations under section 106 or this part.

36 C.F.R. § 800.3(a)(1). This regulatory language means: "Where the agency decides either that there is no undertaking or that the undertaking is not the 'type of activity' that has the 'potential to cause effects on historic properties, assuming such . . .properties were present,' the Section 106 process is complete. . . No consultation happens and the permit may issue." *Standing Rock Sioux Tribe v. U.S Army Corps. of Engr's*, 205 F. Supp. 3d 4, 8 (D.D.C. 2016). This Court, like the court in *Standing Rock* should not give "assuming such historic properties were present" the oversized importance Plaintiff-Intervenors argue. Under the plain text of the regulation, the agency assumes that historic

properties are present and then asks if the undertaking is the type that has potential to cause effects on historic properties. 36 C.F.R. § 800.3(a)(1). If the answer is "no" then no consultation is required. *Standing Rock Sioux Tribe*, 205 F. Supp. 3d at 8.

Here, the answer was no. FEMA concluded "[d]ue to the administrative nature of activities included in the per diem rate reimbursement, it has been determined this reimbursement is not the type of activity with the potential to affect historic properties." Dkt. No. 184-4 at 3; *see also* Exs. 10-15. The plain language of the regulation does not require the Federal Defendants to identify Tribes or historic properties because even assuming they were present, FEMA concluded that the activities at issue did "not have the potential to cause effects on historic properties." 36 C.F.R. § 800.3(a)(1). Plaintiff-Intervenor's misreading of the regulation also forecloses their failure to act claim because the agency was explicitly not required to initiate NHPA consultation under these facts. *Norton*, 542 U.S. at 63 ("[T]he only agency action that can be compelled under the APA is action legally required.").

**VIII. <u>The Court should dismiss this action because venue is improper</u>.**

Even if Plaintiffs could overcome the many stumbling blocks explained above, the Court should still dismiss their claims for improper venue. Put simply, the Southern District of Florida is not a proper venue for this action because this case "involves real property" under 28 U.S.C. § 1391(e)(1)(C), and "a substantial part of the events or omissions giving rise to the claim" did not occur in the Southern District under 28 U.S.C. § 1391(e)(1)(B) and 28 U.S.C. § 1391(b)(2). If the Court does not dismiss Plaintiffs' claims, it should transfer them to the Middle District of Florida, as argued in Federal Defendants' pending Motion to Transfer Venue, Dkt. No. 186.

This case "involves real property," and thus it is irrelevant for venue purposes whether any Plaintiff resides in the Southern District. *Id.* § 1391(e)(1)(C). Plaintiffs argue that no real property is involved in this action because the case "does not involve disputes over real property interests." Dkt. No. 195 at 35 (citations and internal quotation marks omitted). But even assuming Plaintiffs' interpretation of the statute is correct, Plaintiffs forget their Third Claim, which alleges that Florida Division of Emergency Management wrongfully commandeered County property. Dkt. No. 171 ¶¶ 210-23. Such a claim squarely alleges a dispute over real property interests, thereby "involving real property" under Section 1391(e)(1)(C). Thus, Plaintiffs cannot claim proper venue merely by arguing that they reside in the Southern District.

Nor can Plaintiffs credibly argue that "a substantial part of the events or omissions giving

rise to the claim" occurred in the Southern District. The Eleventh Circuit stay panel in this case previously cautioned "that a number of the activities and omissions . . . relied on to find a sufficient nexus to the Southern District do not appear to 'directly give rise' to the Plaintiffs' NEPA claim." *Friends of the Everglades, Inc. v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 25-12873, 2025 WL 2598567, at *23 n.9 (11th Cir. Sep. 4, 2025). Plaintiffs fail to explain how circumstances have meaningfully changed. Contrary to Plaintiffs' claims, the small sliver of the property commandeered by the State of Florida that lies in the Southern District does not contain any part—much less a substantial part—of the events of omissions giving rise to Plaintiffs' claims. This is because Plaintiffs' claims do not hinge on the parcel of property writ large; they turn on the detention facility that existed on the parcel. And no portion of that facility fell within Miami-Dade County. Dkt. No. 50-1 ¶¶ 2, 3 (Collier County on the left side of the bisecting line and Miami-Dade County on the right side).[13] Further, as the Eleventh Circuit explained in this case previously, the location of Federal decision making related to the center is irrelevant "[b]ecause Florida retain[ed its] state law authority to make the decisions concerning the project" and "the facility was not subject to federal control." *Friends of the Everglades*, 174 F.4th at 833-34. Surely then, any such Federal decisions concerning the *now defunct* center cannot be said to give rise to a *substantial* part of Plaintiffs' claims. In sum, venue is improper, and Plaintiffs' and Plaintiff-Intervenor's claims should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' and Plaintiff-Intervenor's claims against the Federal Defendants in their entirety.

[13] The Miami-Dade County sliver of the parcel forms no part of Plaintiffs' or Plaintiff-Intervenor's claims, "much less a substantial part of them." *Sterling Wholesale, LLC v. Travelers Indem. Co. of Conn.*, No. 12–60500–CIV., 2012 WL 1991456, at *2 (S.D. Fla. May 29, 2012) (Williams, J.). That small part of the property is peripheral to "the heart of the dispute." *Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1317 (S.D. Fla. 2018).

Respectfully submitted on November 20, 2026.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

*s/ Hayley A. Carpenter*
HAYLEY A. CARPENTER
Trial Attorney
CA Bar No. 312611
JORDAN COHEN
Trial Attorney
CO Bar No. 55298
Natural Resources Section
Energy & Natural Resources Division
United States Department of Justice
Ben Franklin Station
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 305-0242
hayley.carpenter@usdoj.gov

*s/ Mark Arthur Brown*
MARK ARTHUR BROWN
Sr. Trial Attorney
Florida Bar No. 0999504
U.S. Department of Justice
Energy & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, D.C. 20044
Tel: (202) 532-3103
Email: mark.brown@usdoj.gov

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

CARLOS RAURELL
Assistant U.S. Attorney
Florida Bar No. 529893
United States Attorney's Office
Southern District of Florida
99 NE 4th Street, Florida 33132
Telephone: (305) 961-9243
E-mail: carlos.raurell@usdoj.gov

*Counsel for Markwayne Mullin, in his official capacity as Director of Homeland Security; and Todd Lyons, in his official capacity as Acting Director of the United States Immigration and Customs Enforcement*